# EXHIBIT A

**Proposed Bidding Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 |
| Debtors. | ) | (Jointly Administered) Related |
| | ) | Docket No(s). |

**ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF CERTAIN OR ALL OF THE DEBTORS' ASSETS; (B) AUTHORIZING THE DEBTORS TO DESIGNATE ONE OR MORE STALKING HORSE BIDDERS AND TO PROVIDE BID PROTECTIONS; (C) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES; (D) SCHEDULING A HEARING TO CONSIDER ANY PROPOSED SALE; AND (E) GRANTING CERTAIN RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors for an order (this "**Order**") (a) authorizing and approving the bidding procedures attached hereto as **Exhibit 1** (the "**Bidding Procedures**") in connection with the sale of certain or all of the assets of the Debtors (the "**Assets**"); (b) establishing procedures for the Debtors to enter into a stalking horse agreement (a "**Stalking Horse Agreement**") containing certain bid protections with respect to any stalking horse bidder (a "**Stalking Horse Bidder**") to the extent set forth in the Bidding Procedures; (c) approving procedures for the assumption and assignment of certain contracts and unexpired leases and noticing of related Cure Payments; (d) approving the form and manner of notice of the Auction and the Sale Hearing, (e) scheduling the Sale Hearing and setting other related dates and

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Mineral Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or the Bidding Procedures, as applicable.

deadlines; and (f) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice is necessary; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby;

**FOUND, CONCLUDED, AND DETERMINED THAT:**

A. *Bidding Procedures*. The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures attached hereto as **Exhibit 1**, which are fair, reasonable, and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of, the Assets.

B. *Stalking Horse Bidder Procedures.* The Debtors have articulated good and sufficient business reasons for the Court to approve the procedures for designating any Stalking Horse Bidder, including the Break-Up Fee and Expense Reimbursement Amount (together, the "**Bid Protections**").

C. *Bid Protections.* The Bid Protections, to the extent applicable and payable, (i) shall be deemed an actual and necessary cost of preserving the Debtors' estates within the meaning of

section 503(b) of the Bankruptcy Code; (ii) are of substantial benefit to the Debtors' estates (iii) are reasonable and appropriate, including in light of the size and nature of the Sale and the efforts that would be expended by any Stalking Horse Bidder and (iv) enable the Debtors to promote the Sale with the greatest benefit to the estate.

D. *Sale Notice*. The notice, substantially in the form attached hereto as **Exhibit 2**, provided by the Debtors regarding the Sale of the Assets by Auction and Sale Hearing (the "**Sale Notice**") is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures and certain dates and deadlines related thereto; (iii) the objection deadline for the Motion and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the assets for sale; (v) instructions for promptly obtaining a copy of the Purchase Agreement; (vi) representations describing the Sale Transactions as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the Sale proceeds; and (viii) notice of the proposed assumption and assignment of the Assigned Contracts to any Successful Bidder and the right, procedures, and deadlines for objecting thereto, and no other or further notice of the Sale shall be required.

E. *Assumption and Assignment Procedures*. The Motion and the Contract Assumption Notice (as defined herein) are reasonably calculated to provide counterparties to the Assigned Contracts with proper notice of the potential assumption and assignment of their executory contracts and unexpired leases to any Successful Bidder, any Cure Payments (as defined herein), and the Assumption Procedures (as defined herein), and are appropriate.

F. *Other Findings*. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the preceding findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the preceding conclusions of law constitute findings of fact, they are adopted as such.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED to the extent set forth herein.

## I. Important Dates and Deadlines

2. **Sale Hearing**. The Sale Hearing will commence on **August 20, 2026 at [●] [a/p].m., prevailing Eastern Time**, before the Honorable [●] of the United States Bankruptcy Court for the District of Delaware, 824 Market St. N., Wilmington, Delaware 19801. The Sale Hearing may be adjourned by the Debtors, in consultation with the Consultation Parties, without further notice other than by announcement in open Court or on the docket.

3. **Sale Objection Deadline**. Objections, if any, to the Sale of the Assets to a Successful Bidder or Successful Bidders must be made by **August 18, 2026, at 4:00 p.m.**, prevailing Eastern Time (the "**Sale Objection Deadline**"). All objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the Sale Objection Deadline, and be served on (i) proposed counsel to the Debtors, (ii) counsel to the Successful Bidder or Successful Bidders, (iii) counsel to the DIP Lender, (iv) counsel to the Prepetition Secured Lender, and (v) counsel to any statutory committee appointed in the Chapter 11 Cases.

4. **Response Deadline**. Responses or replies, if any, to timely filed objections to the Sale of the Assets to a Successful Bidder or Successful Bidders must be filed by **August 19, 2026, at 11:59 p.m., prevailing Eastern Time** (or may be presented at the Sale Hearing); *provided* that such deadlines may be extended by agreement of the Debtors, the DIP Lender and the affected objecting party.

5. **Competitive Bidding**. The following dates and deadlines regarding competitive bidding are hereby established:

(a) **Non-Binding LOI Deadline: July 10, 2026, at 11:59 p.m., prevailing Eastern Time**, the deadline by which a non-binding letter of intent setting forth the primary commercial terms of any Potential Bidder's proposed Bid must be actually received in writing in electronic format by the parties specified in the Bidding Procedures (the "**Non-Binding LOI Deadline**");

(b) **Bid Deadline: August 6, 2026, at 11:59 p.m., prevailing Eastern Time**, the deadline by which all Bids must be actually received in writing in electronic format by the parties specified in the Bidding Procedures (the "**Bid Deadline**"); and

(c) **Auction: August 13, 2026, at 10:00 a.m.**, prevailing Eastern Time, is the date and time the Auction, if one is needed, will be held at the offices of [proposed] counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, 395 9th Ave., New York, New York 10001, or such other place (which may be virtual) and time as the Debtors shall notify all Qualified Bidders that have submitted Qualified Bids (including any Stalking Horse Bidders), the DIP Lender, the Prepetition Secured Lender and their counsel.

## II. Bidding Procedures and Related Relief

6. **Bidding Procedures.** The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** and incorporated by reference as though fully set forth herein, are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed Sale, and any party desiring to submit an offer for the Debtors' Assets must comply with the terms of the Bidding Procedures and this Order. The Bidding Procedures shall also govern the terms on which the Debtors will proceed with the Auction

or the Sale. The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures.

7. The failure to specifically include or reference any particular provision, section, or article of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision, section, or article, it being the intent of this Court that the Bidding Procedures are authorized in their entirety.

8. **Procedures for Designation of a Stalking Horse Bidder.** The Debtors, as they may reasonably determine to be in the best interests of their estates, and in consultation with the Consultation Parties, may select a Stalking Horse Bidder or Stalking Horse Bidders for the Assets (or one or more subgroupings of Assets) for the purposes of establishing one or more Stalking Horse Bids with respect to certain or all of the Assets and provide any such Stalking Horse Bidder with Bid Protections pursuant to a Stalking Horse Agreement.

9. No insider or affiliate of the Debtors shall be entitled to any Bid Protections.

10. In the event that the Debtors designate a Stalking Horse Bidder and the Stalking Horse Bidder is not the Successful Bidder with respect to the Stalking Horse Bid, the Debtors shall be authorized, but not directed, to make certain payments in consideration of its being the Stalking Horse Bidder with respect to the Stalking Horse Bid and to reimburse it for its reasonable and necessary out-of-pocket expenses, including (a) the Break-Up Fee and (b) the Expense Reimbursement Amount. The amount of any Break-Up Fee and the Expense Reimbursement Amount shall in the aggregate not exceed 3% of the cash portion of the applicable Transaction Purchase Price for such Stalking Horse Bid, with such amount to be paid in accordance with the terms and conditions set forth in the applicable Stalking Horse Agreement. The sole remedy of any Stalking Horse Bidder (if any such Stalking Horse Bidder is designated) against the Debtors

shall be the return of the applicable deposit (if applicable) and the Bid Protections in the event that the applicable Stalking Horse Agreement is terminated pursuant to the applicable provisions of such agreement.

11. No other bidder, nor any party making a credit bid (irrespective of whether it is a Stalking Horse Bidder) will be entitled to any Bid Protections or any other expense reimbursement, break-up fee, termination fee or any other similar fee or payment.

**III. Auction**

12. The Debtors are authorized, subject to the terms of this Order and the Bidding Procedures, to take all actions reasonably necessary, in the discretion of the Debtors, to conduct and implement the Auction.

13. Only the Debtors, the DIP Lender, the Prepetition Secured Lender and any Qualified Bidder that has submitted a Qualified Bid (including any Stalking Horse Bidders), in each case, along with their representatives and counsel, or such other parties as the Debtors shall determine, shall attend the Auction and only such Qualified Bidders (including any Stalking Horse Bidders) or Qualified Bidders under section V.(q) of the Bidding Procedures will be entitled to make any further bids at the Auction.

14. The Debtors and their professionals shall direct and preside over the Auction and the Auction shall be transcribed. The Debtors shall conduct the Auction in the manner set forth in this Order and the Bidding Procedures.

15. Each Qualified Bidder (including any Stalking Horse Bidder) participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the Assets, (b) has reviewed, understands and accepts the Bidding Procedures and (c) has consented to the core jurisdiction of this Court as set forth in the Bidding Procedures.

16. The Debtors, in consultation with the Consultation Parties, may (a) select, in their business judgment, pursuant to the Bidding Procedures, the overall highest or otherwise best Qualified Bid and the Successful Bidder or Successful Bidders with respect to any Sale Transaction, and (b) in accordance with the Bidding Procedures, reject any Bid that, in the Debtors' business judgment, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules or the Bidding Procedures or (iii) contrary to the best interests of the Debtors and their estates, creditors, interest holders, or parties in interest.

17. The Good Faith Deposits of all Qualified Bidders (including any Stalking Horse Bidders) shall be held in escrow by the Debtors or their agent, and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement or order of this Court.

## IV. Sale Hearing Notice and Related Relief

18. The Sale Notice is hereby approved. Within three business days following the entry of this Order or as soon as reasonably practicable thereafter (the "**Mailing Date**"), the Debtors will cause the Sale Notice to be served on: (a) all entities reasonably known by the Debtors to have expressed a bona fide interest in acquiring any of the Assets during the year preceding the date hereof; (b) all entities known to have asserted any claim, liens, interests, or encumbrances in or upon any of the Assets; (c) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by this Motion; (d) the U.S. Trustee; (e) counsel to the Prepetition Secured Lender; (f) counsel to the DIP Lender; (g) the parties included on the Debtors' consolidated list of their 30 largest unsecured creditors, (h) the office of the attorney general for each of the states in which the Debtors operate; (i) the United States Attorney's Office for the District of Delaware; (j) the Internal Revenue Service; (k) the

United States Securities and Exchange Commission, (l) the United States Department of Justice; (m) the U.S. Environmental Protection Agency, (n) counsel to any statutory committee appointed in the Chapter 11 Cases; (n) the representatives for the union party to a collective bargaining agreement with the Debtors; (o) the Federal Trade Commission; (p) the California Public Utilities Commission; (q) the Assistant Attorney General in charge of the Antitrust Division of the Department of Justice; (r) each governmental agency that has a reasonably known interest with respect to the Sale and transactions proposed thereunder; (s) any party that has requested notice pursuant to Bankruptcy Rule 2002, and (t) all parties entitled to notice pursuant to Local Bankruptcy Rules 2002-1(b) and 9013-1(m).

19. Additionally, on the Mailing Date or as soon as reasonably practicable thereafter, the Debtors shall publish a notice, substantially in the form of the Sale Notice, on one occasion, in the national edition of *The New York Times* and *The Daily Independent*, a local publication based in Ridgecrest, California. Such publication notice shall be deemed sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Debtors.

**V. Assumption Procedures**

20. The procedures set forth below regarding the assumption and assignment of the executory contracts proposed to be assumed by the Debtors pursuant to Bankruptcy Code section 365(b) and assigned to a Successful Bidder or Successful Bidders pursuant to Bankruptcy Code section 365(f) in connection with the Sale (the "**Assumption Procedures**") are hereby approved to the extent set forth herein.

21. These Assumption Procedures shall govern the assumption and assignment of all of the Debtors' executory contracts and unexpired leases to be assumed and assigned in connection with the Sale (each, an "**Assigned Contract**," and, collectively, the "**Assigned Contracts**"),

subject to the payment of any payments necessary to cure any defaults arising under any Assigned Contract (the "**Cure Payments**"):

(a) **Contract Assumption Notice.** No later than **July 10, 2026, at 11:59 p.m. (prevailing Eastern Time)** (the "**Assumption and Assignment Service Deadline**"), the Debtors shall serve a notice of contract assumption in substantially the form attached hereto as **Exhibit 3** (the "**Contract Assumption Notice**") via first-class mail on all counterparties to all potential Assigned Contracts and provide a copy of the same to any Stalking Horse Bidder. The Contract Assumption Notice shall inform each recipient of the timing and procedures relating to the potential assumption and assignment of the Assigned Contracts to a Successful Bidder or Successful Bidders upon entry of the Sale Order, and, to the extent applicable, (i) Debtors' good faith estimates of the Cure Payments (if any) required in connection with the executory contract or unexpired lease, as applicable, (ii) whether the potential Assigned Contract is anticipated to be assumed and assigned to any Stalking Horse Bidder in connection with a Stalking Horse Bid; (iii the Cure Objection Deadline and (iv) the Sale Objection Deadline; *provided*, *however*, that service of a Contract Assumption Notice does not constitute an admission that any contract is an executory contract or that the stated Cure Payment related to any contract or unexpired lease constitutes a claim against the Debtors or a right against any Stalking Horse Bidder (all rights with respect thereto being expressly reserved). Further, the inclusion of a contract or unexpired lease, as applicable, on the Contract Assumption Notice is not a guarantee that such contract or unexpired lease, as applicable, will ultimately be assumed and assigned.

(b) **Cure Payments and Adequate Assurance of Future Performance.** The payment of the applicable Cure Payments by the Debtors or any Successful Bidder, as applicable, shall (i) effect a cure of all defaults existing thereunder and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

(c) **Supplemental Contract Assumption Notice.** Although the Debtors intend to make a good faith effort to identify all Assigned Contracts that may be assumed and assigned in connection with a Sale Transaction, the Debtors may discover certain executory contracts inadvertently omitted from the Assigned Contracts list or Successful Bidders may identify other executory contracts that they desire to assume and assign in connection with a Sale Transaction. Accordingly, the Debtors reserve the right, at any time after the Assumption and Assignment Service Deadline and at least two days before the closing of a Sale Transaction, or as otherwise agreed by the Debtors and the Successful Bidder or Successful Bidders, to (i) supplement the list of Assigned Contracts with previously omitted executory contracts ("**Additional Assigned Contracts**"), (ii) remove Assigned Contracts from the list of executory contracts ultimately selected as Assigned Contracts that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale Transaction, and/or (iii) modify the previously stated Cure Payment associated with any Assigned Contracts. In the event the Debtors exercise any of these

reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption (a "**Supplemental Assumption Notice**") on each of the counterparties to such contracts and their counsel of record, if any; *provided*, *however*, the Debtors may not add an executory contract to the list of Assigned Contracts that has been previously rejected by the Debtors by order of the Court. Each Supplemental Assumption Notice will include the same information with respect to listed Assigned Contracts as was included in the Contract Assumption Notice, or in the event of a removal, indicating that the Debtors no longer intend to assign the counterparty's contract or unexpired lease, as applicable, to the applicable Successful Bidder in connection with a Sale Transaction.

(d) **Objections.** Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, *must* (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Bankruptcy Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Payment, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by proposed counsel to the Debtors and counsel to the applicable Successful Bidder (if such counsel is known), as applicable, on or before **the 14th day after service (or as reflected by the postmarked date) of the relevant Contract Assumption Notice or Supplemental Assumption Notice** (the "**Cure Objection Deadline**"), or such deadline set forth in the applicable Supplemental Assumption Notice.

The deadline for objections to the proposed assumption and assignment of an Assigned Contract *solely* with respect to (i) the identity of the Successful Bidder or Successful Bidders or (ii) adequate assurance of future performance provided by the Successful Bidder or Successful Bidders shall be the Sale Objection Deadline.

22. Any party failing to timely file an objection to the proposed Cure Payment, the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on a Contract Assumption Notice or Supplemental Assumption Notice, or the Sale is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Assigned Contract or Additional Assigned Contract (including the adequate assurance of future payment), (c) the related relief requested in the Motion, and (d) the Sale. Such party shall be forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the Assigned Contract, or Additional Assigned Contract, adequate assurance of future performance, the relief requested in the Motion, whether applicable law excuses such counterparty from accepting

performance by, or rendering performance to, the Successful Bidder or Successful Bidders for purposes of Bankruptcy Code section 365(c)(1) and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder or Successful Bidders, as applicable, with respect to such party's Assigned Contract or Additional Assigned Contract.

23. The Debtors shall have no liability or obligation with respect to defaults relating to the Assigned Contracts arising, accruing, or relating to a period on or after the effective date of assignment.

**VI. Other Relief**

24. Any objections to the entry of this Order and the relief granted herein that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby overruled on the merits.

25. Any Sale Transaction Fee[3] or Other Sale Transaction Fee due to Lazard as a result of the closing of any Sale Transaction shall be segregated and escrowed (for the exclusive benefit of Lazard) from the proceeds of such Sale Transaction (including, without limitation, from the proceeds of any liquidation or other disposition of the Debtors' Assets), as an express carve-out from the collateral of the Debtors' pre- and postpetition secured lenders, prior to any other use or distribution of such proceeds. Any Successful Bid (including on account of any successful Credit Bid) must contain a cash component sufficient to pay the corresponding Sale Transaction Fee or Other Sale Transaction Fee due to Lazard in full, *provided* that if the Sale Transaction does not yield at closing sufficient cash to pay the unpaid portion of such Sale Transaction Fee or Other Sale Transaction Fee in full, or any portion thereof, then the Successful Bidder (including on

[3] Terms used in this paragraph but not otherwise defined herein shall have the meanings given to them in that certain letter agreement between Lazard and Searles Valley Minerals Inc. dated as of May 12, 2026.

account of any successful Credit Bid) shall immediately set aside from its own funds and escrow (for the exclusive benefit of Lazard) at the closing of the Transaction giving rise to such fee any such amount necessary to pay Lazard such unpaid portion of the Sale Transaction Fee or Other Sale Transaction Fee in full. For the avoidance of doubt, nothing in this Order shall prohibit or be construed to prohibit the use of any unencumbered assets of the Debtors or the proceeds thereof to pay any fees and expenses of Lazard or the assertion or allowance of an administrative priority claim under sections 503(b)(2) and 507(a)(2) of the Bankruptcy Code, if applicable, on account of any fees or expenses of Lazard.

26. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

27. To the extent the provisions of this Order are inconsistent with the provisions of any exhibits referenced herein or with the Motion, the provisions of this Order shall control.

28. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

29. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

***[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]***

# EXHIBIT 1

## Bidding Procedures

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-19066 |
| Debtors. | ) | (Jointly Administered) |

**BIDDING PROCEDURES**

On [_________], 2026 the United States Bankruptcy Court for the District of Delaware entered an order [Docket No. __] (the "**Bidding Procedures Order**") in the jointly administered chapter 11 cases (the "**Chapter 11 Cases**") filed by Searles Valley Minerals Inc. and its debtor subsidiaries (collectively, the "**Debtors**"), which, among other things, approved these bidding procedures (the "**Bidding Procedures**") and certain other relief sought in the motion [Docket No. ___] (the "**Motion**").[2]

These Bidding Procedures set forth the process by which the Debtors are authorized to solicit bids for and conduct an auction (the "**Auction**") for the sale or disposition of certain or all of the assets (the "**Assets**") of the above-captioned debtors (collectively, the "**Debtors**") in these chapter 11 cases (the "**Chapter 11 Cases**") in one or more sale transactions pursuant to Bankruptcy Code section 363 (each, a "**Sale Transaction**" and collectively, the "**Sale**"). In addition, at any time, the Debtors, in consultation with the Consultation Parties, may, but are not required to, designate a stalking horse bidder or stalking horse bidders with respect to certain or all of the Assets (each, a "**Stalking Horse Bidder**") in accordance with the procedures set forth below.

In the alternative to the Sale, a transaction for the sale or transfer of substantially all of the Assets of the Debtors proposed by a Qualified Bidder (as defined below) shall not be limited to an asset purchase under section 363, but rather may be structured as a sponsorship of a plan of reorganization (a "**Plan Sale**" and a bid with respect thereto, a "**Plan Bid**"). With respect to a Plan Sale, any references in the Bidding Procedures relating to the Sale, the Assets, or the hearing(s) and order(s) approving the Sale (including, without limitation, the Sale Hearing (as defined below)), shall be read to refer to a restructuring transaction to be consummated pursuant

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Mineral Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or, if not defined therein, the Bidding Procedures Order.

to a plan of reorganization or a plan support agreement supporting a plan of reorganization, as the case may be and, as applicable, a hearing to confirm a plan of reorganization or to approve a plan support agreement, as applicable. The Debtors, in consultation with the Consultation Parties, shall negotiate and evaluate a bid proposed as a Plan Sale in good faith and in a manner that is substantively comparable to a bid submitted as an asset purchase agreement, and the Debtors shall use their commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary, proper or advisable under applicable laws to accommodate a bid structured as a Plan Sale. The additional statutory conditions to confirmation of a plan of reorganization shall not be deemed to be a prohibited contingency contemplated by subsection (l) of the section titled "Determination of Qualified Bid Status" of the Bidding Procedures.

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment; *provided*, *however*, that the foregoing shall not impact any consent rights that the DIP Lender may have under the [DIP Financing Order] [Docket No. ____] and any related final order (together, the "DIP Order"), the DIP Loan Documents (as defined in the DIP Order), or otherwise.

## I. Description of the Assets

The Debtors are offering for sale the Assets. Except in the case of a Plan Bid and except as otherwise provided in the Purchase Agreement or a Modified Purchase Agreement (both as defined below) submitted by a Successful Bidder (as defined below) (including any exhibits or schedules thereto), all of the Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, successorship liability, claims, charges, options and interests thereon (collectively, the "**Interests**") to the maximum extent permitted by Bankruptcy Code section 363, with such Interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Interests applied against the Assets. More detail regarding the Assets will be posted in an electronic data room to be made available to Potential Bidders (as defined below).

## II. Bidding Process

The Debtors and their advisors shall (a) determine, in consultation with the Consultation Parties, whether any person is a Qualified Bidder, (b) coordinate the efforts of Potential Bidders in conducting their due diligence investigations, (c) receive offers from Potential Bidders, (d) negotiate any offers made to purchase the Assets; and (e) determine, in consultation with the Consultation Parties, if any Qualified Bidder should be selected as a Stalking Horse Bidder in accordance with the procedures set forth below.

Notwithstanding anything to the contrary in these Bidding Procedures, if the DIP Lender or the Prepetition Secured Lender submits or causes to be submitted a Bid (including, without limitation, any Credit Bid) for any of the Assets, then for so long as such Bid has not been withdrawn or disqualified or finally rejected by the Debtors or the Court, such party shall automatically cease to be, and shall not be treated as, a Consultation Party under these Bidding Procedures and the Debtors shall no longer be obligated to consult with such party (or provide such party with copies or summaries of Bids or other confidential information that is not provided

to other Qualified Bidders) in connection with the marketing, bidding and Auction process; *provided* that, upon such Bid being withdrawn by the party or disqualified or finally rejected by the Debtors or the Court, such party's consultation rights shall be automatically reinstated on a going-forward basis.

## III. Key Dates for Potential Bidders

The Bidding Procedures provide interested parties with the opportunity to qualify for and participate in the Auction and to submit competing bids for the Assets. The Debtors shall assist Potential Bidders in conducting their respective due diligence investigations and shall accept Bids (as defined below) until **August 6, 2026 at 11:59 p.m.** (**prevailing Eastern Time**) (the "**Bid Deadline**"); *provided* that any Potential Bidder submitting a Bid has submitted a non-binding letter of intent setting forth the primary commercial terms of such Potential Bidder's proposed Bid (an "**LOI**") by **July 10, 2026 at 11:59 p.m.** (**prevailing Eastern Time**) (the "**Non-Binding LOI Deadline**").

No later than the Non-Binding LOI Deadline or Bid Deadline (as applicable), a Potential Bidder that desires to make a bid to consummate a Sale Transaction shall deliver written copies of its LOI or Bid (as applicable) in electronic format to: (a) Searles Valley Minerals Inc. 9401 Indian Creek Parkway, Suite 1000, Overland Park, KS 66210 (Attn: [SVM contact name and email]); (b) proposed co-counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 320 S. Canal Street, Chicago, Illinois 60606 (Attn: James J. Mazza, Jr., Esq. (james.mazza@skadden.com) and Mike Jones (mike.jones@skadden.com), 525 University Avenue, Palo Alto, California 94301 (Attn: Jennifer Madden, Esq. (jennifer.madden@skadden.com)), 2000 Avenue of the Stars, Suite 200N, Los Angeles, California 90067 (Attn: Destiny N. Almogue, Esq. (destiny.almogue@skadden.com)), One Manhattan West, 395 9th Ave., New York, New York 10001 (Attn: Dohyun Kim, Esq. (dohyun.kim@skadden.com); (c) proposed co-counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899 (Courier 19801) (Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and Edward A. Corma, Esq. (ecorma@pszjlaw.com)); and (d) proposed investment banker for the Debtors, Lazard Frères & Co. LLC and Lazard Ltd., 30 Rockefeller Plaza, New York, New York 10112 (Attn: Christian Tempke (Christian.tempke@lazard.com) and Lee West (lee.west@lazard.com)) and 20 Manchester Square, London W1U 3PZ, United Kingdom (Attn: Krzysztof Bieliński (krzysztof.bielinski@lazard.com)). The Debtors shall deliver, no later than 24 hours following the Bid Deadline, written copies of any such LOI and Bid to counsel for each Qualified Bidder, the DIP Lender and the Prepetition Secured Lender.

LOIs and Bids must identify any regulatory and third-party approvals that may be anticipated for the Qualified Bidder to consummate the proposed Sale Transaction, and the time period within which the Qualified Bidder expects to receive such regulatory and third-party approvals.

The Debtors will be deemed to have accepted a Qualified Bid (as defined below) only when such Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing. In the event that the Successful Bid (as defined below) is a Plan Bid, the Sale Hearing will not occur and the Debtors will seek confirmation of a plan of reorganization consistent with such Plan Bid.

The key dates for the sale process are as follows[3]:

| Date/Time | Event |
|---|---|
| **July 7, 2026** at 11:59 p.m. EDT | Mailing Date for Sale Notice |
| **July 10, 2026** at 11:59 p.m. EDT | Assumption and Assignment Service Deadline |
| **July 10, 2026** at 11:59 p.m. EDT | Non-Binding LOI Deadline |
| **August 6, 2026** at 11:59 p.m. EDT | Bid Deadline (due date for Bids and Good Faith Deposits) |
| **August 13, 2026** at 10:00 a.m. EDT | Auction |
| **August 17, 2026** at 11:59 p.m. EDT | Deadline to enter into and file Successful Bidder Purchase Agreement with Successful Bidder (the "**Transaction Approval Filing**") |
| **August 18, 2026** at 4:00 p.m. EDT | Sale Objection Deadline |
| **August 19, 2026** at 11:59 p.m. EDT | Deadline to respond to objections to the Sale of the Assets to Successful Bidder or Successful Bidders |
| **August 20, 2026** at [●] [a/p].m. EDT | Sale Hearing |

None of the dates or deadlines set forth in this Section III may be extended, adjourned or otherwise modified in any respect (i) without the prior written consent of the DIP Lender, or (ii) in a manner that is inconsistent with the milestones or other applicable provisions in the DIP Order; *provided, however*, that the Debtors may waive or extend the Non-Binding LOI Deadline in their reasonable discretion following consultation with the DIP Lender.

## IV. Due Diligence

### A. Access to Diligence Materials

To participate in the bidding process and to receive access to due diligence (the "**Diligence Materials**"), a party must submit to the Debtors (i) an executed confidentiality agreement in such a form reasonably satisfactory to the Debtors and (ii) reasonable evidence demonstrating the party's financial capability to consummate a Sale Transaction as reasonably determined by the Debtors. A party that qualifies for access to Diligence Materials pursuant to the prior sentence shall be a "**Potential Bidder**." Any Stalking Horse Bidder that has previously satisfied the foregoing requirements prior to the date hereof will be deemed a Potential Bidder.

The Debtors will afford any Potential Bidder the time and opportunity to conduct reasonable due diligence, as determined by the Debtors, including reasonable access to management, access to the electronic data room and other information that a Potential Bidder may reasonably request; *provided*, *however*, that the Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline to any party that has not submitted a Qualified Bid. The availability of additional due diligence to a Qualified Bidder will cease on the Auction date;

[3] As reflected below in subsection (h) of the section titled "Reservation of Rights of the Debtors," the Debtors, with the consent of the DIP Lender and the Prepetition Secured Lender, reserve the right to modify the deadlines set forth herein.

*provided*, *however*, that any Successful Bidder shall be permitted to continue to conduct due diligence until the closing of the Sale. The Debtors reserve the right to withhold any Diligence Materials that the Debtors determine are necessary to protect attorney-client privilege, are business-sensitive, competitively sensitive, or otherwise not appropriate for disclosure to a Potential Bidder that is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Potential Bidder.

Each Potential Bidder will be deemed to acknowledge and represent that it (a) has had an opportunity to conduct any and all due diligence regarding the Debtors' assets and liabilities that are the subject of the Auction to the extent of the assets and liabilities that are the subject of their Bid prior to making any such Bids, (b) has relied solely upon its own independent review, investigation, or inspection of any documents and/or the assets in making its Bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Debtors' assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or the Purchase Agreement. All due diligence requests must be directed to Lazard (project_spectre_wg@lazard.com), Lee West (lee.west@lazard.com), and Krzysztof Bieliński (krzysztof.bielinski@lazard.com).

### B. Due Diligence from Potential Bidders

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate its contemplated transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access may be a basis for the Debtors to determine that such bidder is no longer a Potential Bidder or that a bid made by such Potential Bidder is not a Qualified Bid.

### C. Communications with Potential Bidders

There must be no communications with respect to Bids or potential Bids between and amongst Potential Bidders unless the Debtors have previously authorized such communication in writing or with the participation of representatives of the Debtors or their advisors. Should any Potential Bidder attempt to communicate directly with another Potential Bidder regarding a bid or potential bid, the Potential Bidder so contacted shall immediately direct the other Potential Bidder to the Debtors' counsel and financial advisors. The Debtors, in consultation with the Consultation Parties, reserve the right, in their reasonable business judgment, to disqualify any Potential Bidders that have engaged in communications between or amongst themselves without the participation of the Debtors (or a representative of the Debtors) or the Debtors' prior written consent.

## V. Determination of Qualified Bid Status

To be eligible for consideration as a Qualified Bid to participate in the Auction, each Potential Bidder must deliver to the Debtors and their advisors a written, non-binding LOI prior to the Non-Binding LOI Deadline, and a written, irrevocable offer, solicitation or proposal (each, a "**Bid**") prior to the Bid Deadline that must be determined by the Debtors, in their business

judgment, and in consultation with the Consultation Parties, to satisfy each of the following conditions:

(a) *Good Faith Offer*: Each Bid must constitute a good faith, bona fide offer to purchase all or certain specified Assets.

(b) *Purchase Price*: All Bids (other than a Credit Bid by the DIP Lender and/or the Prepetition Secured Lender) must be for cash. The LOI and Bid must clearly set forth the cash purchase price, and any other non-cash consideration (with the form of such consideration specified), to be paid (the "**Transaction Purchase Price**"). If the LOI and Bid propose an acquisition of only certain of the Assets, the Transaction Purchase Price must be allocated among each of the categories of Assets expressly identified in such LOI and Bid.

(c) *Good Faith Deposit*: Each Bid must be accompanied by a deposit in the amount of ten percent (10%) of the cash consideration portion of the Transaction Purchase Price, before any reductions for assumed liabilities or other adjustments (the "**Good Faith Deposit**"). The Good Faith Deposit shall come in the form of a wire transfer, certified check or other form acceptable to the Debtors. Each Good Faith Deposit will be deposited and held in one or more interest-bearing escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court. Requests for wire instructions should be directed to Lazard, (project_spectre_wg@lazard.com), Lee West (lee.west@lazard.com) Krzysztof Bieliński (krzysztof.bielinski@lazard.com). Notwithstanding the foregoing, no Good Faith Deposit shall be required in connection with any Credit Bid submitted by the DIP Lender and/or the Prepetition Secured Lender pursuant to section 363(k) of the Bankruptcy Code.

(d) *Executed Agreement*: Each Bid must be based on the proposed purchase agreement, which will be prepared by the Debtors and will be posted to the data room no later than June [•], 2026 (the "**Purchase Agreement**"), and must include executed transaction documents, signed by an authorized representative of such Potential Bidder, pursuant to which the Potential Bidder proposes to effectuate a Sale Transaction (a "**Modified Purchase Agreement**"). Each Bid must also include a copy of the Modified Purchase Agreement marked against the Purchase Agreement to show all changes requested by the Potential Bidder (including those related to the assumption and assignment of contracts and licenses, and other material terms such that the Debtors may determine how such Bid compares to the terms of competing Bids). Each Modified Purchase Agreement must provide (i) a commitment to close within two business days after all closing conditions are satisfied and (ii) a commitment that the Potential Bidder will (A) make all necessary filings under the Hart Scott Rodino Antitrust Improvements Act of 1976, as amended (the "**HSR Act**") and any other applicable antitrust, competition or merger control laws, rules or regulations enacted or promulgated by any governmental authority ("**Foreign Corruption Laws**"), and (B) submit all necessary filings under the HSR Act and any Foreign Competition Laws on the second business day following the conclusion of the Auction.

(e) *Designation of Assigned Contracts and Leases*: A Bid must identify any and all executory contracts and unexpired leases of the Debtors that the Potential Bidder wishes to assume pursuant to the Sale Transaction. A Bid must specify whether the Debtors or the Potential Bidder will be responsible for any cure costs associated with such assumption, and include a good faith estimate of such cure costs (which estimate may be provided by the Debtors).

(f) *Designation of Assumed Liabilities*: An LOI and Bid must identify all liabilities which the Potential Bidder proposes to assume.

(g) *Corporate Authority*: A Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Sale Transaction; *provided* that, if the Potential Bidder is an entity specially formed for the purpose of effectuating the Sale Transaction, then the Potential Bidder must also furnish written evidence reasonably acceptable to the Debtors of the approval of the Sale Transaction by the equity holder(s) of such Potential Bidder.

(h) *Disclosure of Identity of Qualified Bidder*: A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Assets or otherwise participating in connection with such Bid (including the identity of any parent companies of such entity), and the complete terms of any such participation, including any connections, agreements, arrangements or understandings (a) with the Debtors, any officer, director, or equity holder of the Debtors, or any other known, potential, or prospective bidder and (b) concerning a collaborative or joint bid or any other combination concerning the proposed Bid; *provided* that, if the Potential Bidder is an entity specially formed for the purpose of effectuating the Sale Transaction, then the Potential Bidder must fully disclose the identity of each direct and indirect equity holder of such Potential Bidder.

(i) *Contact Information and Affiliates*: A Bid must provide the identity and contact information for the Potential Bidder and full disclosure of any parent companies, controlling investors, or fund managers of the Potential Bidder.

(j) *Proof of Financial Ability to Perform*: A Bid must include written evidence from which the Debtors may reasonably conclude, in consultation with their advisors and the Consultation Parties, that the Potential Bidder has the necessary financial ability to consummate a Sale Transaction and must further contain information that can be publicly filed or disseminated providing adequate assurance of future performance of all contracts and leases to be assumed and assigned in such Sale Transaction. Such information may include, among other things, the following:

(i) contact names and numbers for verification of financing sources;

(ii) written evidence of the Potential Bidder's internal resources and, if applicable, binding debt funding commitments from a recognized banking institution and equity commitments in an aggregate amount equal to the

cash portion of such Bid, plus associated fees and expenses, or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in the amount of the cash portion of such Bid, in each case, as are needed to close the Sale Transaction;

(iii) the Potential Bidder's most current audited (if any) and latest unaudited financial statements or, if the bidder is an entity formed for the purpose of making a bid, the current audited (if any) and latest unaudited financial statements of the equity holder(s) of the bidder or such other form of financial disclosure, and a guaranty from such equity holder(s);

(iv) a description of the Potential Bidder's pro forma capital structure; and

(v) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors, in consultation with the Consultation Parties, demonstrating that such Potential Bidder has the ability to close the Sale Transaction and pay all associated fees and expenses.

(k) *Regulatory and Third Party Approvals*: An LOI and Bid must set forth each regulatory and third-party approval required for the Potential Bidder to consummate the Sale Transaction, and the time period within which the Potential Bidder expects to receive such regulatory and third-party approvals, and the Debtors, in consultation with the Consultation Parties, may consider the timing and likelihood of obtaining such approvals, and any actions the Potential Bidder will take to ensure receipt of such approval(s) as promptly as possible, when considering the other Bid Assessment Criteria (as defined below).

(l) *Conditions/Contingencies*: A Bid must not be subject to further due diligence or any financing contingency.

(m) *Bid Irrevocable*: Subject to the following sentence with respect to the requirement to serve as a Backup Bidder, a Bid must provide that it is irrevocable until two business days after the closing of the relevant Sale Transaction; *provided* that if such Bid is accepted as the Successful Bid or the Backup Bid, such Bid shall continue to remain irrevocable as and to the extent provided in the Modified Purchase Agreement. Each Potential Bidder that submits a Bid further agrees that, if not chosen as a Successful Bidder, such Potential Bidder shall serve, without modification, as a Backup Bidder (as defined below) as may be designated by the Debtors, in consultation with the Consultation Parties, at the Sale Hearing, in the event the relevant Successful Bidder with respect to a Sale Transaction fails to close as provided in the Successful Bidder Purchase Agreement, as modified, if at all, and the applicable Sale Order (as defined below).

(n) *As-Is, Where-Is*: Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has conducted, to its satisfaction, its own independent investigation of the condition (financial or otherwise), operations

and business of the Debtors and the Assets to be acquired; (ii) in making its determination to proceed with the transactions contemplated by its Bid, it has relied solely on the results of its own independent investigation and has not relied directly or indirectly on any materials or information made available to it and/or its representatives by or on behalf of any Debtor; and (iii) that, should such Potential Bidder be deemed the Successful Bidder with respect to the proposed Sale Transaction and close such Sale Transaction, such Potential Bidder shall acquire the Assets to be acquired without any surviving representations or warranties, on an "as is" and "where is" basis.

(o) *Consent to Jurisdiction*. Each Potential Bidder must (i) submit to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, the Bidding Procedures, the Auction, any Modified Purchase Agreement, or the construction and enforcement of documents relating to any Sale Transaction, (ii) waive any right to a jury trial in connection with any disputes relating to the Debtors, the Bidding Procedures, the Auction, any Modified Purchase Agreement, or the construction and enforcement of documents relating to any Sale Transaction and (iii) commit to the entry of a final order or judgment in any way related to the Debtors, the Bidding Procedures, the Auction, any Modified Purchase Agreement, or the construction and enforcement of documents relating to any Sale Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

(p) *No Bid Protections*. Except with respect to any Stalking Horse Bidder designated by the Debtors as set forth below, a Bid must not entitle the Potential Bidder to any break-up fee, termination fee, transaction fee, expense reimbursement, or any similar type of payment or reimbursement and, by submitting a Bid, the Potential Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in any Auction. Each Potential Bidder presenting a Bid will bear its own costs and expenses (including legal fees) in connection with any proposed Sale Transaction.

(q) *Credit Bids*: Notwithstanding anything to the contrary contained herein, each of (i) the DIP Lender and (ii) the Prepetition Secured Lender shall be deemed a Qualified Bidder and shall have the right (but not the obligation) to credit bid at the Auction all or any portion of the aggregate amount of its applicable outstanding secured obligations pursuant to section 363(k) of the Bankruptcy Code, and any such Credit Bid will be considered a Qualified Bid. Any Bid for all or some of any Assets included as part of a Stalking Horse Bid, if any, that is made as a Credit Bid shall include cash consideration in an amount equal to or greater than any Bid Protections granted by the applicable Stalking Horse Bidder.

A Bid received from a Potential Bidder prior to the Bid Deadline that meets the above requirements, as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a "**Qualified Bid**" for such assets (and such Potential Bidder, a "**Qualified Bidder**"); *provided* that if the Debtors receive a Bid prior to the Bid Deadline that is not a Qualified

Bid, the Debtors, in consultation with the Consultation Parties, may provide the Potential Bidder with the opportunity to remedy any deficiencies prior to the Auction. Any Stalking Horse Bidder will be deemed a Qualified Bidder at all times. For the avoidance of doubt, a Bid submitted after the Bid Deadline shall not be a Qualified Bid, except only as provided in section V.(q) of these Bidding Procedures.

Within two business days after the Bid Deadline, the Debtors and their advisors, in consultation with the Consultation Parties, will determine which Potential Bidders are Qualified Bidders and whether Bids submitted constitute Qualified Bids. Any Bid that is not deemed a Qualified Bid will not be considered by the Debtors. Any Stalking Horse Agreement submitted by a Stalking Horse Bidder will be deemed a Qualified Bid, qualifying such Stalking Horse Bidder to participate in the Auction. To the extent there is any dispute regarding whether a Bid submitted prior to the Bid Deadline is a Qualified Bid, such dispute may be raised with the Bankruptcy Court on an expedited basis prior to the commencement of the Auction. If any Bid is determined by the Debtors, in consultation with the Consultation Parties, not to be a Qualified Bid, the Debtors will refund such Potential Bidder's Good Faith Deposit on or within ten business days after the Bid Deadline.

Prior to the Auction, the Debtors and their advisors, in consultation with the Consultation Parties, will evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' reasonable business judgment, the highest or otherwise best bid (the "**Starting Bid**") with respect to a proposed Sale Transaction. In making such determination, the Debtors will take into account, among other things, the execution risk of non-consummation attendant to any submitted Qualified Bids. No later than 24 hours before the start of the Auction, the Debtors will notify each Qualified Bidder who has timely submitted a Bid with respect to a Sale Transaction that its Bid is a Qualified Bid so as to enable such Qualified Bidders to bid at the Auction. As soon as practicable prior to the Auction the Debtors will further (a) notify each Qualified Bidder who has submitted a Qualified Bid as to which Qualified Bid is the Starting Bid with respect to a Sale Transaction; and (b) distribute copies of the Modified Purchase Agreement(s) or any Stalking Horse Agreement, as applicable, associated with such Starting Bid(s) to each Qualified Bidder who has submitted a Qualified Bid with respect to a Sale Transaction.

By submitting its Bid, each Potential Bidder is agreeing with each other Potential Bidder to abide by and honor the terms of these Bidding Procedures and agrees not to submit a bid or seek to reopen the Auction after the Auction.

## VI. Auction

The Debtors, in consultation with the Consultation Parties, may conduct the Auction in any manner to facilitate a Sale Transaction for all or different subgroupings of the Assets, including conducting multiple Auctions for different subgroupings of the Assets (each, a "**Sub-Auction**").

If two or more Qualified Bids with respect to all or a subgrouping of the Assets are received by the Bid Deadline, the Debtors will conduct the Auction (including any Sub-Auction(s)) to determine the highest or otherwise best Qualified Bid with respect to such Assets. This determination shall take into account any factors the Debtors, in consultation with the Consultation

Parties, reasonably deem relevant to the value of the Qualified Bid to the estates and may include, but are not limited to, the following: (a) the amount and nature of the consideration, including any cash and non-cash consideration (including assumed liabilities); (b) the number, type and nature of any changes to the Purchase Agreement requested by each Qualified Bidder; (c) the extent to which such modifications or provisions are likely to delay closing of the sale of the Debtors' Assets and the cost to the Debtors of such modifications or delay, and whether such modifications increase the risk of non-consummation; (d) which Assets the Qualified Bid covers and the likelihood that any other potential bidders would have interest in separately acquiring remaining Assets; (e) the total consideration to be received by the Debtors; (f) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (g) the net benefit to the Debtors' estates, taking into account, if applicable, any Stalking Horse Bidder's right to any break-up fee or expense reimbursement or similar fee (each as defined below); (h) the impact on employees, the number or percentage of employees to be retained post-closing, employee claims against Debtors, and collective bargaining agreements; (i) in a Sale Transaction seeking to acquire only certain Assets, the execution risk and additional costs related to separate documentation regard the sale(s), if any, of the remaining Assets; (j) any other qualitative or quantitative factor the Debtors, in consultation with the Consultation Parties, deem reasonably appropriate under the circumstances and (k) the extent to which the proposed Sale Transaction results in indefeasible payment in full in cash (or such other treatment as is acceptable to the DIP Lender and the Prepetition Secured Lender in their respective sole discretions) of the DIP Obligations, the Liquidity Advance and the Prepetition Obligations (as those terms are defined in the DIP Order) and the and the timing of such payment. (collectively, the "**Bid Assessment Criteria**").

If two or more Qualified Bids are not received by the Bid Deadline, the Debtors, in consultation with the Consultation Parties, may determine not to conduct the Auction. If only one Qualified Bid is received by the Bid Deadline, the Debtors, in consultation with the Consultation Parties, may select the Modified Purchase Agreement or Stalking Horse Agreement, as applicable, of such Qualified Bidder to be the Successful Bid and such Qualified Bidder shall be the Successful Bidder.

## VII. Procedures for the Designation of a Stalking Horse Bidder and Bid Protections

The Debtors, as they may reasonably determine to be in the best interests of their estates, and in consultation with the Consultation Parties, may select a Stalking Horse Bidder or Stalking Horse Bidders for the Assets (or one or more subgroupings of Assets) for the purposes of establishing one or more minimum acceptable bids with which to begin the Auction with respect to certain or all of the Assets (each, a "**Stalking Horse Bid**") and provide any such Stalking Horse Bidder with Bid Protections (described below) pursuant to an agreement with such Stalking Horse Bidder (the "**Stalking Horse Agreement**"); *provided* that no insider or affiliate of the Debtors shall be entitled to any Bid Protections.

In the event that the Debtors designate a Stalking Horse Bidder and the Stalking Horse Bidder is not the Successful Bidder with respect to the Stalking Horse Bid, the Debtors shall be authorized, but not directed, to make certain payments in consideration of its being the Stalking Horse Bidder with respect to the Stalking Horse Bid and to reimburse it for its reasonable and necessary out-of-pocket expenses, including (a) a break-up fee (the "**Break-Up Fee**") and (b) reimbursement of reasonable, documented and necessary out-of-pocket expenses incurred in

connection with such Stalking Horse Bid (the "**Expense Reimbursement Amount**"). The amount of any Break-Up Fee and the Expense Reimbursement Amount shall in the aggregate not exceed 3% of the cash portion of the applicable Transaction Purchase Price for such Stalking Horse Bid, with such amount to be paid in accordance with the terms and conditions set forth in the applicable Stalking Horse Agreement and as approved by the Bankruptcy Court in the Bidding Procedures Order (the "**Bid Protections**"); *provided*, *however*, that notwithstanding anything to the contrary herein, no other bidder, nor any party making a Credit Bid (irrespective of whether it is a Stalking Horse Bidder) will be entitled to any Bid Protections or any other expense reimbursement, break-up fee, termination fee or any other similar fee or payment with respect to a Bid.

## VIII. Procedures for Auction

The Auction, if necessary, shall take place on **August 13, 2026 at 10:00 a.m. (prevailing Eastern Time)** at the offices of counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, 395 9th Ave., New York, New York 10001, or such other place (which may be virtual) and time as the Debtors shall notify all Qualified Bidders that have submitted Qualified Bids (including any Stalking Horse Bidders). The Auction may be postponed, adjourned or cancelled as the Debtors, in consultation with the Consultation Parties, deem appropriate. Reasonable notice as is reasonably practicable under the circumstances of such postponement or adjournment and the time and place for the commencement or resumption of the Auction or cancellation shall be given to all Qualified Bidders, the DIP Lender and the Prepetition Secured Lender. The Auction (and any Sub-Auction(s)) shall be conducted according to the following procedures:

### A. Participation

Only the Debtors, the DIP Lender, the Prepetition Secured Lender and any Qualified Bidder that has submitted a Qualified Bid (including any Stalking Horse Bidders), in each case, along with their representatives and counsel, or such other parties as the Debtors shall determine shall attend the Auction and only such Qualified Bidders (including any Stalking Horse Bidders or a Qualified Bidder pursuant to section V.(q) of these Bidding Procedures), will be entitled to make any further Bids at the Auction.

### B. The Debtors Shall Conduct the Auction

The Debtors and their professional shall direct and preside over the Auction and the Auction shall be transcribed. Other than as expressly set forth herein, the Debtors, in consultation with the Consultation Parties, may conduct the Auction in the manner they reasonably determine will result in the highest or otherwise best Qualified Bid with respect to a given Sale Transaction. The Debtors shall use their commercially reasonable best efforts to provide each participant in the Auction with a copy of the Modified Purchase Agreement or any Stalking Horse Agreement, as applicable, associated with the Starting Bid with respect to a proposed Sale Transaction. In addition, at the start of the Auction, the Debtors shall describe the terms of each such Starting Bid. Each Qualified Bidder (including any Stalking Horse Bidder) participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein and (b) has reviewed, understands and accepts the Bidding Procedures, and (c) has consented to the core jurisdiction of the Bankruptcy Court.

All Qualified Bidders, including any Stalking Horse Bidders, may submit further Bids, along with a markup or a further markup of the applicable purchase agreement. The Auction will be conducted in rounds. All participating Qualified Bidders are required to bid in each round or they forfeit their right to participate in subsequent rounds. At any time, a Qualified Bidder may request that the Debtors announce the then current highest and best Bid with respect to a proposed Sale Transaction. If requested, the Debtors shall use reasonable efforts to clarify any and all questions any Qualified Bidder may have regarding the Debtors' announcement of the Starting Bid or the then current and highest Bid with respect to a proposed Sale Transaction.

**C. Terms of Overbids**

An "**Overbid**" is any Bid made at the Auction subsequent to the Debtors' announcement of the respective Starting Bid with respect to a Sale Transaction. Any Overbid for purposes of this Auction must comply with the following conditions:

(a) *Minimum Overbid Increments*: (i) The first Overbid after the respective Starting Bid (the "**First Overbid**") must be made in an amount equal to or greater than the sum of (x) the amount of the respective Starting Bid *plus* (y) the amount of any Bid Protections granted to such Starting Bid *plus* (z) $1,000,000; and (ii) any subsequent Overbid after the First Overbid shall be made in increments valued at not less than $1,000,000. In order to maximize value, the Debtors, in consultation with the Consultation Parties, reserve the right to announce reductions or increases in the minimum incremental Bids (or in valuing such Bids) at any time during the Auction. Additional consideration in excess of the amount set forth in the applicable Starting Bid may include cash and/or non-cash consideration; *provided*, *however*, that the value for such non-cash consideration shall be determined by the Debtors in their reasonable business judgment and in consultation with the Consultation Parties. If any Stalking Horse Bidder submits an Overbid, it will receive a credit equal to the Bid Protections granted to it when bidding during the Auction.

(b) *Remaining Terms Are the Same as for Qualified Bids*: Except as modified herein or by the Debtors, in consultation with the Consultation Parties, at the Auction, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, *provided*, *however*, that (i) the Bid Deadline shall not apply; (ii) no additional Good Faith Deposit shall be required beyond the Good Faith Deposit previously submitted by a Qualified Bidder, *provided* that the Successful Bidder with respect to a Sale Transaction shall be required to make a representation at the end of the Auction that it will provide any additional deposit necessary so that its Good Faith Deposit is equal to the amount of ten percent (10%) of the cash portion of the purchase price contained in the Successful Bid; and (iii) each Overbid may be based on the Starting Bid, or any other form Modified Purchase Agreement or Stalking Horse Agreement submitted prior to the Auction. Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes (if any) requested by the Qualified Bidder to the Purchase Agreement or a previously submitted Modified Purchase Agreement or Stalking Horse Agreement, in connection therewith (including any changes to the designated

assigned contracts and leases and assumed liabilities). Any Overbid must remain open and binding on the Qualified Bidder until and unless the Debtors accept a higher or otherwise better Overbid from another Qualified Bidder (except, to the extent required hereby, to serve as the Backup Bid) with respect to a Sale Transaction.

The Debtors, in their reasonable business judgment, may require, to the extent not previously provided (which shall be determined by the Debtors in consultation with the Consultation Parties), a Qualified Bidder submitting an Overbid at the Auction to submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors in consultation with the Consultation Parties) reasonably demonstrating such Qualified Bidder's ability to close the Sale Transaction proposed by such Overbid.

**D. Announcement and Consideration of Overbids**

(a) *Announcement of Overbids*: The Debtors shall announce at the Auction the material terms of each Overbid with respect to a Sale Transaction, the total amount of consideration offered in each such Overbid, the basis for calculating such total consideration, and such other terms as the Debtors, in consultation with the Consultation Parties, reasonably determine will facilitate the Auction.

(b) *Consideration of Overbids*: Prior to the closing of the Auction and subject to the deadlines set forth herein, the Debtors reserve the right in their reasonable business judgment, and in consultation with the Consultation Parties, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; or give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, and in consultation with the Consultation Parties, may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Sale Transaction at the prevailing Overbid amount.

**E. Selecting Highest or Otherwise Best Bid**

At the Auction, the Debtors, in consultation with the Consultation Parties, will be permitted to request best and final offers from the Qualified Bidders (including any Stalking Horse Bidders). The Debtors, in consultation with the Consultation Parties, may identify the highest or otherwise best Qualified Bid(s) as the successful bid(s) (such Bid, the "**Successful Bid**," the Qualified Bidder submitting such Successful Bid, the "**Successful Bidder**" and the Qualified Bidder's purchase agreement, the "**Successful Bidder Purchase Agreement**") with respect to a Sale Transaction. The Auction with respect to a Sale Transaction shall close when a Successful Bidder submits fully executed sale and transaction documents in form and substance acceptable to the Debtors memorializing the terms of the Successful Bid with respect to such Sale Transaction. Notwithstanding anything herein to the contrary, the Debtors may, in their reasonable business

judgment and in consultation with the Consultation Parties, at any time announce the adjournment or conclusion of the Auction.

Promptly following the conclusion of the Auction, the Debtors shall announce the Successful Bid or Successful Bids and Successful Bidder or Successful Bidders with respect to any Sale Transactions and shall file with the Bankruptcy Court notice of such Successful Bid or Successful Bids and Successful Bidder or Successful Bidders.

Unless otherwise required pursuant to the Debtors' fiduciary duties, the Debtors shall not consider any Bids submitted after the conclusion of the Auction (a "**Late Bid**"). Should the Debtors determine that their fiduciary duties require them to consider a Late Bid, the Debtors may not take any action in furtherance of such Late Bid until the Bankruptcy Court enters an order authorizing such action after notice and a hearing.

Notwithstanding anything in the Bidding Procedures to the contrary, a Bid shall not be considered a Late Bid if such Bid does not apply to the Assets that were the subject of an Auction of Sub-Auction, as applicable.

### F. Designation of Backup Bidder

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted with respect to a Sale Transaction, the Qualified Bidder with the next highest or otherwise best Bid with respect to such Sale Transaction at the Auction, as determined by the Debtors, in the exercise of their business judgment, and in consultation with the Consultation Parties, will be designated as the backup bidder (the "**Backup Bidder**") for such Sale Transaction. The Backup Bidder shall be required to keep its Qualified Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, the Backup Bidder's final Overbid) (the "**Backup Bid**") with respect to such Sale Transaction open and irrevocable until the earlier of (i) 5:00 p.m. (prevailing Eastern Time) on the date that is at least 60 calendar days after the date of entry of the Sale Order (or an order confirming a plan of reorganization if the Successful Bid is a Plan Bid) (the "**Outside Backup Date**"), or (ii) the closing of the transaction with the Successful Bidder (or effective date of the plan of reorganization if the Successful Bid is a Plan Bid).

Following the Sale Hearing, if the Successful Bidder fails to consummate an approved transaction with respect to the Assets that are the subject of the Successful Bid, the Backup Bidder will be deemed to have the new prevailing Bid with respect to such Assets, and the Debtors will be authorized, but not required, without further order of the Bankruptcy Court, to consummate the transaction with the Backup Bidder with respect to such Assets.

### G. Additional Procedures

The Debtors, in consultation with the Consultation Parties, may announce at the Auction additional or modified procedural rules that are reasonable under the circumstances for conducting the Auction, so long as such rules are not inconsistent in any material respect with the Bidding Procedures.

### H. Sale Is "As Is/Where Is"

Except as otherwise provided in the applicable Successful Bidder Purchase Agreement or the applicable Sale Order, any Assets of the Debtors sold pursuant to the Bidding Procedures shall be conveyed at the closing of a transaction with a Successful Bidder in their then-present condition, "**AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED**." Except as may be set forth in the applicable Successful Bidder Purchase Agreement or the applicable Sale Order, the Assets are sold free and clear of any and all liens, claims, interests, restrictions, charges and encumbrances of any kind or nature to the fullest extent permissible under the Bankruptcy Code, with such liens, claims, interests, restrictions, charges, and encumbrances to attach to the net proceeds of sale with the same validity and in the same order of priority.

### I. Sale Hearing

Each Successful Bid (including any Backup Bid that is subsequently deemed a Successful Bid) will be subject to Bankruptcy Court/ approval. A hearing to consider approval of the Successful Bid with respect to any Sale Transaction consummated in accordance with these Bidding Procedures (the "**Sale Hearing**") is presently scheduled to take place on **August 20, 2026 at [●] [a/p].m., prevailing Eastern Time**, at the Bankruptcy Court.

At the Sale Hearing, the Debtors will present the Successful Bid or Successful Bids to the Bankruptcy Court for approval.

The Sale Hearing may be adjourned by the Debtors, in consultation with the Successful Bidder and the Consultation Parties, from time to time, upon the filing of a notice of adjournment on Bankruptcy Court's docket of the date scheduled for the Sale Hearing.

## IX. Transaction Fee

Any Sale Transaction Fee[4] or Other Sale Transaction Fee due to Lazard as a result of the closing of any Sale Transaction shall be segregated and escrowed (for the exclusive benefit of Lazard) from the proceeds of such Sale Transaction (including, without limitation, from the proceeds of any liquidation or other disposition of the Debtors' Assets), as an express carve-out from the collateral of the Debtors' pre- and postpetition secured lenders, prior to any other use or distribution of such proceeds. Any Successful Bid (including on account of any successful Credit Bid) must contain a cash component sufficient to pay the corresponding Sale Transaction Fee or Other Sale Transaction Fee due to Lazard in full, *provided* that if the Sale Transaction does not yield at closing sufficient cash to pay the unpaid portion of such Sale Transaction Fee or Other Sale Transaction Fee in full, or any portion thereof, then the Successful Bidder (including on account of any successful Credit Bid) shall immediately set aside from its own funds and escrow (for the exclusive benefit of Lazard) at the closing of the Transaction giving rise to such fee any such amount necessary to pay Lazard such unpaid portion of the Sale Transaction Fee or Other Sale Transaction Fee in full. For the avoidance of doubt, nothing in this Order shall prohibit or be

[4] Terms used in this paragraph but not otherwise defined herein shall have the meanings given to them in that certain letter agreement between Lazard and Searles Valley Minerals Inc. dated as of May 12, 2026.

construed to prohibit the use of any unencumbered assets of the Debtors or the proceeds thereof to pay any fees and expenses of Lazard or the assertion or allowance of an administrative priority claim under sections 503(b)(2) and 507(a)(2) of the Bankruptcy Code, if applicable, on account of any fees or expenses of Lazard.

## X. Return of Good Faith Deposits of Qualified Bidders

The Good Faith Deposits of all Qualified Bidders (including any Stalking Horse Bidders) shall be held in escrow by the Debtors, or their agent, and shall not become property of the Debtors' estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement or order of the Bankruptcy Court. The Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder with respect to a Sale Transaction shall be returned to such Qualified Bidder not later than five business days after the Sale Hearing. If the Backup Bidder is not designated the Successful Bidder with respect to a Sale Transaction, the Good Faith Deposit of such Backup Bidder, if any, shall be returned to the Backup Bidder on the date that is the earlier of 72 hours after (a) the closing of the applicable transaction with the Successful Bidder and (b) the Outside Backup Date with respect to such transaction. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If a Successful Bidder timely closes the winning transaction, its Good Faith Deposit shall be credited towards the purchase price for the applicable Sale Transaction.

In the case of a breach or failure to perform on the part of the Successful Bidder (including any Backup Bidder designated as a Successful Bidder) with respect to a Sale Transaction, the defaulting Successful Bidder's Good Faith Deposit shall be forfeited to the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors at law or in equity, and, the Debtors shall be free to consummate the proposed transaction at the next highest price bid at the Auction by a Qualified Bidder, without the need for any additional hearings or orders of the Bankruptcy Court or any other court. The Debtors, on their behalf and on behalf of each of their respective estates, specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

Notwithstanding any provision hereof, the terms pertaining to any Good Faith Deposit submitted by any Stalking Horse Bidder pursuant to a Stalking Horse Agreement (including, without limitation, the entitlements of such Stalking Horse Bidder and the Debtors to such Good Faith Deposit and the timing of return of any good faith deposit to a Stalking Horse Bidder) shall be governed by the terms of such Stalking Horse Agreement. In the case of a breach or failure to perform on the part of the Debtors with respect to such Stalking Horse Agreement, such Stalking Horse Bidder specifically reserves all rights, remedies, or causes of action that may be available to it at law or in equity.

## XI. The Consultation Parties

The Debtors shall consult with the DIP Lender and the Prepetition Lender and their respective advisors (collectively, the "Consultation Parties" and each, a "Consultation Party") as

explicitly provided for in the Bidding Procedures; *provided*, *however*, that the Debtors shall not be required to consult with any Consultation Party (and its advisors) during a period, if any, during which a party has ceased to be a Consultation Party pursuant to Section II of these Bidding Procedures.

## XII. Rights of DIP Lender and the Prepetition Secured Lender

Notwithstanding anything to the contrary contained in these Bidding Procedures or otherwise, all rights of the DIP Lender to consent to the sale of any portion of its collateral, including, without limitation, any Assets, on terms and conditions acceptable to the DIP Lender, are hereby expressly reserved and not modified, waived or impaired in any way by these Bidding Procedures.

Notwithstanding anything to the contrary contained in these Bidding Procedures or otherwise, all rights of the Prepetition Secured Lender to consent to the sale of any portion of its collateral, including, without limitation, any Assets, on terms and conditions acceptable to the Prepetition Secured Lender, are hereby expressly reserved and not modified, waived or impaired in any way by these Bidding Procedures.

## XIII. Reservation of Rights of the Debtor

Except as otherwise provided in the Purchase Agreement, any Stalking Horse Agreement, the Bidding Procedures, or the Bidding Procedures Order, the Debtors, in consultation with the Consultation Parties, further reserve the right as they may reasonably determine to be in the best interest of their estates and in the exercise of their fiduciary duties to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine whether to enter into a Stalking Horse Agreement; (d) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal with respect to a Sale Transaction; (e) reject any Bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or the Bidding Procedures, or (3) contrary to the best interests of the Debtors and their estates, creditors, interest holders, or parties in interest; (f) waive terms and conditions set forth herein otherwise applicable to all potential bidders; (g) impose additional terms and conditions with respect to all potential bidders; (h) modify the deadlines set forth herein; (i) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (j) modify the Bidding Procedures and implement additional procedural rules that the Debtors determine, in their business judgment, will better promote the goals of the bidding process and discharge the Debtors' fiduciary duties and are not inconsistent with any Bankruptcy Court order.

Nothing in these Bidding Procedures shall prejudice the substantive rights of any party, including with respect to the Debtors' evaluation of any bid.

**EXHIBIT 2**

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF AUCTION AND SALE HEARING**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. On June [●], 2026 (the "**Petition Date**"), Searles Valley Minerals Inc. and certain of its subsidiaries, the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**"), each filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

2. On June [●], 2026, the Debtors filed a motion (the "**Motion**")[2] seeking, among other things, (a) entry of an order (the "**Bidding Procedures Order**") approving the bidding procedures (the "**Bidding Procedures**") for the sale or disposition of certain or all of the Debtors' assets (the "**Assets**") in one or more sale transactions pursuant to Bankruptcy Code section 363 (each, a "**Sale Transaction**" and collectively, the "**Sale**"); (b) establishing procedures for the Debtors to designate a stalking horse bidder (the "**Stalking Horse Bidder**") and to enter into a stalking horse agreement (a "**Stalking Horse Agreement**") containing bid protections; (c) establishing certain dates and deadlines for the Sale process, including scheduling (i) an auction of the Assets (the "**Auction**"), if any, in accordance with the Bidding Procedures, and (ii) the hearing with respect to the approval of the Sale of the Assets free and clear of all liens, claims and encumbrances (the "**Sale Hearing**"); (d) approving procedures for the assumption and assignment

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Mineral Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

of certain executory contracts and unexpired leases (the "**Assumption Procedures**"); and (iv) approving the form and manner of notice of the Sale [Docket No. __].

3. Any property sold pursuant to the Bidding Procedures shall be sold free and clear of all claims, liens, interests, and encumbrances of any kind or nature whatsoever (other than the Assumed Liabilities and the Permitted Encumbrances) to the fullest extent permitted by section 363(f) of the Bankruptcy Code.

4. On June [___], 2026, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. __]. The Bidding Procedures provide the following:

(a) **Auction**. If two or more Qualified Bids with respect to all or a subgrouping of the Assets are received by the Bid Deadline, the Debtors will conduct an auction (the "**Auction**") (including any Sub-Auction(s)) to determine the highest or otherwise best Qualified Bid with respect to such Assets. The Auction will begin on **August 13, 2026 at 10:00 a.m. prevailing Eastern Time** at the offices of counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, 395 9th Ave., New York, New York 10001, or such other place (which may be virtual) and time as the Debtors shall notify all Qualified Bidders that have submitted Qualified Bids (including any Stalking Horse Bidder), the DIP Lender and the Prepetition Secured Lender and their counsel. Only the Debtors, the DIP Lender, the Prepetition Secured Lender and any Qualified Bidder that has submitted a Qualified Bid (including any Stalking Horse Bidder) by no later than **August 6, 2026 at 11:59 p.m. prevailing Eastern Time** (the "**Bid Deadline**"), in each case, along with their representatives and counsel, or such other parties as the Debtors shall determine shall attend the Auction and only such Qualified Bidders (including any Stalking Horse Bidder) will be entitled to make any further Bids at the Auction. Any Qualified Bidder that wishes to take part in this process and submit a bid for the Debtors' assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures. If two or more Qualified Bids are not received by the Bid Deadline, the Debtors may determine not to conduct the Auction. If only one Qualified Bid is received by the Final Bid Deadline, the Debtors may select the Modified Purchase Agreement or Stalking Horse Agreement, as applicable, of such Qualified Bidder to be the Successful Bid and such Qualified Bidder shall be the Successful Bidder.

(b) **Sale Hearing**. The Sale Hearing is presently scheduled to take place on **August 20, 2026, at [___] [a/p].m., prevailing Eastern Time**, at the Bankruptcy Court. At the Sale Hearing, the Debtors will present the Successful Bid or Successful Bids to the Bankruptcy Court for approval. The Sale Hearing may be adjourned by the Debtors and Successful Bidder, from time to time, upon the filing of a notice of adjournment on Bankruptcy Court's docket of the date scheduled for the Sale Hearing.

(c) **Objection Deadline**. Objections, if any, to the Sale of the Assets to a Successful Bidder or Successful Bidders must be made by **August 18, 2026, at 4:00 p.m., prevailing Eastern Time** (the "**Sale Objection Deadline**"). All objections must:

(a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the Sale Objection Deadline, and be served on (i) proposed counsel to the Debtors, (ii) counsel to the Successful Bidder or Successful Bidders, (iii) counsel to the DIP Lender, (iv) counsel to the Prepetition Secured Lender, and (v) counsel to any statutory committee appointed in the Chapter 11 Cases. ***Unless an objection is timely served and filed in accordance with this notice, it may not be considered by the Bankruptcy Court and the Bankruptcy Court may grant the relief requested without further hearing and notice.***

5. The key dates for the Transaction process are as follows:

| **Date/Time** | **Event** |
|---|---|
| **July 7, 2026** at 11:59 p.m. EDT | Mailing Date for Sale Notice |
| **July 10, 2026** at 11:59 p.m. EDT | Assumption and Assignment Service Deadline |
| **July 10, 2026** at 11:59 p.m. EDT | Non-Binding LOI Deadline |
| **August 6, 2026** at 11:59 p.m. EDT | Bid Deadline (due date for Bids and Good Faith Deposits) |
| **August 13, 2026** at 10:00 a.m. EDT | Auction |
| **August 17, 2026** at 11:59 p.m. EDT | Deadline to enter into and file Successful Bidder Purchase Agreement with Successful Bidder (the "**Transaction Approval Filing**") |
| **August 18, 2026** at 4:00 p.m. EDT | Sale Objection Deadline |
| **August 19, 2026** at 11:59 p.m. EDT | Deadline to respond to objections to the Sale of the Assets to Successful Bidder or Successful Bidders |
| **August 20, 2026** at [●] [a/p].m. EDT | Sale Hearing |

6. This notice (the "**Sale Notice**") and the Sale Hearing are subject to the fuller terms and conditions of the Motion and the Bidding Procedures Order, which shall control in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of certain or all of the Debtors' Assets or copies of any related document, including the Motion or the Bidding Procedures Order, may make a written request to counsel for the Debtors, (a) Skadden, Arps, Slate, Meagher & Flom LLP, 320 S. Canal Street, Chicago, Illinois 60606 (Attn: James J. Mazza, Jr., Esq. (james.mazza@skadden.com) and Mike Jones (mike.jones@skadden.com), 525 University

Avenue, Palo Alto, California 94301 (Attn: Jennifer Madden, Esq. (jennifer.madden@skadden.com)), 2000 Avenue of the Stars, Suite 200N, Los Angeles, California 90067 (Attn: Destiny N. Almogue, Esq. (destiny.almogue@skadden.com)), One Manhattan West, 395 9th Ave., New York, New York 10001 (Attn: Dohyun Kim, Esq. (dohyun.kim@skadden.com)), and (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899 (Courier 19801) (Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and Edward A. Corma, Esq. (ecorma@pszjlaw.com)). In addition, copies of the Motion, the Bidding Procedures Order and this Notice can be found (a) at https://cases.stretto.com/SVM; and (b) through PACER on the Court's website, https://ecf.deb.uscourts.gov (registration required), and are on file with the Clerk of the Bankruptcy Court, 824 Market St. N., Wilmington, Delaware 19801.

***[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]***

Dated: Wilmington, Delaware
June ___, 2026

*/s/ DRAFT*

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: 302-652-4100
ljones@pszjlaw.com
joneill@pszjlaw.com
ecorma@pszjlaw.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Joseph O. Larkin (I.D. No. 4883)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Joseph.Larkin@skadden.com

- and -

James J. Mazza, Jr. (*pro hac vice* pending)
Mike Jones (*pro hac vice* pending)
320 S. Canal Street
Chicago, Illinois 60606
Telephone: (312) 407-0700
James.Mazza@skadden.com
Mike.Jones@skadden.com

- and -

Jennifer Madden (*pro hac vice* pending)
525 University Ave
Palo Alto, California 94301
Telephone: (650) 470-4500
Jennifer.Madden@skadden.com

- and -

Destiny N. Almogue (*pro hac vice* pending)
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone: (213) 687-5000
Destiny.Almogue@skadden.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

# EXHIBIT 3

## Contract Assumption Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SEARLES VALLEY MINERALS INC., *et al.*,[1] | ) | Case No. 26-10966 |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF PROPOSED ASSUMPTION AND**
**ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

7. On June [●], 2026 (the "**Petition Date**"), Searles Valley Minerals Inc. and certain of its subsidiaries, the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**"), each filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

8. On June [●], 2026, the Debtors filed a motion (the "**Motion**")[2] seeking, among other things, (a) entry of an order (the "**Bidding Procedures Order**") approving the bidding procedures (the "**Bidding Procedures**") for the sale or disposition of certain or all of the Debtors' assets (the "**Assets**") in one or more sale transactions pursuant to Bankruptcy Code section 363 (each, a "**Sale Transaction**" and collectively, the "**Sale**"); (b) establishing procedures for the Debtors to designate a stalking horse bidder (the "**Stalking Horse Bidder**") and to enter into a stalking horse agreement (a "**Stalking Horse Agreement**") containing bid protections; (c) establishing certain dates and deadlines for the Sale process, including scheduling (i) an auction of the Assets (the "**Auction**"), if any, in accordance with the Bidding Procedures, and (ii) the hearing with respect to the approval of the Sale (the "**Sale Hearing**"); (d) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases (the "**Assumption Procedures**"); and (iv) approving the form and manner of notice of the Sale [Docket No. ___].

9. On [_____], 2026, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. ___]. Pursuant to the Bidding Procedures Order, the Debtors hereby provide notice that they are seeking to assume and assign to a Successful Bidder or Successful Bidders with

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Searles Valley Minerals Inc. (9263); Trona Railway Company LLC (3177); and Searles Domestic Water Company LLC (N/A). The location of Searles Valley Mineral Inc.'s corporate headquarters and the Debtors' service address is 9401 Indian Creek Parkway, Suite 1000, Overland Park, Kansas 66210.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

respect to a given Sale Transaction the executory contracts or unexpired leases (each, an "**Assigned Contract**") listed on **Exhibit A** attached hereto.

10. If the Debtors assume and assign to a Successful Bidder or Successful Bidders an Assigned Contract to which you are a party, on the closing date of the applicable Sale Transaction, or as soon thereafter as practicable, such Successful Bidder or Successful Bidders will pay you the amount the Debtors' records reflect is owing for prepetition arrearages as set forth on **Exhibit A** (the "**Cure Payment**"). The Debtors' records reflect that all postpetition amounts owing under your Assigned Contract have been paid and will continue to be paid until the assumption and assignment of the Assigned Contract, and that other than the Cure Payment, there are no other defaults under the Assigned Contract.

11. The Debtors' inclusion of an executory contract or unexpired lease as an Assigned Contract on **Exhibit A** is not a guarantee that such executory contract or unexpired lease will ultimately be assumed and assigned to any Successful Bidder. Should it be determined that an Assigned Contract will not be assumed and assigned, the Debtors shall notify such party to the Assigned Contract in writing of such decision.

12. Under the terms of the Bidding Procedures Order, the Debtors may modify the list of Assumed Contracts on **Exhibit A** until consummation of the Sale, and the Debtors reserve the right, but only in accordance with the Successful Bidder Purchase Agreement or any Stalking Horse Agreement, as applicable, or as otherwise agreed by the Debtors and the Successful Bidder or Successful Bidders, at any time after the closing of a Sale Transaction and before the deadline for designation of additional Assigned Contracts or removal of potentially Assigned Contracts set forth in the Successful Bidder Purchase Agreement or any Stalking Horse Agreement, to (i) supplement the list of Assigned Contracts with previously omitted executory contracts, (ii) remove Assigned Contracts from the list of executory contracts ultimately selected as Assigned Contracts that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale Transaction, or (iii) modify the previously stated Cure Payment associated with any Assigned Contracts. In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption (a "**Supplemental Assumption Notice**") on each of the counterparties to such contracts and their counsel of record, if any; provided, however, the Debtors may not add an executory contract to the list of Assigned Contracts that has been previously rejected by the Debtors by order of the Court. Each Supplemental Assumption Notice will include the same information with respect to listed Assigned Contracts as was included in the Contract Assumption Notice, or in the event of a removal, the information required in a Removal Notice.

13. Any objection to the Cure Payment or to assumption and assignment must be filed with the Bankruptcy Court on or before **the 14th day after service (or as reflected by the postmarked date) of the relevant Contract Assumption Notice or Supplemental Assumption Notice** (the "**Cure Objection Deadline**"), or such deadline set forth in the applicable Supplemental Assumption Notice, and served on: (a) co-counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 320 S. Canal Street, Chicago, Illinois 60606 (Attn: James J. Mazza, Jr., Esq. (james.mazza@skadden.com) and Mike Jones (mike.jones@skadden.com), 525 University Avenue, Palo Alto, California 94301 (Attn: Jennifer Madden, Esq. (jennifer.madden@skadden.com)), 2000 Avenue of the Stars, Suite 200N, Los Angeles, California

90067 (Attn: Destiny N. Almogue, Esq. (destiny.almogue@skadden.com)), One Manhattan West, 395 9th Ave., New York, New York 10001 (Attn: Dohyun Kim, Esq. (dohyun.kim@skadden.com)); (b) co-counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899 (Courier 19801) (Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com) and Edward A. Corma, Esq. (ecorma@pszjlaw.com)); (c) counsel to the applicable Successful Bidder; (d) counsel to the DIP Lender; and (e) counsel to the Prepetition Secured Lender. The deadline for objections to the proposed assumption and assignment of an Assigned Contract solely with respect to (i) the identity of the Successful Bidder or Successful Bidders or (ii) adequate assurance of future performance provided by the Successful Bidder or Successful Bidders shall be **August 18, 2026 at 4:00 p.m.** (the "**Sale Objection Deadline**"). Any objections must (1) be in writing, (2) comply with the applicable provisions of the Bankruptcy Rules and the Local Bankruptcy Rules, and (3) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Payment, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof.

14. If an objection to the Cure Payment or assumption and assignment is timely filed and not resolved by the parties, a hearing with respect to the objection will take place in the United States Bankruptcy Court for the District of Delaware, 24 Market St. N., Wilmington, Delaware 19801 at the Sale Hearing to be held at **[__] [a/p].m. (prevailing Eastern Time) on August 20, 2026**, or at a later hearing, as determined by the Debtors, which later hearing may include any hearing to consider an order confirming a chapter 11 plan. A hearing regarding the Cure Payment, if any, may be continued at the discretion of the Debtors and the applicable Successful Bidder until after the closing of the relevant Sale Transaction.

15. Any party failing to timely file an objection to the proposed Cure Payment, the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on a Contract Assumption Notice or the Supplemental Assumption Notice, or the Sale is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Assigned Contract or Additional Assigned Contract (including the adequate assurance of future payment), (c) the related relief requested in the Motion, and (d) the Sale. Such party shall be forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the Assigned Contract, or Additional Assigned Contract, adequate assurance of future performance, the relief requested herein, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder or Successful Bidders for purposes of Bankruptcy Code section 365(c)(1) and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder or Successful Bidders, as applicable, with respect to such party's Assigned Contract or Additional Assigned Contract.

16. After the Auction, the Debtors will file, but not serve, a notice that identifies the Successful Bidder or Successful Bidders. The Debtors or any Successful Bidder reserve all of their rights, claims and causes of action with respect to the contracts and agreements listed on **Exhibit A** hereto. Notwithstanding anything to the contrary herein, the proposed assumption and assignment of each of the Assigned Contracts listed on **Exhibit A** hereto (a) shall not be an admission as to whether any such Assigned Contract was executory or unexpired as of the Petition Date or remains executory or unexpired postpetition within the meaning of Bankruptcy Code section 365; and (b) shall be subject to the Debtors' or any Successful Bidder's right to conduct

further confirmatory diligence with respect to the Cure Payment of each Assigned Contract and to modify such Cure Payment accordingly. In the event that the Debtors or any Successful Bidder determine that your Cure Payment should be modified, you will receive a notice, which will provide for additional time to object to such modification.

***[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]***

Dated: Wilmington, Delaware
June ___, 2026

*/s/ DRAFT*

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: 302-652-4100
ljones@pszjlaw.com
joneill@pszjlaw.com
ecorma@pszjlaw.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Joseph O. Larkin (I.D. No. 4883)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Joseph.Larkin@skadden.com

- and -

James J. Mazza, Jr. (*pro hac vice* pending)
Mike Jones (*pro hac vice* pending)
320 S. Canal Street
Chicago, Illinois 60606
Telephone: (312) 407-0700
James.Mazza@skadden.com
Mike.Jones@skadden.com

- and -

Jennifer Madden (*pro hac vice* pending)
525 University Ave
Palo Alto, California 94301
Telephone: (650) 470-4500
Jennifer.Madden@skadden.com

- and -

Destiny N. Almogue (*pro hac vice* pending)
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone: (213) 687-5000
Destiny.Almogue@skadden.com

*Proposed Co-Counsel to Debtors and Debtors in Possessio*