**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>Pacifica of the Valley Corp.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11060 (TMH) |

**APPLICATION OF THE DEBTOR FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 327 AND 328(a), FED. R. BANKR. P. 2014 AND 5002, AND LOCAL RULES 2014-1 AND 2016-1 AUTHORIZING RETENTION AND EMPLOYMENT OF HOULIHAN LOKEY CAPITAL, INC. AS INVESTMENT BANKER TO THE DEBTOR *NUNC PRO TUNC* TO JULY 29, 2026**

The above-captioned debtor and debtor in possession (the "Debtor") hereby applies to the Court for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 327 and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"),[2] Rules 2014 and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing it to employ and retain Houlihan Lokey Capital, Inc. ("Houlihan Lokey") as its investment banker in accordance with the terms and conditions set forth in that certain engagement agreement, dated as of July 29, 2026 (the "Engagement Agreement"), a copy of which is attached as **Exhibit 1** to the Proposed Order, (ii) approving the terms of Houlihan Lokey's employment and retention, including the fee and expense structure and the indemnification, contribution, reimbursement, and related provisions set forth in the Engagement Agreement, (iii) waiving certain informational requirements, and (iv) granting such other and further relief as is just and

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is 7312. The Debtor's mailing address is 9449 San Fernando Road, Sun Valley, CA 91352.

[2] References to 'section' and '§' herein are to sections of the Bankruptcy Code.

proper. In support of this Application, the Debtor submits the Declaration of Andrew Turnbull, a Managing Director of Houlihan Lokey (the "Turnbull Declaration"), which is attached hereto as **Exhibit B** and incorporated herein and further respectfully states as follows:

**Jurisdiction**

1. This Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Debtor confirms its consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**Case Background**

3. On July 4, 2026 (the "Petition Date"), the Debtor commenced reorganization proceedings under chapter 11 of the Bankruptcy Code in this Court. The Debtor is continuing in possession of its respective properties and are operating and managing their businesses, as debtor in possession, pursuant to §§ 1107 and 1108. No trustee, examiner or statutory committee of creditors has been appointed in the chapter 11 case.

4. Information regarding the Debtor's business, capital structure and the circumstances leading to the commencement of the chapter 11 case is set forth in the Declaration of Precious Mayes, filed with the Court on July 7, 2026 (Docket No. 16).

5. The terms of this Application, as well as the terms of the order requested by this Application and entered pursuant hereto, shall apply to any and all affiliates of the Debtor that

have not yet filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code as of the Petition Date, but which subsequently file such a petition during the pendency of the chapter 11 case.

**Houlihan Lokey's Qualifications**

6. The Debtor seeks to retain Houlihan Lokey as its investment banker because, among other things, Houlihan Lokey has extensive experience and an excellent reputation in providing high quality investment banking services to debtors and creditors in financial restructurings and bankruptcy proceedings.

7. Houlihan Lokey, together with the other subsidiaries of its parent company, Houlihan Lokey, Inc., is an internationally recognized investment banking and financial advisory firm, with offices worldwide and more than 1,900 professionals. Houlihan Lokey is a leader in providing such services to debtors, unsecured and secured creditors, acquirers, and other parties-in-interest involved with financially troubled companies both in and outside of bankruptcy. Houlihan Lokey has been, and is, involved in some of the largest restructurings in the United States, both out of court and in chapter 11 cases. Houlihan Lokey has been retained to provide investment banking and financial advisory services in, among other cases, *In re JOANN Inc.,* Case No. 24-10418 (Bankr. D. Del. Apr. 15, 2024); *In re Cano Health, Inc.,* Case No. 24-10164 (Bankr. D. Del. Mar. 22, 2024); *In re MVK FarmCo LLC,* Case No. 23-11721 (Bankr. D. Del. Dec. 6, 2023); *In re OSG Holdings, Inc.,* Case No. 23-90799 (Bankr. S.D. Tex. Nov. 17, 2023); *In re Carestream Health, Inc.,* Case No. 22-10778 (Bankr. D. Del. Oct. 7, 2022); *In re Revlon, Inc.,* Case No. 22-10760 (Bankr. S.D.N.Y. Aug. 23, 2022); *In re PWM Property Management LLC,* Case No. 21-11445 (Bankr. D. Del. Feb. 17, 2022); *In re Seadrill Limited,* Case No. 21-30427 (Bankr. S.D. Tex. May 21, 2021); *In re Guitar Center, Inc.,* Case No. 20-34656 (Bankr. E.D. Va. Dec. 16, 2020); *In re Skillsoft Corporation,* Case No. 20-11532 (Bankr. D. Del. Jul. 21, 2020); *In*

*re Exide Holdings, Inc.,* Case No. 20-11157 (Bankr. D. Del. Jul. 16, 2020); and *In re Aceto Corporation,* Case No. 19-13448 (Bankr. D.N.J. Apr. 2, 2019).[3]

8. The resources, capabilities and experience of Houlihan Lokey are crucial to enabling the Debtor to evaluate various transaction alternatives and to implement a successful transaction. An investment banker with a deep bench of experience, such as Houlihan Lokey, fulfills a critical need that complements the services offered by the Debtor's other professionals.

**Services to Be Provided by Houlihan Lokey**

9. The parties have entered into the Engagement Agreement, which governs the relationship between the Debtor and Houlihan Lokey. The terms and conditions of the Engagement Agreement were negotiated at arm's length and in good faith between the Debtor and Houlihan Lokey and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Under the Engagement Agreement, in consideration for the compensation contemplated thereby, Houlihan Lokey has agreed to provide the following services:

a. assisting Pacifica in the development and distribution of selected information, documents and other materials, including, if appropriate, advising Pacifica in the preparation of an offering memorandum

b. assisting Pacifica in evaluating indications of interest and proposals regarding any Transaction(s) from current and/or potential lenders, equity investors, acquirers and/or strategic partners,

c. assisting Pacifica with the negotiation of any Transaction(s), including participating in negotiations with creditors and other parties involved in any Transaction(s),

d. attending meetings of Pacifica's Board of Directors, creditor groups, official constituencies and other interested parties, as Pacifica and Houlihan Lokey mutually agree,

e. providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary, and

[3] Given of the voluminous nature of the orders cited in this Application, they are not attached to the Application. Copies of these orders are available upon request to the Debtor's proposed counsel.

f. providing such other financial advisory and investment banking services as may be agreed upon by Houlihan Lokey and Pacifica.

10. The Debtor believes that Houlihan Lokey's services will not duplicate the services that other professionals will be providing to the Debtor in the chapter 11 case. Houlihan Lokey will use reasonable efforts to coordinate with the Debtor's other retained professionals to avoid unnecessary duplication of services.

**Houlihan Lokey's Compensation**

11. In consideration of the services to be provided by Houlihan Lokey, and as more fully described in the Engagement Agreement, subject to the Court's approval, the Debtor has agreed to pay Houlihan Lokey the following proposed compensation, which is set forth in the Engagement Agreement (the "Fee and Expense Structure"):

(i) *Monthly Fees*: Upon the execution of the Engagement Agreement and thereafter on the 29th day of each month (28th for February), starting on August 29, 2026, during the term of this Agreement, Houlihan Lokey shall earn, without notice or invoice, a nonrefundable fee of $100,000 ("Monthly Fee"). Each Monthly Fee shall be earned upon the date thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein. Each Monthly Fee shall be paid 50% in cash on the date earned and the remaining 50% shall be paid on the earlier of (a) the payment date of any simultaneous or subsequent Transaction Fee (as defined below) to which Houlihan Lokey is owed hereunder, except for a Financing Transaction Fee associated with a DIP Financing, and (b) the expiration or termination of this Agreement, upon which date all previously deferred and unpaid Monthly Fees shall be paid in full in cash, and

(ii) *Transaction Fee(s)*: In addition to the other fees provided for herein, the Debtor shall pay Houlihan Lokey the following transaction fee(s):

a. *Restructuring Transaction Fee.* Upon the effective date of a confirmed plan of reorganization or liquidation under the Bankruptcy Code (as defined below), Houlihan Lokey shall earn, and the Debtor shall promptly pay to Houlihan Lokey, a cash fee ("Restructuring Transaction Fee") of $1,250,000,

b. *Sale Transaction Fee.* Upon the closing of a Sale Transaction (as defined below), Houlihan Lokey shall earn, and the Debtor shall thereupon pay to Houlihan Lokey immediately and directly from the gross proceeds of such Sale Transaction, as a cost of such Sale Transaction, a cash fee ("Sale Transaction Fee") based upon Aggregate Gross Consideration ("AGC"), calculated as follows:

| | |
|---|---|
| For AGC less than $25 million: | $1,250,000, plus |
| For AGC from $25 million to $30 million: | 3.0% of such incremental AGC, plus |

For AGC more than $30 million or more: 6.0% of such incremental AGC.

c. *Financing Transaction Fee.* Upon the closing of each Financing Transaction (as defined below), Houlihan Lokey shall earn, and the Debtor shall thereupon pay to Houlihan Lokey immediately and directly from the gross proceeds of such Financing Transaction, as a cost of such Financing Transaction, a cash fee ("Financing Transaction Fee") equal to the greater of (1) the sum of: (I) 2.0% of the gross proceeds of any indebtedness raised or committed that is senior to other indebtedness of the Debtor, secured by a first priority lien and unsubordinated, with respect to both lien priority and payment, to any other obligations of the Debtor (other than with respect to debtor-in-possession financing), (II) 4.0% of the gross proceeds of any indebtedness raised or committed that is secured by a lien (other than a first lien), is unsecured and/or is subordinated, and (III) 6.0% of the gross proceeds of all equity or equity-linked securities (including, without limitation, convertible securities and preferred stock) placed or committed and (2) (I) for a Financing Transaction in which Houlihan Lokey is not asked to conduct a formal financing marketing process with prepared marketing materials (a "Financing Process"), $200,000 or (II) for a Financing Transaction in which Houlihan Lokey is asked to conduct a Financing Process, $500,000.

**The Fee and Expense Structure is Appropriate and Reasonable and Should be Approved under Section 328(a)**

12. The Debtor believes that the Fee and Expense Structure is comparable to those generally charged by investment bankers of similar stature to Houlihan Lokey for comparable engagements, both in and out of bankruptcy proceedings, and reflects a balance between a fixed fee and a contingency amount tied to the consummation and closing of the transactions and services contemplated by the Debtor and Houlihan Lokey in the Engagement Agreement.

13. The Fee and Expense Structure is consistent with Houlihan Lokey's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out of bankruptcy proceedings, involving the services to be provided in connection with the chapter 11 case. Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by Houlihan Lokey and other investment banks in connection with the rendering of comparable services to clients such as the Debtor.

14. Houlihan Lokey's restructuring expertise, as well as its financing skills and mergers and acquisitions expertise, some or all of which may be required by the Debtor during the term of Houlihan Lokey's engagement, were important factors in determining the Fee and Expense

Structure. The ultimate benefit to the Debtor derived from the services provided by Houlihan Lokey pursuant to the Engagement Agreement cannot be measured by a reference to the number of hours expended by Houlihan Lokey's professionals.

15. The Debtor and Houlihan Lokey negotiated the Fee and Expense Structure to function as an interrelated, integrated unit corresponding to Houlihan Lokey's overall services. It would be contrary to the intention of Houlihan Lokey and the Debtor for any isolated component of the Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of Houlihan Lokey's services. Instead, the Debtor and Houlihan Lokey intend that Houlihan Lokey's services be considered as a whole for which Houlihan Lokey is to be compensated by the Fee and Expense Structure in its entirety.

16. In light of the foregoing and given the numerous issues that Houlihan Lokey may be required to address in the performance of its services pursuant to the Engagement Agreement, Houlihan Lokey's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Houlihan Lokey's services for both in court and out of court engagements of this nature, the Debtor believes that the Fee and Expense Structure is fair and reasonable and market-based under the standards set forth in § 328(a).

**Record Keeping and Applications for Compensation**

17. It is not the general practice of investment banking firms, including Houlihan Lokey, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-1. Since Houlihan Lokey does not maintain contemporaneous time records in one-tenth hour (0.10) increments or provide or conform to a schedule of hourly rates for professional services, the Debtor request that Houlihan Lokey be excused from compliance with such requirements and instead should only be required to maintain time records in half-hour (0.50) increments setting forth, in a summary format, a reasonably detailed description of the services

rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtor.

18. Houlihan Lokey's restructuring expertise, mergers and acquisitions expertise, healthcare industry experience, capital markets knowledge and financing skills, some or all of which may be required by the Debtor during the term of Houlihan Lokey's engagement, were important factors in determining the Fee and Expense Structure. The ultimate benefit to the Debtor derived from the services provided by Houlihan Lokey pursuant to the Engagement Agreement cannot be measured by a reference to the number of hours expended by Houlihan Lokey's professionals.

19. Houlihan Lokey will also maintain reasonably detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.

20. Houlihan Lokey's applications for compensation and expense reimbursement will be paid by the Debtor pursuant to the terms of the Engagement Agreement and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures established by the Court. For the avoidance of doubt, Houlihan Lokey will file interim and final fee applications with the Court.

**Houlihan Lokey's Disinterestedness**

21. To the best of the Debtor's knowledge and belief and except to the extent disclosed herein and in the Turnbull Declaration, Houlihan Lokey: (i) is a "disinterested person" within the meaning of § 101(14); and (ii) does not hold or represent any interest materially adverse to the Debtor or its estates.

22. As set forth in further detail in the Turnbull Declaration, Houlihan Lokey has certain connections with creditors and other parties in interest in the chapter 11 case. The Debtor and Houlihan Lokey do not believe that any of these connections constitute an interest materially

adverse to the interest of the estate or of any class of creditors or equity holders in the chapter 11 case.

23. To the extent Houlihan Lokey discovers any material facts bearing on the matters described herein during the period of Houlihan Lokey's retention, Houlihan Lokey has undertaken to amend and supplement the information contained in this Application and the Turnbull Declaration to disclose such facts.

24. As set forth in the Turnbull Declaration, Houlihan Lokey has not shared or agreed to share any of its compensation from the Debtor with any other person, other than as permitted by § 504. If any such agreement is entered into, Houlihan Lokey has undertaken to amend and supplement the information contained in this Application and the Turnbull Declaration to disclose the terms of any such agreement.

25. No promises have been received by Houlihan Lokey, or by any professionals engaged hereunder, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

**Indemnification Provisions**

26. Among other things, the Engagement Agreement provides that the Debtor shall indemnify Houlihan Lokey and the other HL Parties (as defined in the Engagement Agreement) against any and all losses, claims, damages, or liabilities to which the HL Parties may become subject in connection with the Engagement Agreement, except to the extent such losses are finally judicially determined to have resulted primarily from such HL Party's gross negligence or willful misconduct.

27. The Debtor and Houlihan Lokey believe that the indemnification, contribution, reimbursement, and other related provisions contained in the Engagement Agreement are customary and reasonable for investment banking engagements, both in and out of court, and, as

modified by the Proposed Order, reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.

28. The terms and conditions of the Engagement Agreement, including these provisions, were negotiated by the Debtor and Houlihan Lokey at arm's length and in good faith. The Debtor respectfully submits that such provisions, viewed in conjunction with the other terms of Houlihan Lokey's proposed retention, are reasonable and in the best interests of the Debtor, its estate and creditors in light of the fact that the Debtor requires Houlihan Lokey's services in the chapter 11 case.

**Basis for Relief**

29. The Debtor seeks authority to employ and retain Houlihan Lokey as their investment banker under § 327, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtor] in carrying out the [Debtor's] duties under this title." 11 U.S.C. § 327(a). Section 1107(b) elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

30. In addition, the Debtor seeks approval of the Engagement Agreement (including the Fee and Expense Structure and the indemnification, contribution, reimbursement and other related provisions) pursuant to § 328(a), which provides, in relevant part, that the Debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section

328 permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted), *cited in Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC)*, 383 B.R. 869, 874 (S.D.N.Y. 2008).

31. The Engagement Agreement appropriately reflects (i) the nature and scope of services to be provided by Houlihan Lokey, (ii) Houlihan Lokey's substantial experience with respect to investment banking services, and (iii) the Fee and Expense Structures typically utilized by Houlihan Lokey and other leading investment bankers.

32. Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases. *See, e.g.*, *In re JOANN Inc.,* Case No. 24-10418 (Bankr. D. Del. Apr. 15, 2024); *In re Cano Health, Inc.,* Case No. 24-10164 (Bankr. D. Del. Mar. 22, 2024); *In re MVK FarmCo LLC,* Case No. 23-11721 (Bankr. D. Del. Dec. 6, 2023); *In re OSG Holdings, Inc.,* Case No. 23-90799 (Bankr. S.D. Tex. Nov. 17, 2023); *In re Carestream Health, Inc.,* Case No. 22-10778 (Bankr. D. Del. Oct. 7, 2022); *In re Revlon, Inc.,* Case No. 22-10760 (Bankr. S.D.N.Y. Aug. 23, 2022); *In re PWM Property Management LLC,* Case No. 21-

11445 (Bankr. D. Del. Feb. 17, 2022); *In re Seadrill Limited,* Case No. 21-30427 (Bankr. S.D. Tex. May 21, 2021); *In re Guitar Center, Inc.,* Case No. 20-34656 (Bankr. E.D. Va. Dec. 16, 2020); *In re Skillsoft Corporation,* Case No. 20-11532 (Bankr. D. Del. Jul. 21, 2020); *In re Exide Holdings, Inc.,* Case No. 20-11157 (Bankr. D. Del. Jul. 16, 2020); and *In re Aceto Corporation,* Case No. 19-13448 (Bankr. D.N.J. Apr. 2, 2019). Accordingly, the Debtor believes that Houlihan Lokey's retention on the terms and conditions proposed herein is appropriate.

## Notice

33. The Debtor will serve notice of this Application on: (i) the Office of the U.S. Trustee for the District of Delaware; (ii) all alleged secured creditors; (iii) the thirty largest general unsecured creditors appearing on the list filed in accordance with Bankruptcy Rule 1007(d); and (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

34. No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A** (i) granting the relief sought herein and (ii) granting such other and further relief as the Court may deem proper.

Dated: August 21, 2026
Wilmington, Delaware

*/s/ Laura Davis Jones*

Laura Davis Jones (DE Bar No. 2436)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
Wilmington, DE 19899
Telephone: (302) 652-4100
Email: ljones@pszjlaw.com

and

Tania M. Moyron (admitted *pro hac vice*)
Samuel R. Maizel (admitted *pro hac vice*)
**DENTONS US LLP**
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
samuel.maizel@dentons.com

John D. Beck (admitted *pro hac vice*)
Geoffrey Miller (admitted *pro hac vice*)
**DENTONS US LLP**
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
geoffrey.miller@dentons.com

*Counsel to Debtor and Debtor in Possession*