# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Pacifica of the Valley Corporation,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11060 (TMH) |

**ORDER (1) APPROVING AUCTION SALE FORMAT AND BIDDING PROCEDURES; (2) APPROVING PROCESS FOR DISCRETIONARY SELECTION OF STALKING HORSE BIDDER AND BID PROTECTIONS; (3) APPROVING FORM OF NOTICE TO BE PROVIDED TO INTERESTED PARTIES; (4) SCHEDULING A COURT HEARING TO CONSIDER APPROVAL OF THE SALE TO THE HIGHEST AND BEST BIDDER; AND (5) APPROVING PROCEDURES RELATED TO THE ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (II) AN ORDER AUTHORIZING THE SALE OF PROPERTY FREE AND CLEAR OF ALL CLAIMS, LIENS AND ENCUMBRANCES**

This matter coming before the Court on the motion [Docket No. ] (the "Motion") of the above-captioned debtor and debtor in possession (the "Debtor") for the entry of the Order, as applicable, pursuant to §§ 105(a), 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Delaware ("Local Rules"): (a) approving a process by which interested parties may bid (a "Bid") to purchase substantially all of the Debtor's assets (collectively, the "Purchased Assets"), including the assignment and assumption of Assumed Executory Contracts, together with the payment of Cure Costs (as such terms are defined in the Motion); (b) approving a process by which, at the Debtor's election, a stalking-horse bidder may be selected from among those parties making a Bid, and bidding

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley (7312). The Debtor's mailing address is 9449 San Fernando Road, Sun Valley, CA 91352.

protections may be granted to such stalking horse bidder without further order of the Court; (c) setting bid procedures to establish guidelines for parties interesting in making initial Bids and overbids to such initial Bids; (d) if multiple Qualified Bids (as defined in the Motion) are received, scheduling an auction of the Purchased Assets; and (e) scheduling a sale hearing for the Court to approve the highest and best Qualified Bid.

The Court has further reviewed and considered and *Declaration of Precious Mayes in Support of Emergency First-Day Motions* [Docket No. 16].

The Court, having found that (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), and (iv) notice of the Motion was sufficient under the circumstances and properly given; and it appearing that no other or further notice need be provided; and a hearing on the proposed Bidding Procedures as detailed in the Motion having been held (the "Hearing"); and after due deliberation the Court having determined that the relief requested in the Motion with respect to the proposed Bidding Procedures is in the best interests of the Debtor, its estate, and its creditors; and good and sufficient cause having been shown:

AND IT IS FURTHER FOUND AND DETERMINED THAT:

A. The statutory and legal predicates for the relief requested in the Motion and provided for herein are §§ 105(a), 363, and 365, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Local Rule 9013-1.

B. In the Motion and the evidence provided, the Debtor demonstrated that good and sufficient notice of the relief granted by this Order has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been

afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

C. The Debtor's proposed Procedures Notice, Cure Notice, the Auction, the Auction Procedures, and the hearing to approve the sale of the Purchased Assets (the "Sale Hearing") are appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

D. The Bidding Procedures substantially in the form attached hereto as **Exhibit 1** are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale of the Purchased Assets.

E. The Break-Up Fee is reasonably calculated to: (1) attract or retain a potentially successful bid; (2) establish a bid standard or minimum for other bidders to follow; and (3) attract additional bidders. Accordingly, in light of the foregoing, the size and nature of the Sale, and the efforts that would be expended by a Stalking Horse Purchaser, the Break-Up Fee is reasonable and appropriate.

F. The procedures for assumption and assignment of Assumed Executory Contracts (the "Assumption and Assignment Procedures") attached hereto as **Exhibit 2** and the Cure Notice attached hereto as **Exhibit 4** are reasonable and appropriate and consistent with the provisions of § 365 and Bankruptcy Rule 6006. The Assumption and Assignment Procedures and the Cure Notice have been narrowly tailored to provide an adequate opportunity for all non-debtor counterparties to the Assumed Executory Contracts to assert any Assumption Objection.

G. Entry of this Order at this time is in the best interests of the Debtor, its estate and creditors, and all other parties in interest.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth herein.

2. The Bidding Procedures attached hereto as **Exhibit l** are APPROVED.

3. The Assumption and Assignment Procedures attached hereto as **Exhibit 2** are APPROVED.

4. At any time but not later than twenty-hour (24) hours prior to the commencement of the Auction, the Debtor, in its discretion, after consultation with the Committee, is authorized to designate a Qualified Bidder as the "Stalking Horse Bidder" and award stalking horse protections, including a break-up fee and/or expense reimbursement in an amount not to exceed in the aggregate 2.5% of the proposed Purchase Price under such Qualified Bidder's Qualified APA (the "Break-Up Fee"). The Debtor shall have no obligation to designate any Qualified Bidder as the Stalking Horse Bidder. The award of stalking horse protection may occur without further notice or order of the Court other than the filing of a notice on the Bankruptcy Court docket no later than twenty-four (24) hours prior to the commencement of the Auction. If such designation is made, the Debtor shall notify all other Potential Bidders.

5. The Break-Up Fee is APPROVED. Any Break-Up Fee, to the extent payable, shall only be paid from the cash proceeds received by the Debtor at the closing of a Sale or the transfer of the Purchased Assets to a party other than the Stalking Horse Bidder.

6. The Debtor, in consultation with the Committee, will communicate a Bid Deadline to Potential Bidders of mid to late October 2026 for Potential Bidders to submit Bids.

7. The Debtor, after consultation with the Committee, shall determine, in its reasonable discretion, whether a Bid has satisfied each of the Bid Requirements. No later than one business day prior to the Auction, the Debtor shall (i) advise each Potential Bidder that submitted

a Bid if that Bid has been determined to be a Qualified Bid by the Debtors, in consultation with the Committee, and (ii) file and serve on all Potential Bidders that submitted a Bid (regardless of whether such Bid was determined to be a Qualified Bid) a notice indicating if there are multiple Qualified Bids, in which case the Auction shall be conducted. In the event that the Debtor does not receive more than one Qualified Bid, the Debtor may, after consultation with the Committee, (i) cancel the Auction or (ii) not hold the Auction and name the sole Qualified Bidder as the Winning Bidder for the Purchased Assets.

8. Any party with a valid, properly perfected prepetition or post-petition security interest in any of the Purchased Assets that is not subject to any pending written objection[2] as to the validity, extent, or priority, may credit bid (any such bid, a "Credit Bid" and any party submitting a Credit Bid, each a "Credit Bidder") for such Purchased Assets in connection with the Sale in accordance with and pursuant to § 363(k), except as otherwise limited by the Court for cause; *provided*, *however*, that no Credit Bidder may Credit Bid unless (x) all secured creditors with a valid and perfected security interest in the Purchased Assets subject to the Credit Bid that rank equal or senior in priority to the security interest of the Credit Bidder in the Purchased Assets consent in writing to such Credit Bid or (y) the Credit Bid expressly provides for the cash payment in an amount sufficient to satisfy any such valid and perfected security interests in the Purchased Assets that are equal or senior in priority to the security interests of the Credit Bidder at the closing of the Sale. Nothing in the Bidding Procedures will limit the rights of any party in interest to seek relief from the Court related to the right or alleged right of any creditor to exercise a Credit Bid for any of the Purchased Assets. Such Credit Bidder must submit a Credit Bid by the Bid Deadline.

[2] For the avoidance of doubt, a written objection may be in the form of a letter to counsel for Credit Bidder or a pleading filed with the Bankruptcy Court.

9. If there is a pending written objection (a "Credit Bid Challenge") as of the time of commencement of the Auction as to the amount, validity or perfection of the security interest in any of the Purchased Assets held by a Credit Bidder that submitted a Qualified Bid, such Credit Bidder shall be required to bid at the Auction in cash and pay the Purchase Price in cash (but only to the extent of the disputed amount) into an escrow account (the "Credit Bid Escrowed Funds") with an escrow agent reasonably acceptable to the Debtor, the Committee, and the Credit Bidder (the "Credit Bid Escrow Agent") pursuant to an escrow agreement in form and substance reasonably acceptable to the Debtor, the Committee, and the Credit Bidder (the "Credit Bid Escrow Agreement"), unless the Credit Bidder obtains an Order of the Bankruptcy Court modifying this provision. The Credit Bid Escrowed Funds shall be applied or returned to such Credit Bidder in accordance with the following terms:

a) If the Credit Bidder is the Back-Up Bidder, the Credit Bid Escrow Agent shall return all Credit Bid Escrowed Funds within two (2) business days after the earlier of (i) the closing of the Sale to the Winning Bidder, or (ii) the Outside Back-Up Date.

b) If the Credit Bidder is the Winning Bidder, the Credit Bid Escrowed Funds shall remain in escrow pending entry of a Final Order resolving the Credit Bid Challenge (by judgment or settlement) and providing for disposition of the Credit Bid Escrowed Funds.

10. Any dispute arising under or related to a Credit Bid Challenge or the Credit Bid Escrow Agreement, including without limitation, the amount of a Credit Bid, shall be subject to the exclusive jurisdiction of the Bankruptcy Court. As a condition of its appointment, the Credit Bid Escrow Agent shall consent to the jurisdiction of the Bankruptcy Court for purposes of any

dispute regarding the release or distribution of the Credit Bid Escrowed Funds and shall comply with any order of the Bankruptcy Court directing the release, retention, or distribution thereof. In the event of any dispute regarding the amount of a Credit Bid, the dispute shall be resolved or adjudicated by the Bankruptcy Court prior to commencement of the Auction and all parties in interest may be heard in connection therewith.

11. If the Debtor receives one or more Qualified Bids, the Auction shall be held in mid to late October 2026, at such time and location as noticed by the Debtor. The Auction will be governed by the procedures set forth in the Bidding Procedures.

12. At the Auction, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale, and the Auction shall be conducted openly and transcribed (with Qualified Bidders, the Debtor, the Committee, and their respective legal and financial advisors, permitted to attend). Upon the conclusion of the Auction (if such Auction is conducted), the Debtor, in the exercise of its reasonable, good-faith business judgment and after consultation with the Committee, shall identify (i) the Winning Bid, which is the highest and best Qualified Bid submitted at the Auction; and (ii) the next highest and best Qualified Bid (the "Back-Up Bid" and the party submitting the Back-Up Bid, the "Back-Up Bidder"). Each of the Winning Bidder and the Back-Up Bidder shall execute a definitive Qualified Bid conformed to the provisions of the Winning Bid and the Back-Up Bid, as applicable, as soon as practicable, but, in no event, later than the start of the Sale Hearing.

13. Within two business days after the conclusion of the Auction (and in advance of the Sale Hearing), the Debtor shall file a notice of the Winning Bid and Back-Up Bid (the "Notice of Winning Bid and Back-Up Bid"), redacted as necessary to protect commercially sensitive and/or confidential information.

14. The Sale Hearing shall be held on mid to late October 2026, as set by this Court and noticed by the Debtor, before this Court, the U.S. Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801. Any objections to the Sale (other than an Assumption Objection which shall be governed by the procedures set forth below) (a "Sale Objection"), must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service; and (e) be served, so as to be actually received upon (i) counsel to the Debtor: Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017 (Attn: Samuel R. Maizel (samuel.maizel@dentons.com) and Tania M. Moyron (tania.moyron@dentons.com)) and Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899 (Attn: Laura Davis Jones (ljones@pszjlaw.com)) and Timothy P. Cairns (tcairns@pszjlaw.com)); (ii) the Debtor's Chief Restructuring Officer: Berkeley Research Group, 1800 M Street NW, Second Floor, Washington, DC 20036 (Attn: Peter Chadwick (pchadwick@thinkbrg.com)); (iii) the Debtor's Investment Banker: Houlihan Lokey, 111 S. Wacker Drive, 37th Floor, Chicago, IL 60606 (Attn: Andrew Turnbull (aturnbull@hl.com) and Ibreez Esmail (ibreez.esmail@hl.com)); (iv) the United States Trustee: Office of the United States Trustee, 844 King St., Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Hannah J. McCollum (hannah.mccollum@usdoj.gov)); and (v) counsel to the Committee: Sills Cummis & Gross, P.C., One Riverfront Plaza, Newark, NJ 07102 (Attn: Andrew H. Sherman (asherman@sillscummis.com) and Boris I. Mankovetskiy (bmankovetskiy@sillscummis.com)) (collectively, the "Notice Parties"). If a Sale Objection is not filed and served on or before the deadline to object to the sale, as set by this Court and noticed by the Debtor, the objecting party

may be barred from objecting to the Sale and may not be heard at the Sale Hearing, and this Court may enter an order approving the Sale without further notice to such party.

15. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, and the Debtor shall have the exclusive right, in the exercise of its fiduciary obligations and business judgment, and after consultation with the Committee, to cancel the Sale at any time subject to, and in accordance with, the terms of this Order.

16. The following forms of notice are APPROVED: (a) the Procedures Notice, in the form substantially similar to that attached hereto as **Exhibit 3** and (b) the Cure Notice, in the form substantially similar to that attached hereto as **Exhibit 4.**

17. The Debtor shall file with the Court and serve a copy of this Order and the Procedures Notice by first class mail, postage prepaid, on the Notice Parties and all parties which have requested to receive notice under Bankruptcy Rule 2002 within one (1) business day following entry of this Order.

18. The Debtor shall file with the Court and serve the Cure Notice (along with a copy of this Order) upon each counterparty to the Assumed Executory Contracts by no later than October 8, 2026.

19. To the extent the provisions of this Order are inconsistent with the provisions of any Exhibit referenced herein or with the Motion, the provisions of this Order shall control.

20. The Court shall retain exclusive jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

21. Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable.

# EXHIBIT 1

## BIDDING PROCEDURES

Pacifica of the Valley Corporation (d/b/a Pacifica Hospital of the Valley) (the "Debtor") proposes to conduct a sale process for the Sale (as defined in Paragraph 1 below) of the Purchased Assets (as defined in Paragraph 2 below) and will proceed in accordance with the following bid procedures ("Bidding Procedures"), which have been approved pursuant to an Order ("Bidding Procedures Order") entered by the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") in the Chapter 11[1] case styled *Pacifica of the Valley Corporation*, Case No. 26-11060 (TMH) (the "Bankruptcy Case"). These Bidding Procedures are intended to secure the highest and best offer for the Purchased Assets by a purchaser who has the financial ability to close the Sale.

Not later than October 1, 2026, the Debtor will post a form asset purchase agreement for the Sale (the "Draft APA") in the Debtor's on-line data room ("Data Room") hosted by the Debtor's investment banker, Houlihan Lokey, containing due diligence information related to the Purchased Assets. As provided for below, the Debtor is soliciting bids ("Bids") for the proposed acquisition of the Purchased Assets, in accordance with the procedures below, which require, among other requirements, that prospective bidders submit a Qualified APA (as defined in paragraph 9 below), in the form of the Draft APA, along with a marked version evidencing any changes to the Draft APA. The Debtor will consider all Bids which comply with the terms of these Bidding Procedures; *provided*, *that*, Bids will be evaluated, in consultation with the Committee, based upon the consideration provided by such offer and certainty of closing the transaction. The Debtor, in the exercise of its business judgment, and in consultation with the Committee, may elect to exclude any assets from the Sale and sell such assets at either a private or public sale, subject to Court approval of any alternative sale method.

1. **Sale Proposal.** These Bidding Procedures set forth the terms by which prospective bidders may qualify for and participate in the Sale and, if applicable, the Auction (as defined in Paragraph 13 below), thereby competing to make the highest and best offer for the Purchased Assets. Except as specifically set forth in the Qualified APA, the sale of the Purchased Assets (a "Sale") shall be free and clear of any and all claims, liens, and other encumbrances, pursuant to § 363 with all such liens, claims and encumbrances attaching to the proceeds of the Sale to the same extent and with the same priority as such liens, claims and encumbrances attached to the Purchased Assets prior to the Sale.

2. **Purchased Assets.** For purposes of a Sale, the "Purchased Assets" consist of any and/or all tangible and intangible real and personal property assets of the Debtor as defined and set forth in the Draft APA.

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

3. **<u>"As Is, Where Is" Sale</u>.** Except as explicitly set forth in the Draft APA, any Sale of the Purchased Assets will be transferred on an "as is, where is" basis, with all faults, and without representations or warranties of any kind, nature or description by the Debtor, its agents or bankruptcy estates, whether written, verbal, express, implied, or by operation of law.

4. **<u>Committee</u>**. "<u>Committee</u>" means the Official Committee of Unsecured Creditors.

5. **<u>Potential Bidders / Execution of NDA/ Financial Information</u>**. Any party (a "<u>Potential Bidder</u>") wishing to submit a Bid to purchase any and/or all of the Purchased Assets must execute, or have executed, a nondisclosure agreement ("<u>NDA</u>") in the form provided by the Debtor's advisors and in form and substance satisfactory to the Debtor before such Potential Bidder may receive due diligence information from the Debtor, including access to the Debtor's Data Room or other non-public information relating to the Purchased Assets. In addition, any Potential Bidder must submit financial information (such as bank statements, current balance sheet, income statement, audited financials or similar documents in the discretion of the Debtor's advisors) to the Debtor, to evidence such Potential Bidder's ability to consummate the Sale, which information must be satisfactory to the Debtor after consultation with the Committee. Each Potential Bidder shall comply with all reasonable requests with respect to information and due diligence access requested by the Debtor or its advisors regarding such Potential Bidder. Failure by a Potential Bidder to comply with such reasonable requests for additional information may be a basis for the Debtor to determine, in consultation with the Committee, that such Potential Bidder may no longer participate in the Auction, or that a Bid made by such Potential Bidder shall not be deemed a Qualified Bid. At the Debtor's option, after consultation with the Committee, Potential Bidders may be required to submit an Indication of Interest to purchase the Purchased Assets to the Debtor and the Committee, which includes (a) the proposed structure of the transaction, purchase price and any material terms; (b) a description of the acquiring entity and relevant experience; (c) proposed plans for the assets following consummation of the sale transaction; (d) evidence of financial capacity and wherewithal to consummate the transaction and operate the Purchased Assets; (e) evidence of ability to comply with any necessary regulatory approvals to operate the Purchased Assets; (f) authority and approval to complete the transaction; (g) a detailed description of the due diligence information and / or investigation the Potential Bidder may require to submit a Bid; (h) a proposed timetable for consummating the transaction, including any necessary regulatory approvals; and (i) contact information for the Potential Bidder. Such Indications of Interest shall be due by a date which the Debtor will provide to Potential Bidders. A Potential Bidder's failure to submit an Indication of Interest shall not be a basis to disqualify such Potential Bidder from further participation in the Sale process.

6. **<u>Due Diligence</u>**. After receipt of an executed NDA, the Debtor shall, provide each Potential Bidder reasonable due diligence information as soon as reasonably practicable, including access to the Data Room. The Debtor shall not furnish, and

shall have no obligation to furnish, any confidential and/or non-public information relating to the Purchased Assets or the Debtor (collectively, "Confidential Information"), or grant access to the Data Room, to (a) any person that does not qualify as a Potential Bidder, or (b) to Potential Bidders who, at such time and in the Debtor's reasonable business judgment, after consultation with the Committee, have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate the Sale; *provided*, *however*, that the Debtor is required to provide access to the Data Room, and the Confidential Information contained within, to the Committee's professionals on a professional eyes only basis.

7. **Representations and Warranties**. The Debtor makes no representation or warranty as to the Confidential Information provided through the due diligence process or otherwise, except to the extent set forth in the Qualified APA entered into between the Debtor and the Winning Bidder (as defined in Paragraph 13 below). No party may conduct any additional due diligence after the Bid Deadline (as defined under Paragraph 8 below).

8. **Bid Deadline.** The Debtor, in consultation with the Committee, will communicate a deadline to Potential Bidders of mid to late October 2026 for Potential Bidders to submit Bids (the "Bid Deadline"). Potential Bidders must submit their Bids so that such Bids are actually received by each of the following parties on or before the Bid Deadline: (a) counsel to the Debtor: Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017 (Attn: Samuel R. Maizel (samuel.maizel@dentons.com) and Tania M. Moyron (tania.moyron@dentons.com)) and Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899 (Attn: Laura Davis Jones (ljones@pszjlaw.com)) and Timothy P. Cairns (tcairns@pszjlaw.com)); (b) the Debtor's Chief Restructuring Officer: Berkeley Research Group, 1800 M Street NW, Second Floor, Washington, DC 20036 (Attn: Peter Chadwick (pchadwick@thinkbrg.com)); (c) the Debtor's Investment Banker: Houlihan Lokey, 111 S. Wacker Drive, 37th Floor, Chicago, IL 60606 (Attn: Andrew Turnbull (aturnbull@hl.com) and Ibreez Esmail (ibreez.esmail@hl.com)); (d) the United States Trustee: Office of the United States Trustee, 844 King St., Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Hannah J. McCollum (hannah.mccollum@usdoj.gov)); and (e counsel to the Committee: Sills Cummis & Gross, P.C., One Riverfront Plaza, Newark, NJ 07102 (Attn: Andrew H. Sherman (asherman@sillscummis.com) and Boris I. Mankovetskiy (bmankovetskiy@sillscummis.com)) (collectively, the "Bid Deadline Recipients"). Potential Bidders must e-mail their Bids to the e-mail addresses listed above so that they are actually received by the Bid Deadline Recipients by the Bid Deadline. The Debtor shall have no obligation to consider any other delivery format, such as fax, as being acceptable. The Debtor will not reject any Bid solely on the basis that a Potential Bidder inadvertently failed to serve any of the Bid Deadline Recipients other than Houlihan Lokey.

9. **Qualified Bid**. In order to constitute a "Qualified Bid," a Bid must satisfy the following requirements (the "Bid Requirements"):

(a) be submitted (i) in writing (email being sufficient) and (ii) be received by the Bid Deadline Recipients by the Bid Deadline as set forth in Paragraph 8 of these Bidding Procedures, subject to Paragraph 11 of these Bidding Procedures;

(b) clearly state the particular Purchased Assets to be purchased;

(c) constitute an irrevocable, binding, offer to purchase the identified Purchased Assets in accordance with the terms of the Qualified APA (as defined in this Paragraph 9) for a proposed purchase price ("Purchase Price") identified in such Qualified APA and defined as the "Purchase Price" therein;

(d) contain cash consideration of no less than is necessary to satisfy (i) the Break-Up Fee, and (ii) the Debtor's administrative claims (unless such administrative claimant has agreed to an alternative form of consideration) and which administrative claim amount shall be provided to Potential Bidders no less than three (3) business days prior to the Bid Deadline;

(e) identify the legal name of the Potential Bidder (including any direct or indirect equity holders, if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale);

(f) be accompanied by a clean and a duly executed copy of an asset purchase agreement (the "Qualified APA"), the form of which shall be consistent with the Draft APA and which shall not be inconsistent with these Bidding Procedures;

(g) be accompanied by a copy of the Qualified APA which is marked to reflect the amendments and modifications compared to the Draft APA;

(h) be accompanied by a copy of the draft Sale Order (as defined under Paragraph 15 below) marked to reflect the amendments and modifications (if any) compared to the form of draft Sale Order posted in the Data Room;

(i) be accompanied by a deposit by wire transfer in an amount equal to ten percent (10%) of the aggregate cash component of the Purchase Price in certified funds or such other amount acceptable to the Debtor, in consultation with the Committee ("Deposit"), to be held in escrow and treated in accordance with the provisions of Paragraph 16 of these Bidding Procedures;

(j) provide copies of the Bidder's most recent bank and financial statements and information to demonstrate to the satisfaction of the Debtor and its

advisors, in consultation with the Committee, that such Potential Bidder has the financial wherewithal and ability to timely consummate the Sale;

(k) not be conditioned on any due diligence, financing, or other contingencies other than entry of the Sale Order, and any other contingencies solely to the extent set forth in the Qualified APA;

(l) contain a detailed description of how the Qualified Bidder intends to treat current employees of the Debtor and any applicable union contract(s);

(m) contain a detailed description of how the Qualified Bidder intends to satisfy any regulatory approvals necessary to operate the Purchased Assets;

(n) agree to close the transaction with the Debtor through the use of an Interim Management Agreement, Sale / Leaseback and / or such other agreements pursuant to which applicable regulatory and other approvals will be obtained after the closing;

(o) remain irrevocable until forty-eight (48) hours after the conclusion of the Sale Hearing or such longer period of time as set forth below if the Potential Bidder is selected as the Winning Bidder or Back-Up Bidder (as defined below);

(p) if such Qualified Bid includes a Credit Bid, evidence of (i) the basis, amount and priority of the Credit Bidder's security interest in the Purchased Assets that are subject to the Credit Bid and (ii) the basis of the Credit Bidder's authority to make such Credit Bid if the Credit Bidder's secured claim is held in a representative capacity. No Bid that includes a Credit Bid made pursuant to § 363(k) shall qualify as a Qualified Bid unless (x) all secured creditors with a valid and perfected security interest in the Purchased Assets subject to the Credit Bid that rank equal or senior to the security interest of the Credit Bidder in such Purchased Assets consent in writing to such Credit Bid or (y) the Credit Bid expressly provides for the payment in full in cash at the closing on account of the Purchased Assets subject to valid and perfected liens that are equal or senior in rank to the security interests of the Credit Bidder;

(q) identify with particularity which executory contracts and unexpired leases the Qualified Bidder wishes the Debtor to assume and assign to it;

(r) contain sufficient information concerning the Qualified Bidder's ability to provide adequate assurance of performance with respect to executory contracts and unexpired leases;

(s) include evidence, in form and substance reasonably satisfactory to the Debtor, of final authorization and approval from the Qualified Bidder's

board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Qualified APA;

(t) identify the person(s) and their title(s) who will attend the Auction, and confirms that at least one such person has authority to make binding overbids at the Auction;

(u) unless a Stalking Horse Bidder has been identified and disclosed no later than two business days prior to the Bid Deadline, state whether the Potential Bidder is willing to serve as a stalking horse bidder and specify any requested bidding protections, including a break-up fee and/or expense reimbursement in an amount not to exceed in the aggregate 2.5% of the proposed Purchase Price of such Bid; and

(v) include the following representations and warranties:

(i) Potential Bidder agrees to be bound by the terms of the Bidding Procedures and the Bidding Procedures Order and consents to the jurisdiction of the Bankruptcy Court (including waiving any right to a jury trial) in connection with any disputes related to these Bidding Procedures as well as (*each as defined below*) the Auction, the Sale Hearing, the Sale Order and/or the closing of the Sale;

(ii) a written statement outlining the absence or presence, and details thereof, of any relationship, affiliation, or connection of any kind between the Potential Bidder, on the one hand, and the Debtor and/or any of its affiliates, current or former officers, directors, creditors, landlords and/or investors;

(iii) an acknowledgement and representation that the Qualified Bidder: (A) has had an opportunity to conduct any and all required due diligence regarding the Purchased Assets prior to making its offer and that the offer is not subject to any further due diligence or the need to raise capital/financing to consummate the proposed transaction; (B) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its bid; (C) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Purchased Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Qualified APA; and (D) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its bid;

(iv) the Potential Bidder is willing to serve as a Back-Up Bidder and that its Qualified Bid (or any Qualified Bid as modified at the Auction)

shall constitute the Back-Up Bid if the Debtor determines that it qualifies as the Back-Up Bid in accordance with the provisions of Paragraph 14;

(v) the Potential Bidder has not engaged in collusion with respect to the submission of its Bid; and

(vi) all proof of financial ability to consummate a Sale in a timely manner and all information provided to support adequate assurance of future performance is true and correct.

10. **Discretionary Determination of Stalking Horse Bidder**. At any time but not later than twenty-four (24) hours prior to the commencement of the Auction, the Debtor, in its discretion, after consultation with the Committee, may agree that a Qualified Bidder which indicated a willingness to serve as a stalking horse bidder shall be afforded stalking horse status and protections (the "Stalking Horse Bidder"), including a break-up fee and/or expense reimbursement in an amount not to exceed in the aggregate 2.5% of the proposed Purchase Price under such Qualified Bidder's Qualified APA (the "Break-Up Fee"). Any Break-Up Fee, to the extent payable, shall only be paid from proceeds received by the Debtor at the closing of a Sale with a Qualified Bidder other than the Stalking Horse Bidder. The award of stalking horse protection may occur without further notice (other than the filing of a notice on the Bankruptcy Court docket no later than twenty-four (24) hours prior to the commencement of the Auction) or order of the Bankruptcy Court. If such designation of the Stalking Horse Bidder is made, the Debtor shall notify all other Potential Bidders.

11. **Determination of Qualified Bids**. A Bid that satisfies each of the Bid Requirements, as determined by the Debtor in its reasonable discretion, in consultation with the Committee, constitutes a "Qualified Bid", and such Potential Bidder constitutes a "Qualified Bidder." The Debtor may determine, in consultation with the Committee, that a Bid is not a Qualified Bid if the Qualified APA differs in any material respect from the Draft APA. Prior to the Auction, the Debtor shall determine, after consultation with the Committee, whether any submitted bids constitute Qualified Bids. No later than one business day prior to the Auction, the Debtor shall (i) advise each Potential Bidder that submitted a Bid if that Bid has been determined to be a Qualified Bid by the Debtors, in consultation with the Committee, and (ii) file and serve on all Potential Bidders that submitted a Bid (regardless of whether such Bid was determined to be a Qualified Bid) a notice (the "Auction Notice") indicating if there are multiple Qualified Bids in which case the Auction shall be conducted as further described below. In the event that the Debtor does not receive more than one Qualified Bid, the Debtor may, after consultation with the Committee, (i) cancel the Auction or (ii) not hold the Auction and name the sole Qualified Bidder as the Winning Bidder for the Purchased Assets.

12. **Credit Bid**. Any party with a valid, properly perfected prepetition or post-petition security interest in any of the Purchased Assets that is not subject to any pending written objection[2] as to validity, extent, or priority, may credit bid (any such bid, a "Credit Bid" and any party submitting a Credit Bid, each a "Credit Bidder") for such Purchased Assets in connection with the Sale in accordance with and pursuant to § 363(k), except as otherwise limited by the Bankruptcy Court for cause; *provided*, *however*, that no Credit Bidder may Credit Bid unless (x) all secured creditors with a valid and perfected security interest in the Purchased Assets subject to the Credit Bid that rank equal or senior to the security interest of the Credit Bidder in the Purchased Assets consent in writing to such Credit Bid or (y) the Credit Bid expressly provides for the cash payment in an amount sufficient to satisfy any such valid and perfected security interests in the Purchased Assets that are equal or senior in priority to the security interests of the Credit Bidder at the closing of the Sale. Nothing herein shall limit the rights of any party in interest to seek relief from the Bankruptcy Court related to the right or alleged right of any creditor to exercise a Credit Bid for any of the Purchased Assets. Such Credit Bidder must submit a Credit Bid by the Bid Deadline.

If there is a pending written objection (a "Credit Bid Challenge") as of the time of commencement of the Auction as to the amount, validity or perfection of the security interest in any of the Purchased Assets held by a Credit Bidder that submitted a Qualified Bid, such Credit Bidder shall be required to bid at the Auction in cash and pay the Purchase Price in cash (but only to the extent of the disputed amount) into an escrow account (the "Credit Bid Escrowed Funds") with an escrow agent reasonably acceptable to the Debtor, the Committee, and the Credit Bidder (the "Credit Bid Escrow Agent") pursuant to an escrow agreement in form and substance reasonably acceptable to the Debtor, the Committee, and the Credit Bidder (the "Credit Bid Escrow Agreement"), unless the Credit Bidder obtains an Order of the Bankruptcy Court modifying this provision. The Credit Bid Escrowed Funds shall be applied or returned to such Credit Bidder in accordance with the following terms:

a) If the Credit Bidder is the Back-Up Bidder, the Credit Bid Escrow Agent shall return all Credit Bid Escrowed Funds within two (2) business days after the earlier of (i) the closing of the Sale to the Winning Bidder, or (ii) the Outside Back-Up Date (as defined in Paragraph 14).

b) If the Credit Bidder is the Winning Bidder, the Credit Bid Escrowed Funds shall remain in escrow pending entry of a Final Order (as defined below) resolving the Credit Bid Challenge (by judgment or settlement) and providing for disposition of the Credit Bid Escrowed Funds.

[2] For the avoidance of doubt, a written objection may be in the form of a letter to counsel for Credit Bidder or a pleading filed with the Bankruptcy Court.

Any dispute arising under or related to this Paragraph 12, a Credit Bid Challenge, or the Credit Bid Escrow Agreement, including without limitation, the amount of a Credit Bid, shall be subject to the exclusive jurisdiction of the Bankruptcy Court. As a condition of its appointment, the Credit Bid Escrow Agent shall consent to the jurisdiction of the Bankruptcy Court for purposes of any dispute regarding the release or distribution of the Credit Bid Escrowed Funds and shall comply with any order of the Bankruptcy Court directing the release, retention, or distribution thereof. In the event of any dispute regarding the amount of a Credit Bid, the dispute shall be resolved or adjudicated by the Bankruptcy Court prior to commencement of the Auction and all parties in interest may be heard in connection therewith.

13. **Auction**. If the Debtor receives one or more Qualified Bids, the Debtor shall conduct an auction at such time and location in mid to late October 2026, as noticed by the Debtor (the "Auction"). All Qualified Bidders and representatives will be required to appear at the Auction in person. The Auction will be conducted to determine the highest and best Qualified Bid (the "Winning Bid," with such bidder being the "Winning Bidder"). Subject to paragraph 18 below, the Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

(a) only Qualified Bidders, in person and through duly-authorized representatives, may bid at the Auction, and every Qualified Bidder must have at least one (1) such duly-authorized representative with authority to bind the Qualified Bidder at the Auction;

(b) only such authorized representatives of each of the Qualified Bidders, the Debtor, the Committee, and their respective legal and financial advisors shall be permitted to attend the Auction;

(c) prior to the commencement of the Auction, representatives of the Debtor, and/or the Committee may have discussions with each Qualified Bidder with respect to the terms and conditions of such Qualified Bids, and the Debtor will have selected, in consultation with the Committee, a Qualified Bid to become the opening bid at the Auction (the bid submitted by such Qualified Bidder shall be referred to as the "Opening Bid" and the Qualified Bidder shall be referred to as the "Opening Bidder");

(d) the Debtor, after consultation with the Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules are (i) not inconsistent with the Bankruptcy Code, and (ii) disclosed to each Qualified Bidder at the Auction;

(e) bidding shall commence at the amount of the Opening Bid. The Opening Bid shall be announced by the Debtor at or before the commencement of bidding at the Auction. Other Qualified Bidders may then submit successive bids in bidding increments of at least $200,000 (each, a

"Overbid"), which shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Qualified Bids. To the extent a Stalking Horse Bidder submits an Overbid, such Stalking Horse Bidder shall have the right (but not the obligation) to increase its Opening Bid by using, as a credit, the amount of the Break-Up Fee when determining whether any Stalking Horse Bidder has topped the previous Bid by the required amount;

(f) Qualified Bidders shall have the right to submit additional bids that include modifications to their Qualified APA at the Auction, consistent herewith, provided that any such modifications to the Qualified APA, on an aggregate basis and viewed in whole, shall not be less favorable to the Debtor than any prior bid by such party (as determined by the Debtor, following consultation with the Committee). The Debtor, in consultation with the Committee, reserves the right to separately negotiate the terms of any Qualified Bids at the Auction, provided the terms are fully disclosed at the time such Qualified Bid is formally submitted;

(g) the bidding will be transcribed by a certified court reporter employed by the Debtor to ensure an accurate recording of the bidding at the Auction;

(h) each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the proposed Sale and is not in violation of § 363(n); *provided*, *however*, that a Qualified Bidder may be authorized to submit a joint bid with another Qualified Bidder only with the Debtor's written consent, in consultation with the Committee. Any collusion by a Qualified Bidder with another Qualified Bidder or other interested party shall, at the election of the Debtor (in consultation with the Committee) disqualify such Qualified Bidder(s) from the ability to continue bidding at the Auction and/or being selected as the Winning Bidder and/or constitute a waiver of the right of such Qualified Bidder(s) to obtain a good faith purchaser finding under § 363(m); and

(i) absent irregularities in the conduct of the Auction, the Debtor will not consider any Potential Bids made after the Auction is closed.

14. **Acceptance of the Winning Bid and Designation of the Back-Up Bid**.

(a) Upon the conclusion of the Auction (if such Auction is conducted), the Debtor, in the exercise of its reasonable, good-faith business judgment and after consultation with the Committee, shall identify (i) the Winning Bid, which is the highest and best Qualified Bid submitted at the Auction; and (ii) the next highest and best Qualified Bid (the "Back-Up Bid" and the party submitting the Back-Up Bid, the "Back-Up Bidder").

(b) Each of the Winning Bidder and the Back-Up Bidder shall be required to execute a definitive Qualified Bid conformed to the provisions of the Winning Bid and the Back-Up Bid, as applicable, as soon as practicable but, in no event, later than the start of the Sale Hearing. For the purposes of these Bidding Procedures, the definitive agreement executed by the (i) Winning Bidder shall be defined as the "Winning Bid APA" and (ii) Back-Up Bidder shall be defined as the "Back-Up Bid APA." The Back-Up Bidder must keep the Back-Up Bid open and irrevocable until the earlier of (i) 5:00 p.m. (Eastern Time) on the date which is thirty (30) days after the entry of the Sale Order (the "Outside Back-Up Date"), or (ii) the date of closing of the Sale to the Winning Bidder. If the Winning Bidder fails to consummate the approved Sale because of a breach or failure to perform on the part of such Winning Bidder, the Back-Up Bidder will be deemed to be the new Winning Bidder, and the Debtor will be authorized, but not required, to consummate the Sale with the Back-Up Bidder without further order of the Court.

(c) Within two business days after the conclusion of the Auction, the Winning Bidder and the Back-Up Bidder shall each deposit with the Debtor an additional amount in cash such that, when combined with their existing Deposit, each such bidder's aggregate Deposit equals ten percent (10%) of the Purchase Price reflected in the final bid of the Winning Bidder and of the Back-Up Bidder, respectively (such additional amounts shall be included in the definition of the "Deposit").

(d) If an Auction is held, the Debtor shall be deemed to have accepted a Qualified Bid as the winner of the Auction (conditioned upon approval by the Bankruptcy Court) only when (i) such bid is declared the Winning Bid; (ii) definitive documentation has been executed in respect thereof; and (iii) any additional Deposit required as a result of a bid submitted at the Auction (as required by the Bidding Procedures) has been provided to the Debtor. Such acceptance is also conditioned upon approval by the Court of the Winning Bid and (if applicable) the Back-Up Bid.

15. **Sale Hearing**.

(a) The sale hearing will be set by the Court to take place in mid to late October 2026, before the Honorable Thomas M. Horan, United States Bankruptcy Judge for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom No. 5, Wilmington, Delaware 19801 (the "Sale Hearing").

(b) Within two business days after the conclusion of the Auction (and in advance of the Sale Hearing), the Debtor will file a notice of the Winning Bid and Back-Up Bid (the "Notice of Winning Bid and Back-Up Bid"), redacted as necessary to protect commercially sensitive and/or confidential information.

(c) Any objection to the approval of the Winning Bid and Back-Up Bid shall be filed no later than **TBD at 5:00 p.m. (Eastern Time)** (the "Sale Objection Deadline").

(d) The Debtor will present the results of the Auction to the Bankruptcy Court at the Sale Hearing, at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (i) the Auction was properly conducted, and the Winning Bidder and the Back-Up Bidder were properly selected, in accordance with these Bidding Procedures, (ii) the Auction was fair in substance and procedure, (iii) each of the Winning Bid and the Back-Up Bid was a Qualified Bid, (iv) closing of the Sale with the Winning Bid (or if applicable, the Back-Up Bid) will provide the highest and best value for the Purchased Assets and is in the best interests of the Debtor and (v) each of the Winning Bidder and the Back-Up Bidder are deemed to be purchasers of the Purchased Assets in good faith as set forth in § 363(m).

(e) At the Sale Hearing, the Debtor shall request the Bankruptcy Court to enter an order approving the Winning Bid and, if applicable, the Back-Up Bid (the "Sale Order"). Except to the extent revised by the Debtor in its discretion, after consultation with the Committee and the Winning Bidder, the proposed Sale Order presented to the Bankruptcy Court at the Sale Hearing shall be in the form submitted as part of the Winning Bid.

(f) At the Sale Hearing, the Debtor shall also request, as part of the Sale Order, authorization from the Bankruptcy Court to accept the Back-Up Bid as the Winning Bid, and consummate such bid, if the Winning Bid is not consummated when and as required by its terms without further order of the Bankruptcy Court. The Debtor shall promptly give notice to the Back-Up Bidder if the Winning Bid is terminated and the Back-Up Bidder has been selected as the replacement Winning Bidder and shall provide the Back-Up Bidder a reasonable period within which to close as set forth in the Back-Up Bid APA.

16. **Treatment of Deposit**.

(a) The Deposit of each Potential Bidder shall be held pursuant to an escrow agreement acceptable to the Debtor, subject to the prior consent of the Debtor as to the escrow agent and form of escrow agreement, where such consent is not to be unreasonably withheld.

(b) Upon closing of the Sale with the Winning Bidder (or Back-Up Bidder, if applicable), the Deposit of the Winning Bidder or Back-Up Bidder shall be credited to the Purchase Price. The Deposit of the Winning Bidder or Back-Up Bidder will be forfeited to the Debtor if the Winning Bidder or Back-Up Bidder fails to enter into the required definitive documentation or to consummate the applicable sale transaction in accordance with these

Bidding Procedures and the terms of the applicable transaction documents with respect to the Winning Bid and Back-up Bid as shall be set forth in the Winning Bid APA and Back-Up Bid APA or as otherwise ordered by the Bankruptcy Court.

(c) The Deposits of any Qualified Bidders other than the Winning Bidder and the Back-Up Bidder will be returned within two (2) business days after the conclusion of the Sale Hearing; *provided*, *that*, the Deposit of the Back-Up Bidder shall be returned to the Back-Up Bidder within two (2) business days after the earlier of (i) the closing of the Sale to the Winning Bidder, or (ii) the Outside Back-Up Date.

(d) The Deposit of any Potential Bidder who is determined not to be a Qualified Bidder shall be returned to such Potential Bidder within two (2) business days of such determination, pursuant to the terms of the applicable escrow agreement.

17. **Payment of the Break-Up Fee.** If any Stalking Horse Bidder is not the Winning Bidder, the Debtor shall pay the Break-Up Fee to such Stalking Horse Bidder as set forth in the agreement between the Debtor and the Stalking Horse Bidder providing for such Break-Up Fee, but in no event shall payment be any earlier than the time of the consummation of the Sale, and shall only be paid from the proceeds of the Sale. Notwithstanding the foregoing, a Break-Up Fee will only be payable if the Debtor has previously determined (in consultation with the Committee), pursuant to Paragraph 10 of these Bidding Procedures, that a bid merits stalking horse status and protections. Nothing contained in these Bidding Procedures shall prevent the Debtor (in consultation with the Committee) from proceeding with a "naked" Auction without designating a Stalking Horse Bidder. In the event that the Debtor proceeds with an Auction and Sale without a Stalking Horse Bidder, no Break-Up Fee shall be paid.

18. **Reservation of Rights**. **THE DEBTOR RESERVES ITS RIGHTS TO MODIFY THESE BIDDING PROCEDURES IN ANY MANNER IN CONSULTATION WITH THE COMMITTEE THAT WILL BEST PROMOTE THE GOALS OF THE BIDDING PROCESS. THE DEBTOR FURTHER RESERVES ITS RIGHTS TO IMPOSE, IN CONSULTATION WITH THE COMMITTEE, AT OR PRIOR TO THE AUCTION, ADDITIONAL TERMS AND CONDITIONS ON THE SALE OF THE PURCHASED ASSETS, INCLUDING, WITHOUT LIMITATION, EXTENDING THE DEADLINES SET FORTH IN THESE BIDDING PROCEDURES, ADJOURNING THE AUCTION AT OR PRIOR TO THE AUCTION AND/OR ADJOURNING THE SALE HEARING PRIOR TO SUCH HEARING OR IN OPEN COURT WITHOUT FURTHER NOTICE, AND REJECTING ANY OR ALL QUALIFIED BIDS IF, IN THE DEBTOR'S REASONABLE, GOOD-FAITH BUSINESS JUDGMENT, FOLLOWING CONSULTATION WITH THE COMMITTEE, THE DEBTOR DETERMINES THAT SUCH QUALIFIED BID IS**

**(I) INADEQUATE OR INSUFFICIENT, (II) NOT IN CONFORMITY WITH THE REQUIREMENTS OF THE BANKRUPTCY CODE OR ANY RELATED RULES OR THE TERMS SET FORTH HEREIN, OR (III) CONTRARY TO THE BEST INTERESTS OF THE DEBTOR. THE DEBTOR RESERVES THE RIGHT, AT ANY TIME, AND IN CONSULTATION WITH THE COMMITTEE, FOR ANY REASON AND IN ITS REASONABLE, BUSINESS JUDGMENT, TO DECLINE TO PURSUE THE SALE AND TO WITHDRAW ANY MOTION FILED IN THE COURT SEEKING TO APPROVE THE SALE.**

## Exhibit 2

## ASSUMPTION AND ASSIGNMENT PROCEDURES

1. As part of the Sale, the Debtor also seeks to assume and assign certain of their executory contracts and unexpired leases (collectively, the "Assumed Executory Contracts") pursuant to § 365.

2. The Assumed Executory Contracts will be those contracts and leases that the Debtor believes may be assumed and assigned as part of the orderly transfer of the Purchased Assets; provided, that, the Winning Bidder may choose to exclude (or to add) contracts or leases to the list of Assumed Executory Contracts, subject to notice to the counter-parties to any Assumed Executory Contracts which are added.

3. The Debtor will file with the Court and serve a cure notice (the "Cure Notice"), upon each counterparty to the Assumed Executory Contracts. The Cure Notice will be filed on or before **October 8, 2026**, and shall state the date, time and place of the Sale Hearing as well as the date by which any objection to the assumption and assignment of Assumed Executory Contracts (including the Cure Amount (defined below)) must be filed and served. The Cure Notice also will identify the amounts, if any, that the Debtor believes are owed to each counterparty to an Assumed Executory Contract in order to cure any defaults that exist under such contract (the "Cure Amounts"). To the extent there is a contract subsequently added to the list of Assumed Executory Contracts to be assumed by the Winning Bidder pursuant to the Winning Bid APA selected at the Auction that are not listed on the Cure Notice (or any subsequent Cure Notice filed by the Debtor), each such contract will be listed in the Winning Bid APA, and will be given a separate Cure Notice filed and served by overnight delivery within five (5) business days of the conclusion of the Auction and announcement of the Winning Bidder.

4. The inclusion of a contract, lease, or other agreement on the Cure Notice shall not constitute or be deemed a determination or admission by the Debtor and its estate or any other party in interest that such contract, lease, or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights with respect thereto shall be reserved.

5. If any counterparty objects for any reason to the assumption and assignment of an Assumed Executory Contract (including to a Cure Amount) (an "Assumption Objection"), the Debtor proposes that the counterparty must file the objection and serve it so as to be actually received on or before 5:00 p.m. (prevailing Eastern Time) on October 16, 2026 (unless the Cure Notice was served on such counterparty less than twenty (20) days prior to October 16, 2026, in which case, any Assumption Objection must be served no later than twenty (20) days after service of the Cure Notice) (the "Assumption Objection Deadline"); ***provided further, however*** **that any counterparty may request information related to a Winning Bidder's adequate assurance of future performance by e-mailing the Debtor's counsel at tania.moyron@dentons.com**. Any Assumption Objection must set forth a specific default in the executory contract or unexpired lease, claim a specific monetary amount that differs from the amount, if any, specified by the Debtor in the Cure Notice, and set forth any reason why the counterparty believes the executory contract or unexpired lease cannot be assumed and assigned to the Winning Bidder. After receipt of an Assumption Objection, the Debtor will attempt to reconcile any differences in the Cure Amount or otherwise resolve the objection with the counterparty. In the event that the Debtor and the counterparty cannot resolve an Assumption Objection, and the Court does not otherwise make a determination at the Sale Hearing regarding an Assumption Objection related to a Cure Amount, the Debtor shall segregate from the sale proceeds a portion of the disputed Cure Amount, in an

amount set by the Court or otherwise agreed by the parties, pending the resolution of any such Cure Amount disputes by the Bankruptcy Court or mutual agreement of the parties.

6. Except to the extent that the counterparty to an Assumed Executory Contract properly files and serves an Assumption Objection, (a) such Assumed Executory Contract shall be assumed by the Debtor and assigned to the Winning Bidder pursuant to § 365 upon and effective as of the Closing of the Sale; and (b) the Assumed Executory Contract counterparty will receive the Cure Amount as set forth in the Cure Notice, if any, at the time of the Closing of the Sale (or as soon as reasonably practicable thereafter). To the extent a counterparty timely files and serves an Assumption Objection, any Assumed Executory Contract subject to such Assumption Objection shall not be assumed by the Debtor and/or assigned to the Winning Bidder until such time as either (a) the parties consensually resolve the Assumption Objection or (b) the Court, after notice and a hearing, overrules such Assumption Objection.

7. The Winning Bidder shall be responsible for satisfying any requirements regarding adequate assurance of future performance that may be imposed under § 365(b) in connection with the proposed assignment of any Assumed Executory Contract, and the failure to provide adequate assurance of future performance to any counterparty to any Assumed Executory Contract shall not excuse the Winning Bidder from performance of any and all of its obligations pursuant to the Winning Bid APA. The Debtor proposes that the Bankruptcy Court make its determinations concerning adequate assurance of future performance under the Assumed Executory Contacts pursuant to § 365(b) at the Sale Hearing. Cure Amounts disputed by any counterparty will be resolved by the Bankruptcy Court at the Sale Hearing or such later date as may be agreed to or ordered by the Bankruptcy Court.

8. Except to the extent otherwise provided in the Winning Bid APA, upon the Closing of the Sale, the Debtor and the Debtor's estate shall be relieved of all liability accruing or arising after the assumption and assignment of the Assumed Executory Contracts pursuant to § 365(k).

# **Exhibit 3**

## **Procedures Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Pacifica of the Valley Corporation,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11060 (TMH) |

**NOTICE OF SALE PROCEDURES, AUCTION DATE AND SALE HEARING**

**PLEASE TAKE NOTICE** that, on September 9, 2026, the above-captioned debtor and debtor in possession (the "Debtor"), filed the *Debtor's Motion For The Entry of (I) An Order (1) Approving Auction Sale Format and Bidding Procedures, (2) Approving Process For Discretionary Selection Of Stalking Horse Bidder And Bid Protections; (3) Approving Form Of Notice To Be Provided To Interested Parties; (4) Scheduling A Court Hearing To Consider Approval Of The Sale To The Highest And Best Bidder; And (5) Approving Procedures Related To The Assumption Of Certain Executory Contracts And Unexpired Leases; And (II) An Order Authorizing The Sale Of Property Free And Clear Of All Claims, Liens And Encumbrances* [Docket No. ] (the "Motion").[2] The Debtor seeks, among other things, to sell substantially all of the Debtor's assets (collectively, the "Purchased Assets") to the winning bidder(s) (the "Winning Bidder"), at an auction free and clear of all liens, claims, encumbrances and other interests pursuant to §§ 363 and 365 of the Bankruptcy Code, 11 U.S.C. § 101, et seq.

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court approved the bidding procedures at a hearing on September 29, 2026, and will enter an order (the "Bidding Procedures Order") approving the Motion and the bidding procedures (the "Bidding Procedures"). All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures. To the extent that there are any inconsistencies between the Bidding Procedures Order (including the Bidding Procedures) and the summary description of its terms and conditions contained in this Notice, the terms of the Bidding Procedures Order shall control.

**PLEASE TAKE FURTHER NOTICE** that to participate in the Auction, any party (a "Potential Bidder") wishing to submit a Bid to purchase the Purchased Assets must execute, or have executed, a nondisclosure agreement ("NDA") in the form provided by Debtor's advisors and in form and substance satisfactory to the Debtor before such Potential Bidder may receive due diligence information from the Debtor, including access to the Debtor's on-line data room or other non-public information relating to the Purchased Assets. In addition, any Potential Bidder must submit financial information to the Debtor, who shall provide such financial information to the

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley (7312). The Debtor's mailing address is 9449 San Fernando Road, Sun Valley, CA 91352.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Committee's professionals upon request, to evidence such Potential Bidder's ability to consummate the Sale, which information must be satisfactory to the Debtor after consultation with the Committee.

**PLEASE TAKE FURTHER NOTICE** that, at the Debtor's option, after consultation with the Committee, Potential Bidders may be required to submit an Indication of Interest to purchase the Purchased Assets to the Debtor and the Committee, which includes (a) the proposed structure of the transaction, purchase price and any material terms; (b) a description of the acquiring entity and relevant experience; (c) proposed plans for the assets following consummation of the sale transaction; (d) evidence of financial capacity and wherewithal to consummate the transaction and operate the Purchased Assets; (e) evidence of ability to comply with any necessary regulatory approvals to operate the Purchased assets; (f) authority and approval to complete the transaction; (g) a detailed description of the due diligence information and / or investigation the Potential Bidder may require to submit a Bid; (h) a proposed timetable for consummating the transaction, including any necessary regulatory approvals; and (i) contact information for the Potential Bidder.

**PLEASE TAKE FURTHER NOTICE** that only those parties that submit Qualified Bids may participate in the Auction. If you are interested in submitting a Qualified Bid, you must comply with the Bidding Procedures. Any party in interest wishing to receive relevant documents and available marketing materials may do so by contacting Houlihan Lokey, 111 S. Wacker Drive, 37th Floor, Chicago, IL 60606 (Attn: Andrew Turnbull (aturnbull@hl.com) and Ibreez Esmail (ibreez.esmail@hl.com)).

**PLEASE TAKE FURTHER NOTICE** that any party that has not received a copy of the Motion or the Bidding Procedures Order that wishes to obtain a copy of the Motion or the Bidding Procedures Order, including all exhibits thereto, may make such a request in writing to Dentons US LLP, Attn: Tania M. Moyron, Suite 2500, 601 South Figueroa Street, Los Angeles, CA 90017 or by emailing tania.moyron@ dentons.com or calling (213) 623-9300.

**PLEASE TAKE FURTHER NOTICE** that any party that wishes to take part in the bidding process and submit a Qualified Bid for the Purchased Assets must submit its competing bid by a date in mid to late October 2026, which will be noticed by the Debtor to all Potential Bidders (the "Bid Deadline"). Bids must actually be received by the Bid Deadline by all of the following parties: (a) counsel to the Debtor: Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017 (Attn: Samuel R. Maizel (samuel.maizel@dentons.com) and Tania M. Moyron (tania.moyron@dentons.com)) and Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899 (Attn: Laura Davis Jones (ljones@pszjlaw.com)) and Timothy P. Cairns (tcairns@pszjlaw.com)); (b) the Debtor's Chief Restructuring Officer: Berkeley Research Group, 1800 M Street NW, Second Floor, Washington, DC 20036 (Attn: Peter Chadwick (pchadwick@thinkbrg.com)); (c) the Debtor's Investment Banker: Houlihan Lokey, 111 S. Wacker Drive, 37th Floor, Chicago, IL 60606 (Attn: Andrew Turnbull (aturnbull@hl.com) and Ibreez Esmail (ibreez.esmail@hl.com)); (d) the United States Trustee: the Office of the United States Trustee, 844 King St., Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Hannah J. McCollum (hannah.mccollum@usdoj.gov)); and (e) counsel to the Committee: Sills Cummis & Gross, P.C., One Riverfront Plaza, Newark, NJ 07102

(Attn: Andrew H. Sherman (asherman@sillscummis.com) and Boris I. Mankovetskiy (bmankovetskiy@sillscummis.com)) (collectively, the "Notice Parties").

**PLEASE TAKE FURTHER NOTICE** that Potential Bidders may either e-mail their Bids to the e-mail addresses listed above or may deliver hard-copies of their Bids to the physical addresses listed above so that they are actually received by the Bid Deadline. The Debtor shall have no obligation to consider any other delivery format, such as fax, as being acceptable.

**PLEASE TAKE FURTHER NOTICE** that the Debtor may, after consultation with the Committee, extend the Bid Deadline until the commencement of the Auction for one or more Potential Bidders without prior notice, but shall have no obligation to do so under any circumstances.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures, an auction (the "Auction") to sell the Purchased Assets will be conducted in mid to late October 2026, at such time and location as noticed by the Debtor. In advance of the Sale Hearing and within two business days of the conclusion of the Auction (if such Auction is conducted), the Debtor shall file a notice with the Bankruptcy Court identifying the Winning Bidder.

**PLEASE TAKE FURTHER NOTICE** that in mid to late October 2026, a hearing will be held to approve the sale of the Purchased Assets to the Winning Bidder (the "Sale Hearing") before the Thomas M. Horan, United States Bankruptcy Judge for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom No. 5, Wilmington, Delaware 19801, at a date and time as the Bankruptcy Court may determine. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that this Notice of the Auction and Sale Hearing is subject to the full terms and conditions of the Motion, Bidding Procedures Order and Bidding Procedures, which Bidding Procedures Order shall control in the event of any conflict, and the Debtor encourages parties in interest to review such documents in their entirety. Any party that has not received a copy of the Motion or the Bidding Procedures Order that wishes to obtain a copy of the Motion or the Bidding Procedures Order (including all exhibits thereto), may make such a request in writing to Dentons US LLP, 601 South Figueroa Street, Suite 2500, Los Angeles, California 90017 (Attn: Tania M. Moyron (tania.moyron@dentons.com)) or calling (213) 623-9300.

**PLEASE TAKE FURTHER NOTICE THAT THE DEBTOR RESERVES ITS RIGHTS TO MODIFY THESE BIDDING PROCEDURES IN ANY MANNER IN CONSULTATION WITH THE COMMITTEE THAT WILL BEST PROMOTE THE GOALS OF THE BIDDING PROCESS. THE DEBTOR FURTHER RESERVES ITS RIGHTS, UNLESS OTHERWISE ORDERED BY THE COURT, TO IMPOSE, IN CONSULTATION WITH THE COMMITTEE, AT OR PRIOR TO THE AUCTION, ADDITIONAL TERMS AND CONDITIONS ON THE SALE OF THE PURCHASED ASSETS, INCLUDING, DEADLINES SET WITHOUT LIMITATION, EXTENDING**

**FORTH IN THESE THE BIDDING PROCEDURES, ADJOURNING THE AUCTION AT OR PRIOR TO THE AUCTION AND/OR ADJOURNING THE SALE HEARING PRIOR TO SUCH HEARING OR IN OPEN COURT WITHOUT FURTHER NOTICE, AND REJECTING ANY OR ALL QUALIFIED BIDS IF, IN THE DEBTOR'S REASONABLE, GOOD-FAITH BUSINESS JUDGMENT, FOLLOWING CONSULTATION WITH THE COMMITTEE, THE DEBTOR DETERMINES THAT SUCH QUALIFIED BID IS (I) INADEQUATE OR INSUFFICIENT, (II) NOT IN CONFORMITY WITH THE REQUIREMENTS OF THE BANKRUPTCY CODE OR ANY RELATED RULES OR THE TERMS SET FORTH HEREIN, OR (III) CONTRARY TO THE BEST INTERESTS OF THE DEBTOR. THE DEBTOR RESERVES THE RIGHT, AT ANY TIME, AND IN CONSULTATION WITH THE COMMITTEE, FOR ANY REASON AND IN ITS REASONABLE, BUSINESS JUDGMENT, TO DECLINE TO PURSUE THE SALE AND TO WITHDRAW ANY MOTION FILED IN THE COURT SEEKING TO APPROVE THE SALE.**

[*Signature page to follow*]

Dated: September 9, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ draft*
Laura Davis Jones (DE Bar No. 2436)
919 North Market Street, 17th Floor
Wilmington, DE 19899
Telephone: (302) 652-4100
Email: ljones@pszjlaw.com

-and-

**DENTONS US LLP**

Tania M. Moyron (admitted *pro hac vice*)
Samuel R. Maizel (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
samuel.maizel@dentons.com

John D. Beck (admitted *pro hac vice*)
Geoffrey Miller (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
geoffrey.miller@dentons.com

*Counsel to Debtor and Debtor in Possession*

# Exhibit 4

## Cure Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Pacifica of the Valley Corporation,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11060 (TMH) |

**NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTOR THAT MAY BE ASSUMED AND ASSIGNED**

**PLEASE TAKE NOTICE** that, on September 9, 2026, the above-captioned debtor and debtor in possession (the "Debtor"), filed the *Debtor's Motion For The Entry of (I) An Order (1) Approving Auction Sale Format and Bidding Procedures, (2) Approving Process For Discretionary Selection Of Stalking Horse Bidder And Bid Protections; (3) Approving Form Of Notice To Be Provided To Interested Parties; (4) Scheduling A Court Hearing To Consider Approval Of The Sale To The Highest And Best Bidder; And (5) Approving Procedures Related To The Assumption Of Certain Executory Contracts And Unexpired Leases; And (II) An Order Authorizing The Sale Of Property Free And Clear Of All Claims, Liens And Encumbrances* [Docket No. ] (the "Motion").[2]

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court approved the bidding procedures at a hearing on September 29, 2026 and will enter an order (the "Bidding Procedures Order") approving, among other things, the Bidding Procedures requested in the Motion, which Bidding Procedures Order governs (i) the bidding process for the sale of substantially all of the Debtor's assets (the "Purchased Assets") of the Debtor, and (ii) procedures for the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases, as detailed in the Bidding Procedures Order (the "Assumption and Assignment Procedures")

**PLEASE TAKE FURTHER NOTICE** that the Motion also seeks Court approval of the sale (the "Sale") of the Purchased Assets to the Winning Bidder(s), free and clear of all liens, claims, interests and encumbrances pursuant to § 363 of the Bankruptcy Code, 11 U.S.C. § 101, et seq. including the assumption by the Debtor and assignment to the buyer(s) of certain executory contracts and unexpired leases pursuant to § 365 of the Bankruptcy Code (the "Assumed Executory Contracts"), with such liens, claims, interests and encumbrances to attach to the proceeds of the Sale with the same priority, validity and enforceability as they had prior to such Sale. In accordance with the Court-approved Assumption and Assignment Procedures, in advance of the Sale Hearing and within two business days of the conclusion of the Auction (if such Auction is conducted), the

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley (7312). The Debtor's mailing address is 9449 San Fernando Road, Sun Valley, CA 91352.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Debtor shall file a notice with the Bankruptcy Court identifying the Winning Bidder and the Assumed Executory Contracts which shall be assumed and assigned to the Winning Bidder and serve such notice by fax, email or overnight mail to all counterparties to the initial list of Assumed Executory Contracts. Any counterparty to an Assumed Executory Contract that wishes to receive such notice by email or fax, must provide their email address or fax number to Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017 (Attn: Tania M. Moyron (tania.moyron@dentons.com)) or calling (213) 623-9300 before the Auction.

**PLEASE TAKE FURTHER NOTICE** that a hearing (the "Sale Hearing") to approve the Sale and authorize the assumption and assignment of the Assumed Executory Contracts will be held in mid to late October 2026, before the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom No. 5, Wilmington, Delaware 19801, at a date and time to be set by the Court and noticed by the Debtor. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that, consistent with the Bidding Procedures Order, the Debtor may seek to assume an executory contract or unexpired lease to which you may be a party. The Assumed Executory Contract(s) are described on **Exhibit A** attached to this Notice. The amount shown on **Exhibit A** hereto as the "Cure Amount" is the amount, if any, which the Debtor asserts is owed to cure any defaults existing under the respective Assumed Executory Contract.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Assumption and Assignment Procedures, if you disagree with the Cure Amount shown for the Assumed Executory Contract(s) on **Exhibit A** to which you are a party or if you have any other objection to the Debtor's assumption and assignment of the Assumed Executory Contract to which you may be a party, you must file in writing with the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Wilmington, Delaware 19801, an objection **on or before 5:00 p.m. (prevailing Eastern Time) on October 16, 2026 ("Assumption Objection Deadline")** (unless the Cure Notice was served on such counterparty less than twenty (20) days prior to the October 16, 2026, in which case, any Assumption Objection must be served no later than twenty (20) days after service of the Cure Notice). Any objection must set forth the specific default or defaults alleged and set forth any cure amount as alleged by you. If a contract or lease is assumed and assigned pursuant to a Court order approving same, then unless you properly file and serve an objection to the Cure Amount contained in this Notice, you will receive at the time of the closing of the sale (or as soon as reasonably practicable thereafter), the Cure Amount set forth herein, if any. Any counterparty to an Assumed Executory Contract that fails to timely file and serve an objection to the Cure Amounts shall be forever barred from asserting that a Cure Amount is owed in an amount in excess of the amount, if any, set forth in the attached **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that any objection you may file must be served so as to be received by the following parties by the Assumption Objection Deadline: (i) counsel to the Debtor: Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017 (Attn: Samuel R. Maizel (samuel.maizel@dentons.com) and Tania M. Moyron (tania.moyron@dentons.com)) and Pachulski Stang Ziehl & Jones LLP, 919 North Market Street,

17th Floor, Wilmington, DE 19899 (Attn: Laura Davis Jones (ljones@pszjlaw.com)) and Timothy P. Cairns (tcairns@pszjlaw.com)); (ii) the Debtor's Chief Restructuring Officer: Berkeley Research Group, 1800 M Street NW, Second Floor, Washington, DC 20036 (Attn: Peter Chadwick (pchadwick@thinkbrg.com)); (iii) the Debtor's Investment Banker: Houlihan Lokey, 111 S. Wacker Drive, 37th Floor, Chicago, IL 60606 (Attn: Andrew Turnbull (aturnbull@hl.com) and Ibreez Esmail (ibreez.esmail@hl.com)); (iv) the Office of the United States Trustee: 844 King St., Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Hannah J. McCollum (hannah.mccollum@usdoj.gov)); and (v) counsel to the Committee: Sills Cummis & Gross, P.C., One Riverfront Plaza, Newark, NJ 07102 (Attn: Andrew H. Sherman (asherman@sillscummis.com) and Boris I. Mankovetskiy (bmankovetskiy@sillscummis.com)).

**PLEASE TAKE FURTHER NOTICE** that the Winning Bidder shall be responsible for satisfying any requirements regarding adequate assurance of future performance that may be imposed under 11 U.S.C. §§ 365(b) and (f) in connection with the proposed assignment of any Assumed Executory Contract. The Court shall make its determinations concerning adequate assurance of future performance under the Assumed Executory Contracts pursuant to 11 U.S.C. §§ 365(b) and (f) at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that except to the extent otherwise provided in the Winning Bid APA, the Debtor and the Debtor's estate shall be relieved of all liability accruing or arising after the assumption and assignment of the Assumed Executory Contracts pursuant to 11 U.S.C. § 365(k).

**PLEASE TAKE FURTHER NOTICE** that, in the event that the Debtor and the counterparty cannot resolve the Cure Amount, the Debtor shall segregate from the proceeds of sale a portion of the disputed Cure Amount, in an amount set by the Court or otherwise agreed by the parties, pending the resolution of any such Cure Amount disputes by the Bankruptcy Court or mutual agreement of the parties. Assumption Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before or after the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that nothing contained herein shall obligate the Debtor to assume any Assumed Executory Contracts or to pay any Cure Amount.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT TIMELY FILE AND SERVE AN OBJECTION AS STATED ABOVE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITH NO FURTHER NOTICE. PLEASE TAKE FURTHER NOTICE THAT ANY COUNTERPARTY TO ANY ASSUMED EXECUTORY CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION TO THE CURE AMOUNT FOR SUCH ASSUMED EXECUTORY CONTRACT IS DEEMED TO HAVE CONSENTED TO SUCH CURE AMOUNT.**

Dated: September 9, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ draft*
Laura Davis Jones (DE Bar No. 2436)
919 North Market Street, 17th Floor
Wilmington, DE 19899
Telephone: (302) 652-4100
Email: ljones@pszjlaw.com

-and-

**DENTONS US LLP**

Tania M. Moyron (admitted *pro hac vice*)
Samuel R. Maizel (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
samuel.maizel@dentons.com

John D. Beck (admitted *pro hac vice*)
Geoffrey Miller (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
geoffrey.miller@dentons.com

*Counsel to Debtor and Debtor in Possession*

**EXHIBIT A**