**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
In re:                                                    :        Chapter 11
                                                          :
                                                          :        Case No. 26-10922 (CTG)
Simply Interior Homes, LLC, et al.,¹                      :
                                                          :        (Jointly Administered)
            Debtors.                                      :
                                                          x        Re: Docket Nos. 9, 10, 43 & 58
- - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**FINAL ORDER (I) AUTHORIZING EACH DEBTOR**
**TO (A) OBTAIN POSTPETITION FINANCING AND (B) UTILIZE**
**CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION**
**TO PREPETITION SECURED PARTIES, (III) MODIFYING THE**
**AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above-referenced debtors, as debtors in possession

(collectively, the "Debtors" and individually, each a "Debtor") in the above-captioned cases

(the "Cases"), pursuant to sections 105, 361, 362, 363, 364, 503 and 507 of title 11 of the United

States Code, 11 U.S.C. §§101-1532 (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and

9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1,

4001-2 and 9013-1(m) of the Local Rules for the United States Bankruptcy Court for the District

of Delaware (the "Local Rules"), seeking entry of an interim order (the "Interim Order")² and a

final order (this "Final Order"), among other things,

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Simply Interior Homes, LLC (8509); Simply Interior Homes AcquisitionCo, LLC (9643); SIH Beckham Buyer, LLC (5210); SIH-HSD Holdings, LLC (5402); SIH-BB Holdings, LLC (2303); SIH-DMD Holdings, LLC (2411); and SIH-SR Holdings, LLC (1835). The location of the Debtors' service address in these chapter 11 cases is 3042 Southcross Boulevard, Suite 102, Rock Hill, SC 29730.

² "Interim Order" shall mean the *Interim Order (I) Authorizing Each Debtor to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 58].

1

13000955v.3

a.  authorizing each Debtor, pursuant to sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, to (i) use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), and all other Prepetition Collateral (as defined herein), solely in accordance with the terms of this Final Order, (ii) use the proceeds of the DIP Facility (as defined herein), solely in accordance with the Approved DIP Budget (as defined below) and other terms of this Final Order, (iii) provide adequate protection to the Prepetition Secured Parties (as defined herein), and (iv) grant related relief, in each case as set forth on the terms of this Final Order;

b.  authorizing each of the Debtors (each a "DIP Borrower" or "DIP Loan Party") to obtain postpetition superpriority senior secured, asset-based debtor-in-possession financing and other financial accommodations (the "DIP Facility"), consisting of a (i) senior secured superpriority revolving credit facility in the aggregate principal amount of $5,000,000 (excluding fees, premiums and other amounts payable-in-kind, the "New Money DIP Commitments", and the loans made pursuant thereto, the "New Money DIP Loans") pursuant to and in accordance with the terms and conditions set forth in that certain ABL DIP Financing Term Sheet, by and among the DIP Loan Parties, GRC SPV Investments, LLC and Wingspire Capital, LLC as the lenders thereto (collectively, the "DIP Lenders") and Great Rock Capital Partners Management, LLC, in its capacity as administrative agent and collateral agent (in such capacities, the "DIP Agent" and, together with the DIP Lenders, the "DIP Secured Parties", together with the Prepetition Secured Parties (as defined herein), the "Secured Parties"), substantially in the form attached hereto as **Exhibit 2** (as it may be amended, restated, amended and restated, modified, supplemented, extended, waived or replaced from time to time, the "DIP Term Sheet", and together with all other agreements, schedules, exhibits, certificates and other definitive documentation entered into in connection therewith, the "DIP Loan Documents"), allocated and made available to the DIP Loan Parties upon entry of this Final Order, subject to the terms and conditions set forth in the DIP Term Sheet, the other DIP Loan Documents, and this Final Order, and (ii) second out roll-up tranche in the amount of $3.00 of Prepetition Secured Obligations (as defined below) for every $1.00 of the New Money DIP Loans funded with such rolled up loans not to exceed $10,000,000 in the aggregate (the "Roll-Up DIP Loans", and together with the New Money DIP Loans, the "DIP Loans" and the DIP Loans together with all other fees, premiums, expenses and charges arising under the DIP Loan Documents, the "DIP Obligations") in each case with such Roll-Up DIP Loans automatically deemed funded, exchanged and converted on a cashless basis into and immediately constituting legal, valid, binding and non-avoidable DIP Obligations upon each funding of New Money DIP Loans in accordance with the terms hereof (the "Roll-Up"), with a corresponding dollar-for-dollar reduction in the remaining Prepetition Secured Obligations; *provided*, that such corresponding amount of the Prepetition Secured Obligations shall only be exchanged and converted into Roll-Up Loans for the first $3,333,333 of New Money DIP Loans funded and any further reborrowing of New Money DIP Loans shall not result in the roll up of any additional Prepetition Secured Obligations;

2

c.  authorizing the DIP Borrower to (i) incur the principal, interest, fees, costs, expenses, obligations (whether contingent or otherwise), and all other amounts (including, without limitation, all DIP Obligations (as defined in the DIP Term Sheet)), as and when due and (ii) make repayments and payments from the daily sweep of collection, the proceeds of the liquidating DIP Collateral and any other proceeds received by the Debtors applied in the following priorities, *first*, to the New Money DIP Loans (and all interest and fees in respect thereof) until repaid in full; *second*, to the Roll-Up DIP Loans (and all interest and fees in respect thereof) until paid in full; and *third*, to the Prepetition Secured Obligations (and all interest and fees in respect thereof) to the extent remaining after giving effect to the Roll-Up, until paid in full, in each case in accordance with the terms of the DIP Term Sheet and other DIP Loan Documents;

d.  authorizing each Debtor to execute, deliver, and perform under the DIP Term Sheet and all other DIP Loan Documents, and to perform such other and further acts as may be necessary or desirable in connection with this Final Order, the DIP Loan Documents, and the transactions contemplated thereby;

e.  granting to the DIP Agent, for the benefit of the DIP Secured Parties, and authorizing each Debtor to incur, the DIP Liens (as defined herein), as applicable, in all DIP Collateral (as defined herein), subject to the Carve-Out (as defined herein), which DIP Liens shall have the priority set forth in this Final Order;

f.  granting to the DIP Agent, for the benefit of the DIP Secured Parties, and authorizing each Debtor to incur, allowed superpriority administrative expense claims against each Debtor in respect of all DIP Obligations in accordance with and subject to the Carve-Out and the terms of this Final Order;

g.  authorizing each Debtor to grant the Prepetition Secured Parties, solely to the extent of any diminution in the value of, the Prepetition Collateral adequate protection in the form of: (i) Adequate Protection Liens (as defined herein), subject to any Permitted Prior Liens; (ii) Adequate Protection Payments (as defined herein); and (iii) payment of the fees and expenses of the Prepetition Secured Parties, including the Adequate Protection Payments, in accordance with the terms of the Prepetition Loan Documents;

h.  modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order and the DIP Loan Documents;

i.  waiving any applicable stay with respect to the effectiveness and enforceability of this Final Order (including a waiver pursuant to Bankruptcy Rules 6003(b) and 6004(h));

j.  granting such relief and to the extent set forth herein, waiving each Debtor's and its estate's right to surcharge against the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code;

3

13000955v.3

k.   granting such relief and to the extent set forth herein, for the "equities of the case" exception under section 552(b) of the Bankruptcy Code to not apply to such parties with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral or the DIP Collateral, as applicable;

and an interim hearing having been held by the Court on June 9, 2026 at 1:00 p.m. (ET); and a final hearing (the "Final Hearing") having been scheduled by the Court for July 2, 2026 at 10:00 a.m. (ET) pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2; and notice of the Motion and the relief sought therein having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and the Local Rules; and the Court having considered the evidence adduced, and the statements of counsel at the Interim Hearing and the Final Hearing (if held); and it appearing to the Court that granting the relief sought in the Motion on the terms and conditions herein contained is necessary and essential to enable each Debtor to preserve the value of each Debtor's businesses and assets and that such relief is fair and reasonable and that entry of this Final Order is in the best interest of each Debtor and its estate and creditors; and due deliberation and good cause having been shown to grant the relief sought in the Motion,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.   **Petition Date.** On June 8, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware.   Each Debtor has continued with the management and operation of its businesses and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.   No trustee or examiner has been appointed in these Cases.   On June 18, 2026, an official committee of unsecured creditors was appointed in these Cases (the "Committee").

B.   **Jurisdiction and Venue.** Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. § 157(b)(2). This Court has jurisdiction over the Case, the

4

Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Venue for the Case and the proceeding on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      **Prepetition Credit Agreement.**  Prior to the Petition Date, the Prepetition Lenders (as defined below) made certain loans and advances pursuant to and in accordance with the terms and conditions of that certain Credit Agreement, dated as of February 21, 2025 (as amended, restated, amended and restated or otherwise modified from time to time, the "Prepetition Credit Agreement," and together with all other documentation executed in connection therewith, including, without limitation, the Prepetition Collateral Documents (as defined herein) and all other Note Documents (as defined in the Prepetition Credit Agreement), the "Prepetition Loan Documents"), among certain Debtors, as the borrower and guarantors (in such capacity, the "Prepetition Loan Parties"), GRC SPV Investments, LLC and Wingspire Capital, LLC as lenders (the "Prepetition Lenders"), and Great Rock Capital Partners Management, LLC, acting as administrative agent and collateral agent for the Prepetition Lenders (in such capacity, the "Prepetition Agent," and together with the Prepetition Lenders, the "Prepetition Secured Parties").

D.      **Debtors' Admissions with Respect to the Prepetition Secured Obligations.** Subject only to the rights of parties in interest specifically set forth in paragraph 22 of this Final Order (and subject to the limitations thereon contained in such paragraph), in exchange for and as a material inducement for the Prepetition Secured Parties to agree to the relief sought herein, after consultation with its attorneys and financial advisors, each Debtor admits, stipulates, and agrees that:

i.      As of the Petition Date, each Prepetition Loan Party, was justly and lawfully indebted and liable, without defense, counterclaim, or offset of

any kind, to the Prepetition Secured Parties in the aggregate principal amount of not less than $ 17,916,002.34 (plus accrued but unpaid interest, unused line fees, commitment termination fees and other fees due and payable under the Prepetition Loan Documents, including the reasonable and documented fees, disbursements and other charges of counsel to the Prepetition Secured Parties, the "Prepetition Secured Obligations"). The Prepetition Secured Obligations, including the amounts specified in this paragraph, constitute the legal, valid, non-avoidable, and binding obligations of each Prepetition Loan Party, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), without offsets, recoupments, challenges, objections, defenses, counterclaims, or claims or causes of action of any kind or nature that could reduce the amount or ranking of the Prepetition Secured Obligations. Each Prepetition Loan Party does not have, nor shall it assert, any claim, counterclaim, setoff, or defense of any kind, nature, or description that would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Secured Obligations. The Prepetition Secured Obligations and any amounts previously paid to any Prepetition Secured Party pursuant to the terms of the Prepetition Credit Agreement, on account thereof, or with respect thereto are not subject to avoidance, reduction, disallowance, impairment, recharacterization, or subordination or equitable subordination pursuant to the Bankruptcy Code or any other applicable non-bankruptcy law, except as provided in the Prepetition Loan Documents or this Final Order.

E.      **Debtors' Admissions with Respect to Prepetition Collateral and Prepetition Liens.** Subject only to the rights of parties in interest specifically set forth in paragraph 22 of this Final Order (and subject to the limitations thereon contained in such paragraph), in exchange for and as a material inducement for the Prepetition Secured Parties to agree to the relief sought herein, after consultation with its attorneys and financial advisors, each Debtor admits, stipulates, and agrees that:

> i.      Pursuant to that certain Security Agreement, dated as of February 21, 2025, by and between the Prepetition Loan Parties and the Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties (the "Security Agreement", and collectively with all other "Collateral Documents", as such term is defined in the Prepetition Credit Agreement, the "Prepetition Collateral Documents"), each Prepetition Loan Party granted valid, continuing, binding, enforceable and perfected first priority liens on and security interests in the "Collateral" as such term is defined in the Security Agreement (the "Prepetition Collateral") to and/or for the benefit of the

6

Prepetition Secured Parties (the "<u>Prepetition Liens</u>"), subject only to Permitted Prior Liens (as defined below).

ii.  The Prepetition Liens (a) are valid, binding, properly perfected, enforceable and non-avoidable liens on and security interests in the Prepetition Collateral; (b) are not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, offset, counterclaim, defense, "claims" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity; (c) subject to paragraph 22, entitle the Prepetition Lenders to credit bid the Prepetition Secured Obligations pursuant to section 363(k) of the Bankruptcy Code and applicable state or foreign law without further challenges from the Debtors or any other party and implemented by the Prepetition Lenders in their absolute discretion; and (d) are subject and subordinate only to (1) the Carve-Out, (2) the DIP Liens (as defined below), (3) the Adequate Protection Liens (as defined below), and (4) valid and enforceable liens and encumbrances in the Prepetition Collateral (if any) that were expressly permitted to be senior to the Prepetition Liens under the applicable Prepetition Loan Documents, that are valid, properly perfected, enforceable, and non-avoidable as of the Petition Date or perfected following the Petition Date pursuant to Section 546 of the Bankruptcy Code and that are not subject to avoidance, reduction, disallowance, disgorgement, counterclaim, surcharge, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (foreign or domestic) (collectively the "<u>Permitted Prior Liens</u>"), and the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition Loan Documents or the Debtors. The Prepetition Liens were granted to the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of loans, commitments, and/or other financial accommodations under the Prepetition Loan Documents. Pursuant to and as more particularly described in the Prepetition Loan Documents, the Prepetition Liens are valid, binding, properly perfected, enforceable, non-avoidable, first-priority liens and security interests in and against the Prepetition Collateral (including, without limitation, Cash Collateral), and are senior in right, priority, operation and effect to all other interests in the Prepetition Collateral and subject to the Permitted Prior Liens, in all respects. The Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

7

iii.    All cash of the Debtors and cash proceeds of the Prepetition Collateral, including all such cash and cash proceeds of such Prepetition Collateral held at any time and from time to time in any of the Debtors' securities accounts and banking, checking, or other deposit accounts with financial institutions (in each case, other than trust, payroll, and custodial funds held as of the Petition Date in properly established trust, payroll, and custodial accounts), are and will be Cash Collateral of the Prepetition Secured Parties.

F.    **Subordinated Sponsor Notes**.

i.    Debtor Simply Interior Homes, LLC (*fka* Soft Goods Operating, LLC), as borrower, is party to that certain (i) Amended and Restated Note, dated as of February 21, 2025, with Centre Lane Partners V, L.P. ("CLP V"), as lender, in the stated principal amount of $43,836,733.89 (the "CLP V Sponsor Note") and (ii) Amended and Restated Note, dated as of February 21, 2025, with Centre Lane Partners IV, L.P. ("CLP IV", and together with CLP V, the "Sponsor"), as lender, in the stated principal amount of $5,214,632.76 (the "CLP IV Sponsor Note", and together with the CLP V Sponsor Note, the "CLP Sponsor Notes", and the amounts owing thereunder, the "Subordinated Sponsor Note Obligations"); and

ii.    the Subordinated Sponsor Note Obligations purport to be secured by subordinated liens on the "Collateral" as defined in the CLP Sponsor Notes (the "Subordinated Sponsor Liens") and the Subordinated Sponsor Note Obligations and Subordinated Sponsor Liens are expressly subordinated in right of payment and lien priority, respectively, to the Prepetition Liens and Prepetition Secured Obligations pursuant to the terms of that certain Subordination and Intercreditor Agreement, dated as of February 21, 2025 (the "Sponsor Notes Subordination Agreement"), by and among the Sponsor, the Prepetition Agent, Debtor Simply Interior Homes AcquisitionCo, LLC (*fka* Soft Goods, LLC) and Debtor Simply Interior Homes, LLC (*fka* Soft Goods Operating, LLC) and which is valid and in full force and effect as of the Petition Date, which Sponsor Notes Subordination Agreement constitutes a subordination agreement pursuant to section 510(a) of the Bankruptcy Code shall not be deemed to be amended, altered, or modified by the terms of this Final Order. Nothing herein shall be deemed a stipulation that the Subordinated Sponsor Note Obligations are valid, binding debt obligations or the Subordinated Sponsor Liens (a) are valid, binding, properly perfected, enforceable and non-avoidable liens on and security interests in the Prepetition Collateral; or (b) are not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, offset, counterclaim, defense, "claims" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity.

13000955v.3

G.    **Debtors' Admissions with Respect to Cash Collateral**.  Subject only to the rights of parties in interest specifically set forth in paragraph 22 of this Final Order (and subject to the limitations thereon contained in such paragraph), in exchange for and as a material inducement for the Prepetition Secured Parties to agree to the relief sought herein, after consultation with their attorneys and financial advisors, each Debtor admits, stipulates, and agrees that all of each Prepetition Loan Party's cash, including all cash proceeds of the Prepetition Collateral, each Prepetition Loan Party's banking, checking or other deposit accounts with financial institutions (in each case, other than trust, escrow and custodial funds held in properly established trust, payroll, and custodial accounts) as of the Petition Date or deposited into each Prepetition Loan Party's banking, checking or other deposit accounts with financial institutions after the Petition Date that is property of each Prepetition Loan Party constitutes Cash Collateral of the Prepetition Agent, for the benefit of the Prepetition Secured Parties, within the meaning of section 363(a) of the Bankruptcy Code.  The Prepetition Agent, for the benefit of the Prepetition Secured Parties, is entitled, pursuant to sections 105, 361, 362 and 363(e) of the Bankruptcy Code, to adequate protection of its interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in value of its interests in the Prepetition Collateral as of the Petition Date resulting from the use of Cash Collateral, the postpetition use, sale or lease of the Prepetition Collateral and/or the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code.  The foregoing shall not, nor shall any other provision of this Final Order be construed as, a determination or finding that there has been or will be any diminution in value of Prepetition Collateral (including Cash Collateral) and the rights of all parties as to such issues are hereby preserved.

13000955v.3

H.    **Releases; Investigation**.  Subject only to the rights of parties in interest specifically set forth in paragraph 22 of this Final Order (and subject to the limitations thereon contained in such paragraph), upon entry of this Final Order, each of the Debtors and the Debtors' estates on its own behalf and on behalf of its past, present, and future predecessors, successors, heirs, subsidiaries and assigns or any person acting for and on behalf of, or claiming through them, hereby unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge the DIP Secured Parties and the Prepetition Secured Parties, and each of their respective affiliates, former, current, or future officers, employees, directors, servants, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, assigns, heirs, predecessors in interest and each person acting for on behalf of any of them, each in their capacity as such, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description in each case that exist on the date hereof and in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have with respect to, relating to or arising from the DIP Obligations, the DIP Liens, the DIP Loan Documents, the Prepetition Loan Documents, the Prepetition Secured Obligations or the Prepetition Liens, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses or recharacterization claims or defenses,

10

(ii) any and all claims and causes of action arising under the Bankruptcy Code in connection with actions or events occurring prior to the Petition Date (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the DIP Secured Parties or the Prepetition Secured Parties and (iv) any and all claims and causes of action related to other carrying costs, penalties, legal, accounting and other professional costs, and, to the maximum extent permitted under applicable law, consequential and punitive damages payable to third parties.

I.      **Corporate Authority.** Each DIP Loan Party has all requisite power and authority to execute and deliver the DIP Loan Documents to which it is a party and to perform its obligations thereunder.

J.      **Need for Postpetition Financing and Use of Cash Collateral.** The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2 and have an immediate need to enter into the DIP Facility and obtain use of the Prepetition Collateral, including the Cash Collateral (in the amount and in the manner set forth in the Approved DIP Budget (as defined herein) and this Final Order) in order to, among other things, preserve and maintain the value of their assets and business while liquidating certain inventory in each case to maximize the return to all creditors. A need exists for the Debtors to use the Cash Collateral, consistent with the Approved DIP Budget and this Final Order, for working capital purposes, to pay costs and fees under the DIP Facility and this Final Order, for other general corporate purposes, and the satisfaction of costs and expenses of administering the Cases. The ability of the Debtors to obtain liquidity through the use of the proceeds of the DIP Facility and the Cash Collateral is vital to the Debtors and their efforts to pursue an orderly liquidation of certain of their assets and a going concern sale to in each case maximize the value of their assets.

13000955v.3

The extensions of credit under the DIP Facility pursuant to the DIP Loan Documents and this Final Order are fair and reasonable, reflect each Debtor's exercise of its sound business judgment, and are supported by reasonably equivalent value and fair consideration.

K.      **No Credit Available on More Favorable Terms.**  The Debtors have been unable to obtain financing and other financial accommodations from sources other than the DIP Lenders on terms more favorable than those provided under the DIP Facility and the DIP Loan Documents. The Debtors have been unable to obtain adequate unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code.  The Debtors also have been unable to obtain adequate credit for money borrowed (a) having priority over administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code or (b) secured only by a lien on property of the Debtors and their estates that is not otherwise subject to a lien. Postpetition financing is not otherwise available to the Debtors without the Debtors granting the DIP Agent, for the benefit of the respective DIP Secured Parties (and subject to the Carve-Out): (1) the DIP Liens on all DIP Collateral, as set forth herein, (2) the DIP Superpriority Claims (as defined below), and (3) the other protections set forth in this Final Order. After considering all alternatives, the Debtors have properly concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to the Debtors at this time, and is in the best interests of all of their stakeholders.

L.      **Roll-Up.**  Subject to any successful Challenge (as defined below), the Roll-Up shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the Prepetition Secured Parties (each of whom are DIP Lenders), to fund amounts and provide other consideration to each Debtor under the DIP Facility.  The Prepetition Secured Parties would not otherwise consent to the use of their Cash Collateral and the DIP Agent and the DIP Lenders

would not be willing to provide the DIP Facility or extend credit to the Debtors thereunder, without the inclusion of the Roll-Up occurring (i) upon each funding of New Money DIP Loans up to the first $3,333,333 drawn and (ii) on a $3.00 of Prepetition Secured Obligations for every $1.00 of New Money DIP Loans basis with a corresponding reduction on a dollar for dollar basis to the Prepetition Secured Obligations remaining.  The Roll-Up of the Prepetition Secured Obligations into DIP Obligations will enable each Debtor to obtain urgently needed financing to administer this Case to fund its operations, the orderly liquidation of certain assets and maximize value for all parties in interest.

M.     **Use of Proceeds of the DIP Facility and Cash Collateral.**  As a condition to entry into the DIP Loan Documents, the extension of credit and other financial accommodations made under the DIP Facility and the consent to use Cash Collateral (including, without limitation, the proceeds of the DIP Facility), each Debtor and each of the DIP Secured Parties and the Prepetition Secured Parties have agreed that Cash Collateral, the proceeds of the DIP Facility, and all other cash or funds of each Debtor, shall be used solely in accordance with the terms and conditions of this Final Order, the DIP Loan Documents and the Approved DIP Budget (as defined below) (subject to permitted variances pursuant to paragraph 6 of this Final Order) as provided for hereunder and as follows: (1) to provide ongoing operations and working capital for each Debtor and to pay budgeted expenses of each Debtor during the Case in accordance with the Approved DIP Budget, (2) to provide for other general corporate purposes of each Debtor during the Case, including the payment of professional fees of the Debtors on the terms hereof, (3) to pay transaction fees and expenses, (4) to pay the costs of administration of the Cases, including to fund the Carve-Out (as defined below) consistent with paragraph 10, and (5) as otherwise

13000955v.3

contemplated in the Approved DIP Budget or permitted by the DIP Lenders, and for no other purpose.

N.    **Business Judgment and Good Faith Pursuant to Section 364(e).**  Based on the DIP Motion, the First Day Declaration, and the record presented to the Court at the Final Hearing, (i) the extension of credit and other financial accommodations made under the DIP Facility and the DIP Loan Documents, (ii) the extensions of credit under the DIP Facility, (iii) the fees and other amounts paid and to be paid thereunder, (iv) the terms of adequate protection granted to the Prepetition Secured Parties, (v) the terms on which each Debtor may continue to use Prepetition Collateral (including Cash Collateral), and (vi) the Cash Collateral arrangements described therein and herein, in each case, pursuant to this Final Order and the DIP Loan Documents: (a) are fair, reasonable, and the best available to each Debtor under the circumstances; (b) reflect each Debtor's exercise of prudent business judgment consistent with its fiduciary duties; (c) are supported by reasonably equivalent value and fair consideration; and (d) represent the best financing available under the circumstances. The DIP Facility and the use of Prepetition Collateral (including Cash Collateral) were negotiated in good faith and at arm's length among each Debtor, the DIP Secured Parties, and the Prepetition Secured Parties. The use of Prepetition Collateral (including Cash Collateral) and the credit to be extended under the DIP Facility shall be deemed to have been so allowed, advanced, made, used, and/or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Secured Parties and the Prepetition Secured Parties are therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code (to the extent provided in section 364(e) of the Bankruptcy Code) and this Final Order.

13000955v.3

O.    **Notice.**  Notice of the relief requested in this Final Order was provided by each Debtor to: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to the Prepetition Secured Parties and the DIP Secured Parties; (iv) the Sponsor; (v) the Internal Revenue Service; (vi) the United States Attorney's Office for the District of Delaware; (vii) the Securities and Exchange Commission; (viii) the Delaware Secretary of State; (ix) the Delaware State Treasury; and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002. Given the nature of the relief sought, the foregoing notice of the relief requested in the Final Order was sufficient, and no further notice of, or hearing on, the relief granted herein is necessary or required.

I.    **Consent by Prepetition Secured Parties.**  The Prepetition Agent, as collateral agent for and at the direction of the Prepetition Secured Parties, consents to the Debtors' use of Cash Collateral and the entry into the DIP Facility and the DIP Loan Documents, solely in accordance with and subject to the Approved DIP Budget and the terms and conditions provided for in this Final Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    **Motion Granted.**  The Motion is granted in accordance with the terms of, and to the extent set forth in, this Final Order. Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled and all reservations of rights included therein, are hereby denied and overruled with prejudice.

2.    **Authorization of DIP Facility.**

(a)    Subject to the terms and conditions of this Final Order, each of the Debtors, and each officer and director of the Debtors, is hereby authorized to execute, enter into, and perform all obligations under the DIP Facility and the DIP Loan Documents to which it is party.

13000955v.3

The DIP Loan Documents and this Final Order govern the financial and credit accommodations to be provided to the DIP Loan Parties by the DIP Lenders in connection with the DIP Facility.

(b)      Each Debtor is authorized to enter into the DIP Loan Documents, including a credit agreement on substantially the same terms as set forth in the DIP Term Sheet that upon effectiveness shall supersede the DIP Term Sheet; provided, that, if any term of the credit agreement or other DIP Loan Document should conflict with this Final Order, the terms of the Final Order shall control.

(c)      Each DIP Loan Party is authorized to (i) incur all of its DIP Obligations on account of such incurrence under the DIP Facility, up to an aggregate principal amount of the New Money DIP Commitments on a final basis, together with applicable interest, protective advances, expenses, fees, and other charges payable in connection with the DIP Facility, as applicable, in each case, subject to the terms and conditions set forth in this Final Order and the DIP Loan Documents and (ii) make repayments and payments from the daily sweep of collection, the proceeds of the liquidation of DIP Collateral and any other proceeds received by the Debtors applied in the following priorities, *first*, to the New Money DIP Loans (and all interest and fees in respect thereof) until repaid in full; *second*, to the Roll-Up DIP Loans (and all interest and fees in respect thereof) until paid in full; and *third*, to the Prepetition Secured Obligations (and all interest and fees in respect thereof) to the extent remaining after giving effect to the Roll-Up, until paid in full, in each case in accordance with the terms of this Final Order, the DIP Term Sheet and other DIP Loan Documents.

(d)      Without limiting the foregoing, and without the need for further approval of this Court, each DIP Loan Party is authorized to perform all acts to make, execute, and deliver all instruments and documents (including, without limitation, the execution or recordation of pledge

13000955v.3

and security agreements, mortgages or deeds of trust, and financing statements), and to pay all principal, fees or expenses that may be required, necessary, or desirable for the DIP Loan Party to implement the terms of, performance of its obligations under, or effectuate the purposes of and transactions contemplated by this Final Order, the DIP Facility, and the DIP Loan Documents (as applicable) in accordance herewith and therewith, including, without limitation:

(1)     the execution and delivery of, and performance under, the DIP Loan Documents;

(2)     the execution and delivery of, and performance under, one or more amendments, waivers, consents, or other modifications to and under the DIP Loan Documents, in each case, as each DIP Loan Party and the requisite DIP Secured Parties (in accordance with and subject to the terms of the applicable DIP Loan Documents) may agree, it being understood that no further approval of the Court shall be required for non-material authorizations, amendments, waivers, consents, or other modifications to and under the DIP Loan Documents (and any fees and other expenses (including any attorneys', accountants', appraisers', and financial advisors' fees), amounts, charges, costs, indemnities, and other obligations paid in accordance and connection therewith;

(3)     the non-refundable and irrevocable payment of any and all fees, costs, and expenses payable pursuant to the DIP Loan Documents, including, without limitation, (a) the Closing Fee (as defined in the DIP Term Sheet) and any amounts due (or that may become due) in respect of the indemnification obligations, in each case referred to in the DIP Loan Documents, and (b) the reasonable and documented invoiced out-of-pocket fees, costs, and expenses as may be due from time to time of the DIP Agent and DIP Lenders, including, without limitation, the reasonable and documented fees and expenses of (A) the following professionals (whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated): Paul Hastings LLP, Parker, Hudson, Rainer & Dobbs LLP and Young Conaway Stargatt & Taylor, LLP (collectively, each of the fees and expenses described in the foregoing clauses, the "DIP Fees and Expenses"), in each case, without the need to file retention or fee applications, and without the need to provide notice to any party or obtain further Court approval;

(4)     subject only to the Carve-Out, the granting and perfection of the DIP Liens (as defined below), and the granting of the DIP Superpriority Claims (as defined below), in each case, as set forth herein and in the DIP Loan Documents;

(5)     deposit and apply, as required by this Final Order and the DIP Loan Documents, all collections, consideration and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise; and

13000955v.3

(6)    the performance of all other acts necessary, required, or desirable to implement the DIP Facility and to facilitate the transactions contemplated by the DIP Loan Documents and this Final Order in accordance therewith and herewith.

(e)    No DIP Secured Party shall have any obligation or responsibility to monitor the DIP Loan Party's use of the DIP Facility, and each DIP Secured Party may rely upon the DIP Loan Party's representations that the amount of the DIP Facility requested at any time and the use thereof are in accordance with the requirements of this Final Order, the DIP Loan Documents, and Bankruptcy Rule 4001(c)(2).

3.    **DIP Obligations.**    Subject only to the rights of parties in interest specifically set forth in paragraph 22 of this Final Order (and subject to the limitations thereon contained in such paragraph), upon the entry of the Interim Order and execution and delivery of the DIP Loan Documents, the DIP Loan Documents shall constitute valid, binding, enforceable, and non-avoidable obligations of the DIP Loan Party, and shall be fully enforceable against the DIP Loan Parties, their estates, and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of the Cases, or in any other proceedings superseding or relating to any of the foregoing and/or upon the dismissal of any of the Cases (collectively, the "Successor Cases"), and their creditors and other parties in interest, in each case, in accordance with the terms thereof and this Final Order. Upon execution and delivery of the DIP Loan Documents, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, now existing or hereafter arising, which may from time to time be or become owing by the DIP Loan Parties to any of the DIP Agent or DIP Lenders, in each case, under, or secured by, and in accordance with, the DIP Loan Documents or this Final Order, including all principal, interest, costs, fees, expenses, and other amounts under the DIP Loan Documents (including this Final Order). Subject to paragraph 14 of this Final Order, the DIP Obligations shall be due and payable, without notice or demand, and the use of Cash

18

Collateral shall automatically cease during the continuation of a DIP Termination Event (as defined herein) or the occurrence and continuance of any event or condition set forth in paragraph 13 of this Final Order.  No obligation, payment, transfer, or grant of security under the DIP Loan Documents or this Final Order to the DIP Secured Parties shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 362, 502(d), 544, 548, or 549 of the Bankruptcy Code, any applicable Uniform Voidable Transfer Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or other similar state statute or common law), or subject to any defense, reduction, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim, counterclaim, offset, or any other challenge under the Bankruptcy Code or any applicable law unless in accordance with paragraph 14 of this Final Order; *provided, however,* that the Roll-Up shall be subject to paragraph 22 of this Final Order.

4. **No Obligation to Extend Credit.**  The DIP Secured Parties shall have no obligation to make any loan or advance under the applicable DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit by the applicable DIP Secured Parties under the DIP Loan Documents and this Final Order have been satisfied in full or waived by the DIP Secured Parties in accordance with the terms of the DIP Loan Documents.

5. **DIP Liens.**

(a) As security for the DIP Obligations, effective immediately upon the date of the Interim Order and closing of the DIP Facility, as set forth more fully in this Final Order, the DIP Agent, for the benefit of the DIP Secured Parties, is hereby granted (without the necessity of the execution by the DIP Loan Parties or the filing or recordation of mortgages, security agreements, lockbox or control agreements, financing statements, or any other instruments or

19

otherwise by the DIP Agent or the DIP Lenders) valid, binding, enforceable, non-avoidable, and automatically and properly perfected liens and security interests (collectively, the "DIP Liens") in the property and interests identified in clauses (i) and (ii) below (collectively, the "DIP Collateral"), as collateral security for the prompt and complete performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of all DIP Obligations:

(1)     *Liens on Unencumbered Property.* Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, enforceable, fully-perfected first-priority security interest in and lien upon (x) all of the DIP Loan Parties' right, title, and interest in, to, and under all tangible and intangible pre- and postpetition property of the Debtors, including commercial tort claims, whether existing on the Petition Date or thereafter acquired that, on or as of the Petition Date, was not subject to valid, perfected and non-avoidable liens, and (y) subject to and upon entry of the Final Order granting such relief, the DIP Collateral shall include the proceeds of Claims and Causes of Action[3] under chapter 5 of the Bankruptcy Code, whether pursuant to federal law or applicable state law, of the DIP Loan Party or its estates and avoidance actions proceeds (collectively, the "Avoidance Actions Proceeds") (all of the foregoing property, collectively, the "Unencumbered Property");

(2)     *Priming DIP Liens.* Pursuant to section 364(d)(1) of the Bankruptcy Code, and subject and subordinate only to the Permitted Prior Liens (solely to the extent such liens are expressly permitted to be senior to the respective DIP Liens under the DIP Loan Documents) and the Carve-Out, a valid, perfected, first priority, senior priming lien upon all of the DIP Loan Parties' right, title, and interest in, to, and under any tangible and intangible, real and personal prepetition and postpetition property of the DIP Loan Parties, other than the Unencumbered Property, whether existing on the Petition Date or thereafter acquired, and wherever located, and the

---

[3]     As used in this Interim Order, "Causes of Action" means any action, Claim, cause of action, controversy, demand, right, action, lien, indemnity, interest, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, and license of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Closing Date, in contract or in tort, in law (whether local, state, or federal U.S. or non-U.S. law) or in equity, or pursuant to any other theory of local, state, or federal U.S. or non-U.S. law. For the avoidance of doubt, "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity; (b) any Claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, fraudulent transfer or fraudulent conveyance or voidable transaction law, violation of local, state, or federal or non-U.S. law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code or similar local, state, or federal U.S. or non-U.S. law; (d) any Claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of title 11 of the United States Code; (e) any state or foreign law pertaining to actual or constructive fraudulent transfer, fraudulent conveyance, and (f) any "lender liability" or equitable subordination claims or defenses.

13000955v.3

proceeds, products, rents, and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise;

(3)     *DIP Liens Junior to Certain Other Liens*. Subject only to the Carve-Out, pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully- perfected junior security interest in and lien upon all tangible and intangible pre- and postpetition property of the Debtors subject to Permitted Prior Liens on the Petition Date or subject to a Permitted Prior Liens in existence on the Petition Date that is perfected subsequent thereto pursuant to the Bankruptcy Code;

(b)     For the avoidance of doubt, the term "DIP Collateral" shall include all assets and properties of the DIP Loan Parties of any kind or nature whatsoever, whether tangible or intangible, real, personal or mixed, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, the DIP Loan Parties, whether prior to or after the Petition Date, whether owned by or to, or leased from or to, the DIP Loan Parties, and wherever located, including, without limitation, the DIP Loan Parties' rights, title and interests in (i) all Prepetition Collateral, (ii) all "DIP Collateral" as defined in the DIP Loan Documents, and (iii) all proceeds, products, offspring, and profits of each of the foregoing and all accessions to, substitutions, and replacements for, each of the foregoing, including any and all proceeds of any insurance, indemnity, warranty, or guaranty payable to the DIP Loan Parties from time to time with respect to any of the foregoing.

(c)     Except as set forth in paragraph 5(a) of this Final Order, the DIP Liens (i) shall not be made subject to or *pari passu* with (A) any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and shall be valid and enforceable against the DIP Loan Parties, their estates, any trustee, or any other estate representative appointed or elected in the Cases or any Successor Cases and/or upon the dismissal of the Cases or any Successor Cases, (B) any lien that is avoided and preserved for the benefit of the DIP Loan Parties and their estates under section 551 of the Bankruptcy Code or otherwise, or (C) any intercompany

13000955v.3

or affiliate lien, and (ii) shall not be subject to sections 506(c) (subject to and pending entry of the Final Order granting such relief), 510, 549, 550, or 551 of the Bankruptcy Code.

(d)    Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent, or the payment of any fees or obligations to, any governmental entity or non-governmental entity in order for the DIP Loan Party to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest in any property or the proceeds thereof, is and shall hereby be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the DIP Liens or Adequate Protection Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by the DIP Loan Party, in favor of the DIP Secured Parties or the Prepetition Secured Parties in accordance with the terms of the DIP Loan Documents and this Final Order.

(e)    **DIP Superpriority Claims**. Effective immediately upon entry of the Interim Order, the DIP Agent (on behalf of the DIP Secured Parties) is hereby granted, pursuant to section 364(c)(1) and 364(e) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the DIP Loan Party's Case and any Successor Cases thereof on account of the DIP Obligations, with priority over (except for the Carve-Out) the Adequate Protection Claims, any and all administrative expenses of the kind that are specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364(c)(1), 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order granting such relief), 507(a), 507(b), 546(c), 1113, 1114, or any other provisions of the Bankruptcy Code and any other claims against the DIP Loan Party (the "DIP Superpriority Claims"). The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the

22

Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code. The DIP Superpriority Claims shall have recourse against the DIP Loan Parties.

(f)      **DIP Roll-Up Amounts.**  Upon entry of the Interim Order, and subject to any successful Challenge, the Prepetition Secured Obligations shall, upon each funding of New Money DIP Loans up to the first $3,333,333 funded, on a $3.00 of Prepetition Secured Obligations for every $1.00 of New Money DIP Loans basis, be automatically deemed funded pursuant to the DIP Term Sheet on a cashless basis and shall constitute DIP Obligations, without any further action by each Debtor or any other party, and shall exchange and convert an equal amount of Prepetition Secured Obligations as if a payment in such amount had been made under the Prepetition Loan Documents on such date, as applicable. Subject to paragraph 22 of this Final Order, the Roll-Up shall be deemed to be made by each DIP Lender (the "Roll-Up Lenders") in an amount equal to such DIP Lender's pro rata share of the aggregate amount of the Prepetition Secured Obligations owing to all Roll-Up Lenders and the outstanding aggregate amount of the Prepetition Secured Obligations held by any such Roll-Up Lender shall be automatically and irrevocably deemed exchanged and converted by the amount of the Roll-Up. Notwithstanding the foregoing, any Prepetition Collateral subject to a successful Challenge shall not be available to satisfy any DIP Obligations on account of the Roll-Up.

6.      **Authorization to Use Proceeds of the DIP Facility and Cash Collateral; Budget Testing.**

(a)      Subject to the terms and conditions of this Final Order, the Court hereby authorizes the DIP Loan Party's use of Cash Collateral solely and exclusively in a manner consistent with this Final Order and the Approved DIP Budget (subject to the variances permitted

13000955v.3

pursuant to the Budget Covenant (as defined below)) and to fund the Professional Fee Account (as defined below) as and to the extent set forth herein, and for no other purposes.

(b)    As used in this Final Order: (i) "Initial DIP Budget" means the 13-week budget attached as **Exhibit 1** to the Interim Order and (ii) "Approved DIP Budget" means the 13-week cash flow budget that is then in effect as set forth in paragraph 6(d) below, in the case of each of (i) and (ii), in form, substance and detail satisfactory to the DIP Lenders in their sole discretion.[4]

(c)    By 5:00 p.m. prevailing Eastern Time on June 18, 2026, and on Thursday of each one-week anniversary thereafter, the DIP Loan Parties will provide a rolling thirteen-week cash flow forecast, certified by Adam Zalev in his capacity as the chief restructuring officer (the "CRO") of the DIP Borrowers and detailing, on a line item basis, the DIP Loan Parties' (i) operating cash receipts (the "Cash Operating Receipts"), (ii) operating cash disbursements (excluding professional fees, the "Cash Operating Disbursements"), (iii) inventory levels, (iv) accounts receivable, and (v) professional fees forecasted to be incurred by each Professional Person (as defined below), and other details on a weekly basis for the following 13-week period (the "Budget Update") to the DIP Agent for distribution to the DIP Lenders and to counsel for the Committee.  Within two (2) Business Days of the DIP Agent's receipt of the Budget Update (or on such more frequent dates as may be requested by the DIP Agent), the CRO and the Debtors' financial advisor will attend a teleconference with the DIP Secured Parties to update them regarding compliance with the Budget Update and any other matters reasonably requested by any DIP Secured Party.

---

[4] The current version of the Approved DIP Budget is still in process and will be filed with the Court when finalized.

13000955v.3

(d)      By 5:00 p.m. prevailing Eastern Time on the date that is three (3) days after delivery of the Budget Update, the DIP Loan Parties must seek and obtain the written consent of the DIP Lenders to the revised Budget Update.  If the Budget Update receives the written consent of the DIP Lenders, then such Budget Update shall become the "Approved DIP Budget" then in effect.  In the event the DIP Loan Parties do not obtain the consent of the DIP Lenders with respect to the Budget Update, the Approved DIP Budget (which may be the Initial DIP Budget) for the then-existing Testing Period (as defined below) shall apply for the immediately following Testing Period, and any Testing Period thereafter, unless the Bankruptcy Court orders alternative relief upon a motion filed by the DIP Loan Parties after notice and a hearing.  For the avoidance of doubt, any Budget Update that becomes an Approved DIP Budget shall not, without prior written consent of the Committee, decrease the line item for budgeted fees for Committee Professionals (as defined below).

(e)      Beginning on June 18, 2026, and on every Thursday thereafter (each such date, a "Variance Testing Date"), in each case on or before 5:00 p.m. prevailing Eastern Time on such Variance Testing Date, the DIP Borrower will provide to the DIP Agent, the DIP Lenders, and counsel for the Committee a budget variance report tested on a trailing (i) one (1) week cumulative basis for the first Variance Testing Date, (ii) two (2) week cumulative basis for the second Variance Testing Date, (iii) three (3) week cumulative basis for the third Variance Testing Date, and (iv) four (4) week cumulative basis for the fourth Variance Testing Date and each Variance Testing Date thereafter (each such period, a "Testing Period" and each such variance report, a "Variance Report", which shall include (x) budget variances related to line item "Cash Operating Receipts", line item "Cash Operating Disbursements" and line item "Total Professional Disbursements" of the DIP Borrowers, and (y) any variances between the actual amounts and

25

those set forth in the Approved DIP Budget, in each case of the foregoing clauses, with a detailed explanation of any such variance in form, substance and detail satisfactory to the DIP Agent in its reasonable discretion), and weekly bank account statements as of the reporting date from each account maintained by the DIP Borrowers.

(f)     As of any Variance Testing Date, for the Testing Period ending on the Friday preceding such Variance Testing Date, the cumulative (i) Cash Operating Receipts (as reported in the Variance Report) shall not decrease by more than, with respect to the "Total Receipts" line item in the (i) first Testing Period looking back one week, 15%, (i) second Testing Period looking back two (2) weeks, 15%, (ii) third Testing Period looking back three (3) weeks, 12.5% and (iii) fourth Testing Period, and each Testing Period thereafter, looking back four (4) weeks, 10%; and (ii) Cash Operating Disbursements (as reported in the Variance Report) shall not exceed the Cash Operating Disbursements forecasted in the Approved DIP Budget by an amount greater than ten percent (10%) (the foregoing clauses (i) and (ii), the "Variance Limits"). It shall be an event of default under the DIP Loan Documents if the Cash Operating Disbursements or Cash Operating Receipts as tested in accordance with the terms hereof exceed the Approved DIP Budget by an amount greater than the applicable Variance Limit. Additional variances to Cash Operating Disbursements and Cash Operating Receipts, if any, from the Approved DIP Budget, and any proposed changes to the Approved DIP Budget, shall be subject to the written consent of the DIP Lenders in their sole discretion. For the avoidance of doubt, any reference to "written consent" hereunder shall include consent granted by email by the counsel to the DIP Agent. The covenant described in this paragraph 6(f) shall be referred to herein as the "Budget Covenant" and failure to comply with the Budget Covenant shall constitute an event of

13000955v.3

default (the "Budget Covenant Default").  A Budget Covenant Default will constitute an event of default under the DIP Loan Documents.

7. **Adequate Protection for the Prepetition Secured Parties.**  In addition to all the existing security interests and liens granted to or for the benefit of the Prepetition Secured Parties in and with respect to their respective Prepetition Collateral, including the Cash Collateral, as adequate protection for, and to secure payment of an amount equal to, the Collateral Diminution (as defined herein), and as an inducement to the Prepetition Secured Parties to permit each Prepetition Loan Party's use of the Cash Collateral as provided for in this Final Order, each Prepetition Loan Party hereby grants the following adequate protection to the extent of any Collateral Diminution, in each case subject to paragraph 22 of this Final Order:

(a) **Adequate Protection Liens.**  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, and subject in all cases to the Carve-Out (as defined herein), effective as of the Petition Date and in each case perfected without the necessity of the execution by each Prepetition Loan Party (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the Prepetition Agent is hereby granted, for the benefit of the Prepetition Secured Parties, to secure payment of an amount equal to the Collateral Diminution, a valid, binding, continuing, enforceable, fully-perfected first priority senior (except as otherwise provided in this paragraph 7(a) below with respect to the Permitted Prior Liens) security interest in and lien on (all such liens and security interests, the "Adequate Protection Liens") the DIP Collateral including all Unencumbered Property upon the date of the Interim Order and, upon the date of entry of this Final Order, including the Avoidance Actions Proceeds, in each case subject and

13000955v.3

subordinate only to (i) the DIP Liens and any liens to which the DIP Liens are junior, including the Permitted Prior Liens, if any, and (ii) the Carve-Out.

(b) **Adequate Protection Claims.** Effective as of the Petition Date, the Prepetition Secured Parties are hereby granted, subject to the DIP Superpriority Claims and the Carve-Out, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases as provided for in section 507(b) of the Bankruptcy Code in the amount of the Adequate Protection Claim with, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (other than the DIP Superpriority Claims) (the "Adequate Protection Claims"), which Adequate Protection 507(b) Claim shall be payable from all of the DIP Collateral (including Unencumbered Property) in accordance with the priorities set forth herein, including the Avoidance Actions Proceeds. Except to the extent expressly set forth in this Final Order or the DIP Loan Documents, the Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Adequate Protection Claims unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and any claims having a priority superior to or *pari passu* with the DIP Superpriority Claims, including claims that benefit from the Carve-Out, have been paid in full and all New Money DIP Commitments have been terminated.

(c) **Adequate Protection Payments.** Subject to the Carve-Out, as further adequate protection, the Debtors are authorized and directed to pay (i) in accordance with the terms of paragraph 28 of this Final Order, all reasonable and documented out-of-pocket fees and expenses of the Prepetition Secured Parties (the "Adequate Protection Fees"), whether incurred before or after the Petition Date, including all reasonable and documented out-of-pocket fees and

28

13000955v.3

expenses of the Prepetition Secured Parties and for the counsel and other professionals retained as provided for in the Prepetition Loan Documents and this Final Order; provided that the Debtors are authorized and directed to pay all such Adequate Protection Fees incurred prior to and through the Petition Date that remain outstanding upon entry of this Final Order to the Prepetition Secured Parties, as applicable ("Adequate Protection Payments") and (ii) to the extent payable under paragraph 2(c) hereof, any proceeds of the Liquidation after payment in full of the DIP Obligations; *provided further* that the Adequate Protection Payments on account of Adequate Protection Claims (but not on account of DIP Superpriority Claims) shall be subject to automatic recharacterization as principal if the Prepetition Secured Parties are determined to be undersecured.

(d)   **Other Covenants.** Each Prepetition Loan Party shall (i) maintain its cash management arrangements in a manner consistent with this Court's interim or final order, as applicable, approving each Debtor*'s Debtors' Motion for Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate the Cash Management System, (B) Honor Certain Prepetition Obligations Related thereto, (C) Continue Intercompany Transactions, and (D) Maintain Existing Business Forms; (II) Authorizing the Debtors' Banks to Honor All Related Payment Requests; and (Iii) Granting Related Relief* and (ii) (A) give the Prepetition Secured Parties and their advisors reasonable access to the offices, properties, assets, officers, employees, accountants, liquidator, auditors, counsel, financial advisors, consultants and other representatives, books and records of the Prepetition Loan Parties, (b) furnish to the Prepetition Secured Parties such financial, operating and property related data and other information as such persons reasonably request, including any status updates or reports on the Liquidation that are furnished to the Debtors and (c) instruct Debtors' employees, financial advisors, liquidators,

13000955v.3

consultants, bankers and other advisors to cooperate with the Prepetition Secured Parties in respect of the aforementioned clauses (a) and (b).

(e)    For the avoidance of doubt, any Prepetition Collateral subject to a successful Challenge shall not be available to satisfy any Adequate Protection Liens or Adequate Protection Claims solely to the extent of such successful Challenge.

8.    **Collateral Diminution.**  For purposes of this Final Order, "Collateral Diminution" shall mean an amount equal to the diminution of the value from and after the Petition Date of the Prepetition Secured Parties' interests in the Prepetition Collateral including from the use, sale, or lease of the Prepetition Collateral, including Cash Collateral (whether in accordance with the terms and conditions of this Final Order or otherwise), or the imposition of the automatic stay.

9.    **Priority of Adequate Protection Liens and Adequate Protection Claims.**  Except for the Carve-Out and as otherwise provided in paragraph 7 of this Final Order, and subject to paragraph 22 of this Final Order, the Adequate Protection Liens and Adequate Protection Claims granted to the Prepetition Secured Parties pursuant to paragraph 7 of this Final Order shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of each Debtor's estates under section 551 of the Bankruptcy Code and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under section 364 of the Bankruptcy Code or otherwise.

10.    **Carve-Out**.

(a)    As used in this Final Order, the "Carve Out" means an amount equal to the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory

rate pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in clause (iii) below); (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) to the extent (x) allowed at any time, whether by interim order, procedural order, or otherwise, and (y) not exceeding the aggregate amounts set forth in the Approved DIP Budget for the relevant Professional Person (as defined below) (provided, that Professional Persons may carry forward budgeted but unused disbursements set forth in the Approved DIP Budget for any week for use in a subsequent week), all unpaid fees and expenses (the "Allowed Professional Fees") incurred by (A) persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals"), and (B) the Committee (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons"), in each case to the extent such fees and expenses were incurred at any time before or on the first business day following the date of delivery by the DIP Agent of a Carve Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professionals Fees (other than any restructuring, sale, success, or other transaction fee (a "Success Fee") of any investment bankers, sales agents, or financial advisors of the Debtors; *provided, however,* that any such Success Fee shall be escrowed from the sale proceeds of a transaction giving rise to a Success Fee) of the Professional Persons in an aggregate amount not to exceed $200,000 incurred after the first business day following the date of delivery by the DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"). Nothing herein shall be construed to impair the ability of any party in interest to object to the fees, expenses, reimbursement, or compensation described

31

in clauses (i) through (iv) of this paragraph 10(a) on any grounds.  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent, acting at the direction of the DIP Lenders, to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Committee (if any), which notice may be delivered following the occurrence and during the continuation of a DIP Termination Event (as defined herein), and acceleration of the DIP Obligations under the DIP Facility or termination of the Debtors' right to use Cash Collateral, as applicable, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

   (b) Delivery of Weekly Fee Estimates.  Not later than 7:00 p.m. (New York time) on the Wednesday of each week starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, "Estimated Fees and Expenses") incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "Weekly Statement"); *provided,* that, within three (3) business days of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date (and the Debtors shall cause each such Weekly Statement and Final Statement to be delivered on the same day received to the DIP Agent).  If any

32

Professional Person fails to deliver a Weekly Statement or Final Statement within three (3) calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Pre-Carve Out Trigger Notice Reserve (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement or Final Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved DIP Budget for such period for such Professional Person.

(c)     Carve Out Reserves.

(i)     Commencing with the week ended June 12, 2026, and on or before the Thursday of each week thereafter, the Debtors shall utilize all cash on hand as of such date and, to the extent insufficient, any available cash thereafter held by any Debtor, to fund an escrow or a reserve in an amount equal to the greater of (1) the aggregate unpaid amount of all Estimated Fees and Expenses reflected in the Weekly Statements delivered on the immediately prior Wednesday to the Debtors and the DIP Agent, and (2) the aggregate amount of all fees and expenses of Professional Persons contemplated to be incurred in the Approved DIP Budget during such week (the "Professional Fee Estimated Amount"). The Debtors shall fund the Professional Fee Estimated Amount, in escrow or deposit and hold such amounts in a segregated account maintained by the Debtors in trust (the "Funded Reserve Account") to pay Allowed Professional Fees (the "Funded Reserves") prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Termination Declaration Date shall be paid first from such Funded Reserve Account.

(ii)     On the day on which a Carve Out Trigger Notice is delivered in accordance with this paragraph 10 of this Final Order (the "Termination Declaration Date"), the

13000955v.3

Carve Out Trigger Notice shall constitute a demand to the Debtors to, and the Debtors shall utilize all cash on hand as of such date, including cash in the Funded Reserve Account, and any available cash thereafter held by any Debtor to fund an escrow or a reserve in an amount equal to the then cumulative Professional Fee Estimated Amounts, minus any amounts actually paid to Professional Persons (the "Professional Fee Unpaid Amount").  The Debtors shall fund the Professional Fee Unpaid Amount in escrow or deposit and hold such amount in a segregated account maintained by the Debtors in trust to pay unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") senior and prior to any other claims.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date, including cash in the Funded Reserve Account, and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap.  The Debtors shall deposit and hold such amounts in a segregated account maintained by the Debtors in trust to pay Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.

(d)    Application of Carve Out Reserves.

(i)    All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (a)(i) through (a)(iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Amounts, until the Pre-Carve Out Amounts are indefeasibly paid in full.  If the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to paragraph 10(d)(iii) below, all remaining funds shall be distributed first to the DIP Agent for the benefit of itself and the other

34

13000955v.3

DIP Secured Parties, for application to the DIP Obligations in accordance with the DIP Term Sheet and other DIP Loan Documents, unless and until the DIP Obligations are indefeasibly paid in full, in which case, any remaining excess shall be paid, subject to paragraph 22 of this Final Order, to the Prepetition Secured Parties, as of the Petition Date and as otherwise set forth in this Final Order, (unless the DIP Agent, at the direction of the DIP Lenders, and the Prepetition Agent, at the direction of the Prepetition Secured Parties under the applicable Prepetition Loan Documents, respectively, have otherwise agreed in writing in respect of the applicable obligations owed to each of them).

(ii)    All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (a)(iv) of the definition of Carve Out set forth above (the "Post Carve Out Amounts").  If the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to paragraph 10(d)(iii) below, all remaining funds shall be distributed to the DIP Agent for the benefit of itself and the other DIP Secured Parties, for application to the DIP Obligations in accordance with the DIP Term Sheet and other DIP Loan Documents, unless and until the DIP Obligations have been indefeasibly paid in full, in which case, any remaining excess shall be paid, subject to paragraph 22 of this Final Order,  to the Prepetition Secured Parties, as of the Petition Date (unless the DIP Agent, at the direction of the DIP Lenders, and the Prepetition Agent, at the direction of the Prepetition Secured Parties under the applicable Prepetition Loan Documents, respectively, have otherwise agreed in writing in respect of the applicable obligations owed to each of them).

(iii)    Notwithstanding anything to the contrary in the DIP Loan Documents or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in paragraph 10(c), then, any excess funds in one of the Carve Out Reserves

35

following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively (subject to the limits contained in the Post-Carve Out Trigger Notice Cap), shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in paragraph 10(c), prior to making any payments to the DIP Agent for the benefit of itself and the other DIP Secured Parties, or the Prepetition Secured Parties, or any of the Debtors' creditors, as applicable.

(iv)    Notwithstanding anything to the contrary in the DIP Loan Documents, the Prepetition Loan Documents, or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP Agent, and the Prepetition Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a first-lien and automatically perfected security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Agent on behalf of the DIP Lenders for application in accordance with the DIP Loan Documents.

(v)    Further, notwithstanding anything to the contrary in this Final Order, (A) disbursements by the Debtors from the Carve Out Reserves shall not constitute DIP Loans or increase or reduce the DIP Obligations; (B) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out with respect to any shortfall (as described below); and (C) in no way shall the Initial DIP Budget, any subsequent Approved DIP Budget, Carve Out, Post-Carve Out Trigger Notice Cap or Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors, nor as a cap or limitation on the amounts due and payable and described in paragraph 10(a)(i) of this Final Order.  For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order or the DIP Loan Documents, the

36

Carve Out shall be senior to all liens and claims securing the DIP Obligations, the Adequate Protection Obligations, the Prepetition Secured Obligations, the DIP Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations and the Prepetition Secured Obligations.

(e)      Payment of Allowed Professional Fees Prior to the Termination Declaration Date.   Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Post Carve Out Trigger Notice Cap.

(f)      Payment of Allowed Professional Fees on or After the Termination Declaration Date. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

(g)      No Direct Obligation to Pay Allowed Professional Fees.  None of the DIP Secured Parties or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 or any Successor Case.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP Secured Parties or the Prepetition Secured Parties in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

11.    **Postpetition Lien Perfection.** Without the necessity of the filing of financing statements, security agreements, federal or state notices, pledge agreements, recordings, mortgages or other documents or taking possession or control of any Collateral, this Final Order shall be sufficient evidence of the Prepetition Agent's and the DIP Agent's perfected security

13000955v.3

interests and liens granted in the Collateral pursuant to this Final Order. All such documents shall be deemed to have been recorded and filed as of the Petition Date.

12. **Inspection Rights**. In addition to, and without limiting, whatever rights to access the Prepetition Secured Parties have under the Prepetition Credit Agreement, upon reasonable prior written notice (including via acknowledged electronic mail) during normal business hours, each Debtor shall permit representatives, agents and employees of the Prepetition Agent, the holders of the Prepetition Liens, and/or the DIP Agent to (i) have reasonable access to and inspect and copy each Debtor's books and records (subject to all privileges), including all records and files of each Debtor pertaining to the Prepetition Collateral, the Collateral and the DIP Collateral, (ii) have reasonable access to and inspect each Debtor's properties and (iii) discuss each Debtor's affairs, finances, and condition with each Debtor's officers and financial advisors.

13. **DIP Termination Events**. Subject to paragraphs 10 and 14 of this Final Order, the occurrence and continuance of any "Event of Default" (as defined in the DIP Term Sheet) shall constitute a "DIP Termination Event" under this Final Order (the date upon which such DIP Termination Event occurs, the "DIP Termination Date") unless waived in writing by the DIP Lenders. On the DIP Termination Date, (a) the maturity of the DIP Facility shall be accelerated to the DIP Termination Date and (b) subject to the Carve-Out, the consent of the Prepetition Secured Parties' to the DIP Loan Parties' use of the Cash Collateral pursuant to this Final Order shall automatically terminate.

14. **Remedies After a DIP Termination Date.** The DIP Agent (acting at the direction of the DIP Lenders) shall deliver notice of the occurrence of any DIP Termination Event, and the DIP Agent shall deliver notice of a DIP Termination Event, to counsel for the Debtors,

13000955v.3

the Prepetition Agent, the U.S. Trustee, and any Committee. Following notice of a DIP Termination Event, any party in interest may file a motion with the Court and request an emergency hearing on the same (the "Emergency Default Hearing"). The Court shall conduct the Emergency Default Hearing within the Remedies Notice Period (as defined below). Each Debtor (a) may cure, to the extent that such Event of Default under the DIP Term Sheet is capable of cure, such Event of Default during the Remedies Notice Period (as defined below) and (b) hereby waives any right to seek relief, including without limitation under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Prepetition Agent, the Prepetition Secured Parties, the DIP Agent, or the DIP Secured Parties set forth in this Final Order; *provided*, that the foregoing does not modify the Remedies Notice Period. Subject to the Carve-Out, after five (5) calendar days following the delivery of a written notice of the occurrence of and during the continuance of a DIP Termination Event or such later time at the Court may order during such five (5) calendar day period (the "Remedies Notice Period"), the automatic stay shall be deemed automatically lifted with respect to the Prepetition Collateral, the Cash Collateral, and the DIP Collateral and the Prepetition Secured Parties and the DIP Secured Parties shall have the right to exercise any other remedies customary for secured lenders, including set-off and foreclosure, in connection with the Prepetition Loan Documents and the DIP Loan Documents, respectively. In addition, after the Prepetition Agent or the DIP Agent delivers notice of a DIP Termination Event, but prior to the Emergency Default Hearing, except as may be otherwise ordered by the Court, subject to the Carve-Out, the DIP Loan Parties shall not use any Cash Collateral to pay any expenses except those which are (a) necessary to pay accrued and unpaid wages through the date of delivery of notice of a DIP Termination Event, (b) necessary to preserve the DIP Loan Party's going concern value (not to exceed the Approved

39

DIP Budget under any circumstances absent the consent of the Prepetition Secured Parties or the DIP Secured Parties) or (c) necessary to contest in good faith whether a DIP Termination Event has occurred.  Notwithstanding anything in this paragraph to the contrary, after notice and hearing, the Court may order such relief as it determines is appropriate following a DIP Termination Event. Any delay or failure of the Prepetition Secured Parties or the DIP Secured Parties to exercise rights under the Prepetition Loan Documents, the DIP Loan Documents, or this Final Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise.  Notwithstanding anything to the contrary in this Final Order, the entry of this Final Order and the grant of adequate protection to the Prepetition Secured Parties pursuant to the terms hereof shall be without prejudice to the rights of the Debtors to, following the occurrence of the Termination Date, seek authority (at any time) to use Cash Collateral and the Prepetition Collateral without the consent of the Prepetition Secured Parties or the DIP Secured Parties, as applicable, and the Prepetition Secured Parties and the DIP Secured Parties reserve all of their respective rights with respect to contesting any such motion or request by the Debtors or any other person; provided that the Debtors may not utilize Cash Collateral to seek such authority.

15.    **Payments Free and Clear.**  Any and all payments or proceeds remitted to the Prepetition Agent on behalf of the Prepetition Secured Parties or to the DIP Agent on behalf of the DIP Secured Parties pursuant to the provisions of this Final Order or any subsequent order of this Court shall be irrevocable (subject to paragraph 21 of this Final Order, and subject to paragraph 22 of this Final Order as to the Prepetition Agent and Prepetition Secured Parties), received free and clear of any claim, charge, assessment or other liability, including without limitation, subject to entry of the Final Order granting such relief, any such claim or charge arising

40

out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through, or on behalf of each Debtor) or 552(b) of the Bankruptcy Code.

16. **Limitation on Charging Expenses Against Collateral**.  Subject to entry of the Final Order granting such relief, all rights to surcharge the interests of the Prepetition Secured Parties in any Prepetition Collateral or Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon each Debtor and all parties in interest in the Case. No action, inaction or acquiescence by the DIP Secured Parties or Prepetition Secured Parties shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the DIP Secured Parties or Prepetition Secured Parties, any of its respective claims, the Carve-Out, or the DIP Collateral or Prepetition Collateral.

17. **Reservation of Rights of the Prepetition Secured Parties**. This Final Order and the transactions contemplated hereby shall be without prejudice to (i) the rights of the Prepetition Secured Parties to seek additional or different adequate protection, move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert the Case, or to take any other action in the Case and to appear and be heard in any matter raised in the Case, or any party in interest from contesting any of the foregoing, and (ii) any and all rights, remedies, claims and causes of action which the Prepetition Agent, and the Prepetition Secured Parties may have against any non-Debtor party liable for the Prepetition Secured Obligations.  For all adequate protection purposes throughout the Case, the Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection for any Collateral Diminution from and after the Petition Date.  For the avoidance of doubt, such request will survive termination of this Final Order.

13000955v.3

18.     **Modification of Automatic Stay**. Each Debtor is authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Final Order and the transactions contemplated hereby, including (a) the granting of the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Secured Parties may reasonably request to assure the perfection and priority of the DIP Liens and the DIP Superpriority Claims, and (b) the DIP Loan Party incurring all liability and obligations, including all the DIP Obligations, to the DIP Secured Parties as contemplated under this Final Order and the DIP Loan Documents, and to enter into and perform under the DIP Loan Documents and any and all other instruments, certificates, agreements, and documents that may be reasonably required, necessary, or prudent for the performance by the DIP Loan Party under the DIP Loan Documents and any transactions contemplated therein or in this Final Order, in each case in accordance herewith or therewith. The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Final Order.

19.     **Survival of Interim and Final Order**. The provisions of this Final Order shall be binding upon any trustee appointed during any of the Cases or any Successor Cases, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting any of the Cases to a chapter 7 case or any other Successor Cases, dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise, or confirming or consummating any plan(s) of reorganization. The terms and provisions of this Final Order, as well as the priorities in payments, liens, and security interests granted pursuant to this Final Order shall continue notwithstanding any conversion of any of the Cases to a chapter 7 case or any other Successor Cases under the Bankruptcy Code, dismissal of any of the Cases or confirmation or

42

consummation of any plan(s) of reorganization. Subject to the limitations described in paragraph 22 of this Final Order, the adequate protection payments made pursuant to this Final Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Cases or any Successor Cases (other than a defense that the payment has actually been made); *provided*, recharacterization will be allowed to the extent otherwise provided in this Final Order. The terms of this Final Order shall be valid and binding upon each Debtor, all creditors of each Debtor and all other parties in interest from and after the entry of this Final Order by this Court.

20.    **No Liability to Third Parties**. With respect to the use of Cash Collateral, the entry into the DIP Facility or the providing of the DIP Loans, or any approval or disapproval of the DIP Budget including, without limitation, any permitted variance allowed pursuant to paragraph 6 of this Final Order, the DIP Agent and the other DIP Secured Parties shall not: (i) be deemed to be in "control" of the operations of each Debtor; (ii) owe any fiduciary duty to each Debtor, its respective creditors, shareholders or estates; or (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of each Debtor (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act of 1980 or any similar federal or state statute).

21.    **Good Faith under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order.** The DIP Secured Parties and the Prepetition Secured Parties have acted in good faith in connection with the DIP Facility, the DIP Loan Documents, the DIP Loans, and this Final Order, and their reliance on this Final Order is in good faith. Based on the findings set forth in this Final Order and the record made during the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, the DIP Secured Parties and the

43

Prepetition Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code, this Final Order and the DIP Loan Documents. If any or all of the provisions of this Final Order are hereafter reversed or modified, such reversal or modification shall not affect the validity, priority, or enforceability of the DIP Obligations, the DIP Liens, the Adequate Protection Liens, the Adequate Protection Claims, the Prepetition Liens, or the Prepetition Secured Obligations, unless such authorizing or incurring of such debt, or the granting of such priorities or liens, were stayed pending appeal. Notwithstanding any such reversal or modification of this Final Order, any DIP Obligations, DIP Liens, or Adequate Protection Liens incurred by the DIP Loan Party to the DIP Secured Parties or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agent and the Prepetition Agent of the effective date of such reversal or modification shall be governed in all respects by the original provisions of this Final Order.

22.     **Reservation of Certain Third-Party Rights and Bar of Challenge and Claims**. Subject to this paragraph 22, each Debtor's admissions and releases contained in paragraphs C, D, E, F, G and H of this Final Order (i) shall be binding upon each Debtor for all purposes and (ii) shall be binding upon all other parties in interest, including the Committee and any chapter 7 trustee, for all purposes unless (1) a party with requisite standing (subject in all respects to any party in interest's right to raise an argument that any agreement or applicable law may limit or affect such party's right or ability to do so) has timely and properly filed an adversary proceeding or contested matter by the date that is no later than seventy-five (75) calendar days from the date that the Interim Order was entered asserting a Challenge (as defined herein) (the "Challenge Deadline"), (x) challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Obligations, the Prepetition Liens, or (y) otherwise asserting

or prosecuting any action for preference, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests and defenses against the Prepetition Secured Parties on behalf of each Debtor's estate (each, a "Challenge," and collectively, "Challenges"). If no such Challenge is properly filed as of such dates or the plaintiff's claims are dismissed or denied by final and unappealable order in any such proceeding or matter, then: (a) each Debtor's admissions and releases contained in paragraphs C, D, E, F, G and H of this Final Order shall be binding on all parties in interest, including any Committee; (b) the obligations of each Debtor under the Prepetition Loan Documents shall constitute allowed claims for all purposes in the Cases or any Successor Cases; (c) the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral and the Collateral shall be deemed to have been, as of the Petition Date a legal, valid, binding, perfected, first priority security interests and liens, subject only to Permitted Prior Liens, and not subject to recharacterization, subordination or otherwise avoidable; and (d) the Prepetition Secured Obligations and the Prepetition Liens on the Prepetition Collateral and the Collateral shall not be subject to any other or further challenge by the Committee or any other party in interest seeking to exercise the rights of each Debtor's estates, including, without limitation, any successor thereto. If any such adversary proceeding or contested matter is properly filed as of such dates, each Debtor's admissions and releases contained in paragraphs C, D, E, F, G and H of this Final Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) except to the extent that such admissions and releases were expressly challenged in such adversary proceeding or contested matter; *provided*, that the timely filing of a motion seeking standing to file a Challenge before the expiration of the Challenge Period, which attaches a draft complaint setting forth the legal and factual bases of the proposed Challenge, shall toll the

45

Challenge Period only as to the party that timely filed such standing motion (and only as to such claims asserted in the draft complaint) until such motion is resolved or adjudicated by the Court. For the avoidance of doubt, notwithstanding anything else to the contrary in this Final Order, any chapter 7 or chapter 11 trustee appointed or elected in the Debtors' cases during the Challenge Period shall, until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any Challenge timely commenced in accordance with the terms of this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such Challenge, be bound by the admissions or releases of the Debtors in this Final Order. The Challenge Deadline may be extended by (i) the written consent of the Prepetition Secured Parties (with email being sufficient) or (ii) the entry, prior to the expiration of the Challenge Period, of an order by this Court extending such Challenge Deadline. If a chapter 7 trustee or a chapter 11 trustee is appointed or elected during the Challenge Period, then the Challenge Period Termination Date with respect to such trustee only, shall be the later of (i) the last day of the Challenge Period and (ii) the date that is twenty (20) calendar days after the date on which such trustee is appointed or elected. Nothing contained in this Final Order shall be deemed to grant standing to any Committee or any other party to commence any such adversary proceeding or contested matter; *provided* that the Prepetition Secured Parties and the Debtors agree not to object to the standing of the Committee to raise any issues on behalf of the estates of any Debtor that is a limited liability company on the basis that the Committee cannot have standing to raise such issues under applicable non-bankruptcy law because such Debtor entity is a limited liability company. For the avoidance of doubt, and notwithstanding anything to the contrary, nothing in the Interim Order or the Final Order shall grant, or be deemed to grant a

46

release, waiver, or discharge of, or otherwise impair any claims the Debtors or their estates may have with respect to, Centre Lane Partners, Live Comfortably, any of the Debtors' equity or interest holders, or any other person or entity related thereto or affiliated therewith, all of which are expressly preserved.

23. **Restrictions on Use of Prepetition Collateral, Collateral, and Carve-Out**. Notwithstanding anything in this Final Order to the contrary, no portion or proceeds of the Prepetition Collateral, the Collateral or the Carve-Out, and no disbursements set forth in the Approved DIP Budget shall be used for the payment of professionals fees, disbursements, costs, or expenses incurred in connection with: (a) objecting, contesting or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the Prepetition Loan Documents or any security interests, liens or claims granted under this Final Order or the Prepetition Loan Documents to secure such amounts; (b) asserting any Challenges, claims, actions, or causes of action, including any of the Debtors' claims and causes of action arising under sections 544, 545, 547, 548, and 550 of the Bankruptcy Code or any other similar state or federal law, against any of the Prepetition Secured Parties or any of their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors; or (c) contesting each Debtor's admissions and releases contained in paragraphs C, D, E, F, G and H of this Final Order; *provided*, that no more than $50,000 in the aggregate of the proceeds of the Collateral, Prepetition Collateral, and the Carve-Out (which amount, for the avoidance of doubt, shall be credited against the aggregate amount allocated to Committee professionals under the Approved DIP Budget) may be used by the Committee or chapter 7 or chapter 11 trustee, if any, solely to investigate (but not prosecute or Challenge) each Debtor's admissions and releases contained in paragraphs C, D, E, F, G and H of this Final Order.

24. **Enforceability; Waiver of Any Applicable Stay**. This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

25. **Proofs of Claim**. None of the Prepetition Secured Parties nor the DIP Secured Parties will be required to file proofs of claim in the Cases or any Successor Cases, and each Debtor's stipulations in paragraph D and E herein and this Final Order shall be deemed to constitute a timely filed proof of claim against each Debtor. Notwithstanding the foregoing, the Prepetition Agent and the DIP Agent (on behalf of itself and its respective Secured Parties, as applicable) is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a master proof of claim for any claims of the Prepetition Secured Parties or DIP Secured Parties, as applicable, arising from the Prepetition Loan Documents or DIP Loan Documents; *provided*, that nothing herein shall waive the right of any Prepetition Secured Party or DIP Secured Party to file its own proofs of claim against each Debtor.

26. **Section 552(b) of the Bankruptcy Code**. Subject to entry of the Final Order granting such relief, the Prepetition Agent, the DIP Agent, and the Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to

13000955v.3

the Prepetition Agent and the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral or the DIP Collateral.

27.    **No Marshaling**. Neither the Prepetition Secured Parties nor the DIP Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or the DIP Collateral except as expressly provided herein, as applicable; *provided* that, prior to the DIP Secured Parties or the Prepetition Secured Parties seeking payment or satisfaction of any DIP Claims, DIP Liens, Adequate Protection Liens or Adequate Protection Claims from DIP Collateral that was previously unencumbered as of the Petition Date or rendered unencumbered as a result of a successful Challenge (the "Last-Out Collateral"), the DIP Secured Parties and the Prepetition Secured Parties shall first look to all other DIP Collateral and Prepetition Collateral (other than the Last-Out Collateral), as applicable; *provided, further,* that (i) the Secured Parties shall look to the proceeds of non-insider Avoidance Actions last in order to satisfy any outstanding DIP Obligations, Adequate Protection Claims, Adequate Protection Liens, and Adequate Protection Payments and (ii) any Prepetition Collateral subject to a successful Challenge shall not be available to satisfy any Adequate Protection Liens or Adequate Protection Claims solely to the extent of such successful Challenge.

28.    **Notice Procedures for Professional Fees**. The Debtors are authorized and directed, without any further order of the Court, to pay any and all reasonable and documented fees and expenses of the DIP Lenders, the DIP Agent, the Prepetition Secured Parties and the Prepetition Agent in connection with the DIP Financing, the Cases and the Adequate Protection Payments, as applicable, including the reasonable and documented fees and expenses of attorneys, advisors, accountants and other consultants and professionals (the "Lender

49

Professionals"), whether incurred before, on or after the Petition Date and whether or not the transactions contemplated hereby are consummated, including, but not limited to, the reasonable and documented fees and expenses incurred in connection with the preparation, negotiation and execution of the DIP Orders, the DIP Term Sheet, DIP Loan Documents, and the Adequate Protection Claims in connection with these Cases, the on-going administration of the DIP Loan Documents and the enforcement of the DIP Loan Documents, the DIP Orders, the Prepetition Loan Documents or the Adequate Protection Claims. The Lender Professionals shall not be required to file formal retention or fee applications with the Court. Solely with respect to any fees and expenses of the Lender Professionals incurred subsequent to the Petition Date, the Lender Professionals shall forward copies of summary invoices submitted to the Debtors' counsel, to the Debtors, to the U.S. Trustee, counsel for the Committee and such other parties as the Court may direct. The summary invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses; *provided*, *however*, that such summary invoices shall not be required to contain time entries but shall include a general, brief description of the nature of the matters for which services were performed, and may be redacted to the extent necessary to protect any information subject to the attorney-client privilege or of any benefits of the attorney work product doctrine or other applicable privilege. If the Debtors, U.S. Trustee or the Committee (if any) objects to the reasonableness of the fees and expenses of any of the Lender Professionals and cannot resolve such objection within ten (10) calendar days of receipt of such invoices (the "Review Period"), then the Debtors, the U.S. Trustee, or the Committee (if any), as the case may be, shall file with the Court and serve on such Lender Professional an objection (the "Fee Objection"), and any failure by any such party to file a Fee Objection within the Review Period shall constitute a waiver of any right of such party to object to the applicable invoice.

13000955v.3

Notwithstanding any provision herein to the contrary, any objection to, and any hearing on an objection to, payment of any fees, costs, and expenses set forth in a professional fee invoice in respect of a Lender Professional shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses that are the subject of such objection. If no written objection is received by 5:00 PM (Eastern Standard Time), on the last day of the Review Period, the Debtors shall pay such invoices promptly and in no event later than one (1) business day thereafter. If an objection to a Lender Professional's invoice is received within the Review Period, the Debtors shall promptly pay the undisputed amount of the invoice and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. Such reasonable and documented fees and expenses paid by the Debtors in accordance with this paragraph 28 shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.

29.     **Laufer.**  Notwithstanding anything to the contrary herein, the Debtors recognize and preserve Laufer Group International LLC's ("Laufer") superior liens in any and all of, but solely with respect to, the Debtor's Goods, as specified and defined in D.I. 127 ("Limited Objection"), and the proceeds thereof until Laufer is repaid in full, including all freight, demurrage, detention, storage, General Order fees, and other charges assessed in connection with the Goods. Laufer shall not be required to surrender possession of the Goods pursuant to the Interim Order, Final Order, or as otherwise ordered by this Court unless Laufer has been paid in full for all charges incurred and accruing relating to the transportation of the Goods. The automatic stay shall be modified solely to allow Laufer to execute its lien rights related to the Goods and take additional steps with respect to such Goods to pay the Debtors' charges incurred and accruing relating to the transportation of the Goods, including the ability to re-export the

51

Goods to the original shippers of the Goods (the "Sellers"). For Goods in Laufer's possession, custody, control, or en route, for which the Seller has not been paid and for which charges continue to accrue, Laufer shall be entitled, but not required, to re-export the Goods to the original Sellers, or to deliver an alternate consignee. Until Laufer has been paid in full, Laufer shall receive a distribution from any sales of the Goods prior to any other interested parties. Further, nothing in this Order shall be construed to prime or subordinate any postpetition or prepetition claims or liens of Laufer with respect to the Goods and or otherwise affect any right of Laufer to assert a priority claim status or maritime lien with respect to the Goods. For the avoidance of doubt, Laufer shall not be obligated to return the Goods to the original vendors (or to third parties) until it is paid in full for outstanding charges with respect to such Goods by the original vendor or third party, in accordance with and pursuant to applicable law.

30.    **Headings**. The headings in this Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Final Order.

31.    **Retention of Jurisdiction**. The Court has and will retain jurisdiction to enforce this Final Order.

**Dated: July 2nd, 2026**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**

52

13000955v.3