**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Simply Interior Homes, LLC, et al., | Case No. 26-10922 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Related Docket No. 454** |

# MEMORANDUM OPINION

The debtors in these bankruptcy cases operate a home textiles and décor business.[1] They were formed in 2025 upon being "carved out" of a company now known as Live Comfortably.[2] The debtors' first-day declaration alleges that the manner in which the carve out was constructed left the debtors essentially doomed from the outset. As the first-day declaration puts it, the debtors "began their existence as an undercapitalized business with a damaged customer base, excess and obsolete inventory, no cash, and more debt and payables than anticipated, creating fundamental deficits from which the Debtors operated for more than a year but from which they were never able to fully recover."[3] The debtors assert that they may hold claims against Live Comfortably and its private equity sponsor arising out of the carve-out transaction.

[1] D.I. 11 at 3.

[2] *Id.* at 4. That entity was previously known as Keeco, LLC.

[3] *Id.* at 15.

The liquidating plan in this bankruptcy case provides that the debtors' causes of action arising out of the transaction will remain property of the estate after the plan's effective date and authorizes a post-confirmation trust, as representative of the estate, to pursue those claims for creditors' benefit. Because some of those claims are state-law claims whose federal jurisdiction depends on their relation to the bankruptcy case under § 1334(b), the plan implicates issues that this Court has recently addressed regarding the post-confirmation related-to jurisdiction in opinions such as *SunPower* and *Cyber Litigation*.[4]

The issue is that once a plan becomes effective and property of the estate vests in a post-confirmation entity, there is no longer a bankruptcy estate. As such, no claim can literally have an "effect on the estate," which is the traditional touchstone for the related-to jurisdiction.[5] This Court's opinions explained that one way to address that concern would be for a plan to provide that a claim remain property of the estate after confirmation, as 11 U.S.C. § 1141(b) permits. This mechanic, however, may not serve as an end-run around the Third Circuit's requirement in *Resorts* that post-confirmation jurisdiction be limited to cases with a "close nexus" to the confirmed plan.[6] To that end, the Court found it constructive that the test for when it would be proper to avoid re-vesting under § 1141(b) closely mirrored the Third

[4] *See In re SunPower Corp.*, No. 25-52473, 2026 WL 2147348 (Bankr. D. Del. July 23, 2026); *In re Cyber Litigation, Inc.*, No. 24-50180, 2026 WL 2584490 (Bankr. D. Del. Aug. 18, 2026). Although this Memorandum Opinion uses "post-confirmation" as shorthand, the relevant period for present purposes begins on the plan's effective date.

[5] *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984).

[6] *See In re Resorts Int'l*, 372 F.3d 154 (3d Cir. 2004).

Circuit's language about what it meant for a claim to have a "close nexus" to a confirmed plan. In short, a plan may provide under § 1141(b) that a specified cause of action remains estate property after the effective date. Where the confirmation record establishes that retaining the claim is necessary to the plan's success and satisfies the functional limits identified in *Resorts*, adjudication of the claim will have a direct effect on the remaining estate and thus satisfy the ordinary related-to jurisdictional test.

The debtors in this case followed the approach the Court suggested in those opinions. The plan here retains the causes of action related to the carve-out transaction as property of the estate after the effective date. As explained below, the confirmation record supports that treatment, and the continued estate interest means that adjudication of those claims will have a direct effect on the estate. The Court required minor changes to the proposed confirmation order to ensure that it not inadvertently sweep in claims that do not meet the demanding standard set forth in *Resorts*. With those changes, however, this Court believes that the record in this case supports keeping the estate open for the purposes of pursuing these claims and that the manner in which the debtors have done so comports with the requirements of the Code and this Court's opinions.

This Memorandum Opinion explains the limited circumstances in which the Court will approve an exception to § 1141(b)'s ordinary revesting rule and thereby permit a specified cause of action to remain estate property after the effective date. In determining whether a plan may depart from § 1141(b)'s ordinary revesting rule

for specified causes of action, the Court will consider whether the proponent has established, on notice and an adequate evidentiary record, that: (1) the causes of action are identified with sufficient specificity; (2) the causes of action bear a material connection to the debtor's financial distress, plan consummation, or anticipated creditor recoveries; (3) retaining the causes of action as estate property is necessary to the plan's implementation, rather than serving merely as a means of selecting a litigation forum; and (4) the plan or confirmation order limits the exception to the identified claims. Because this plan satisfies that test, the Court has entered an appropriate order confirming the plan.

## Factual and Procedural Background

As described above, the debtors allege that the 2025 transaction in which the debtors were spun out of the entity now known as Live Comfortably left the debtors with a business that lacked the liquidity necessary to meet its obligations. The debtors filed these bankruptcy cases in June 2026. They obtained post-petition DIP financing from the same entities who held the company's prepetition secured debt.

Over the course of the bankruptcy case, the debtors conducted a liquidation of their inventory and ran a sale process with respect to their intellectual property assets. The debtors, the Official Committee of Unsecured Creditors, and the secured lenders entered into a global settlement under which the plan would provide for the establishment of a post-confirmation liquidating trust. The debtors' claims against Live Comfortably and related entities that arise from the carve-out transaction would remain property of the estate, with the liquidating trust being given authority to act on behalf of the estate with respect to such claims. In addition, whatever direct

claims the secured lenders might have held related to that transaction would be transferred to the estate and likewise managed by the trust.[7] The parties to the global settlement also reached an agreement regarding the allocation of any proceeds from those and other causes of action that would be assigned to the liquidation trust. The terms of that global settlement were reflected in a proposed liquidating plan.

As described further below, in light of several recent decisions of this Court, the plan as proposed by the debtors did not (as is otherwise customary) have all of the debtors' assets vest in the liquidating trust. Rather, as § 1141(b) of the Bankruptcy Code permits, the proposed plan provided that the causes of action related to the carve-out transaction (as well as others) would remain property of the estate after the plan is confirmed. And as § 1123(b)(3)(B) contemplates, the liquidating trust would operate as the "representative of the estate" for purposes of enforcing those claims.

This Court held a confirmation hearing on September 18, 2026. Just prior to the hearing, the debtors resolved the objections that Live Comfortably had asserted to confirmation of the plan, as well as informal objections raised by the United States Trustee. As discussed further below, the Court noted that the provisions of the plan that kept causes of action in the estate swept more broadly than the Court believed its prior decisions contemplated. In response to those observations, the debtors

[7] The lender's direct claims appear to arise out of the same transaction or occurrence as the estate's claims. No party has suggested a reason, and this Court is aware of none, why such claims cannot be acquired by the estate under the plan.

agreed to revise the plan to narrow those provisions. On September 21, 2026, the Court entered an order confirming the plan.[8]

## Jurisdiction

The district court has jurisdiction over the plan confirmation proceedings in this bankruptcy case under 28 U.S.C. § 1334(b) since the confirmation of a plan is a matter that "arises under" the Bankruptcy Code. That jurisdiction was referred to this Court under 28 U.S.C. § 157(a) and the district court's February 29, 2012 standing order of reference. Plan confirmation is a core matter under 28 U.S.C. § 157(b)(2)(L).

## Analysis

This Court has been wrestling for several months over the puzzle of post-confirmation related-to jurisdiction under 28 U.S.C. § 1334(b). The law has long provided that the test for whether a claim is within the related-to jurisdiction is whether that claim has any effect on the bankruptcy estate.[9] And the Third Circuit explained in *Resorts* that the bankruptcy estate typically terminates upon the effective date of the plan.[10] That is because property that had been in the estate, and that is not sold during the bankruptcy case, ordinarily vests elsewhere—either in the reorganized debtor or a post-confirmation trust under the terms of a plan, or in the prepetition debtor under 11 U.S.C. § 1141(b). The result of this termination of the bankruptcy estate is that, as a literal matter, there could be no post-confirmation

---

[8] D.I. 454.

[9] *Pacor*, 743 F.2d at 994.

[10] *Resorts*, 372 F.3d 154.

related-to jurisdiction, since no claim could have an effect on an estate that no longer exists.[11]

The *Resorts* opinion goes on to explain that the standard courts have actually applied is not as literal as that. Rather, courts retain post-confirmation related-to jurisdiction over matters with a "close nexus" to the confirmed plan. In its opinion in *SunPower*, however, this Court explained the challenge that bankruptcy courts have faced since *Resorts* in implementing the "close nexus" standard.[12] The *Resorts* opinion itself does not quite come out and say what counts as a "close nexus." The closest it comes is on pages 165 to 169 of its opinion, where it gives examples of some cases that other courts have found either had, or did not have, a sufficiently close nexus to the confirmed plan to justify the exercise of post-confirmation jurisdiction.[13]

As *SunPower* explains, where the post-confirmation action is one to enforce or construe the terms of the plan or confirmation order itself, the "close nexus" is clear. But if that were all there were to the "close nexus" test, it would have no independent meaning at all, since even without a post-confirmation related-to jurisdiction, courts typically have the authority (rooted either in the inherent authority or whatever the subject-matter jurisdiction was to enter the prior order) to construe and enforce their prior orders.[14] Close nexus clearly does, however, have independent meaning. And as *SunPower* explains, lower courts have struggled to articulate a clear and principled

---

[11] *Id.* at 165.

[12] *See In re SunPower Corp.*, No. 25-52473, 2026 WL 2147348 (Bankr. D. Del. July 23, 2026).

[13] *Resorts*, 372 F.3d at 165-169.

[14] *See SunPower*, 2026 WL 2147348 at * 11 & n.54.

line about how "significant" the claims must be to the bankruptcy case in order for a bankruptcy court to exercise post-confirmation jurisdiction under the "close nexus" standard.

In *SunPower*, this Court sought to survey the various approaches that bankruptcy courts have taken in determining when a case has a "close enough" nexus to the plan to warrant the exercise of post-confirmation jurisdiction.[15] The answer, unfortunately, is rather messy. At the poles, perhaps, there is some clarity. Where a debtor's bankruptcy was allegedly caused by the wrongful action of one or more entities, and the post-confirmation trust's suit against that entity or entities is the most valuable asset available to fund creditor recoveries, courts have generally found a close nexus—particularly where the claim is clearly identified in the plan's retention of jurisdiction provision.[16] At the other extreme, in *SunPower* itself, this Court found that an ordinary trade receivable, and a plan whose retention of jurisdiction provision did not clearly identify the cause of action at issue, had an insufficiently "close nexus" to justify the exercise of post-confirmation jurisdiction.

The difficulty is that for the many cases between the extremes, the question of the court's subject matter jurisdiction boils down to whether the bankruptcy court, on the particular facts and circumstances presented, believes that the connection

[15] *Id.* at * 11 – * 15 (discussing cases).

[16] *Id.* at * 12 (identifying the materiality of the action as relevant, though not sufficient, to support post-confirmation jurisdiction). *See also In re Cyber Litigation Inc.*, No. 24-50180, 2026 WL 2584490, at * 8 (Bankr. D. Del. Aug. 18, 2026) (exercising post-confirmation related-to jurisdiction when the defendant's alleged fraud "was, without doubt, *the* root cause of the filing of the debtor's bankruptcy case" and where "the magnitude of the claims makes them highly material to creditor recoveries").

between the cause of action asserted and the confirmed plan is close enough to satisfy the "close nexus" test of *Resorts*.

But that is not, generally speaking, how jurisdictional rules ought to operate. To the contrary, the Supreme Court has explained that "administrative simplicity is a major virtue in a jurisdictional statute."[17] That is so because "[c]omplex jurisdictional tests complicate a case, eating up time and money as the parties litigate, not the merits of their claims, but which court is the right court to decide those claims."[18] Or as this Court put it in *Cyber*, "[b]ecause subject-matter jurisdiction can be, and indeed must be, reevaluated at every step in the litigation, it is deeply unhelpful to parties and their counsel for these rules to operate as a form of Rorschach test, with the court finding that there is subject-matter jurisdiction if the ink blot looks like a moth but not if it looks more like a rabbit."[19]

In response to this problem, this Court described in *SunPower* what it believed to be a best practice, that it intended to implement thereafter, in order to clarify and simplify the jurisdictional analysis, while still faithfully implementing the Third Circuit's *Resorts* decision. In the last few pages of *SunPower*, the Court observed that a bankruptcy court could, under § 1141(b) of the Bankruptcy Code, provide that a

---

[17] *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).

[18] *Id.*

[19] *Cyber*, 2026 WL 2584490 at * 7. One example of this institutional shortcoming can be seen in *In re Sanchez*, 159 F.4th 309 (5th Cir. 2025). There, a bankruptcy court made the perfectly plausible judgment that the claim was sufficiently related to the plan to justify the exercise of post-confirmation jurisdiction, and the Fifth Circuit made the equally justified judgment that the nexus was insufficient. The result was that after years of litigating in federal court, the parties were sent back to state court to begin afresh.

cause of action remain part of the bankruptcy estate post-confirmation, rather than re-vest in another entity.[20] There is rather little case law addressed to the question of when it is appropriate to keep the estate open after confirmation. The caselaw that does exist focuses largely on when chapter 13 estate may remain open after confirmation. Significantly, however, the logic of those cases embraces the same analysis set forth in *Resorts* regarding what it means for a claim to have a close nexus to a plan.[21]

The Court accordingly suggested that "when the asset that needs to be monetized in order for the plan to work is a cause of action, one could say that it would be appropriate, under § 1141(b), to leave the estate open after the plan becomes effective so that the claim remains property of the estate after the effective date. If that were to occur, § 1123(b)(3)(B) would expressly permit the reorganized debtor or a post-confirmation trust to bring an action in the bankruptcy court to assert that claim."[22]

Section 1141(b) permits the plan to prevent a specified claim from revesting. Where the confirmation record supports that treatment because the claim is genuinely material to consummation or creditor recoveries, the claim remains estate property. Its adjudication then has a direct effect on the still-existing estate, satisfying the ordinary related-to inquiry under *Pacor*. The statutory authority to

[20] *SunPower*, 2026 WL 2147348 at *15 – * 18.

[21] *Id.*

[22] *Id.* at 17.

retain the asset and the factual necessity for doing so are what prevent this mechanism from becoming an evasion of *Resorts*. As *SunPower* explained, the "default rule is one of revesting, and an exception would require a genuine showing that the circumstances of the case are such that the success of the plan requires that a cause of action remain property of the bankruptcy estate after the plan becomes effective."[23]

This Court has sought to follow that principle since that time. In most cases, where there is no evidentiary showing at the confirmation hearing that justifies keeping the estate open to permit the exercise of post-confirmation related-to jurisdiction, the confirmation order ought to say so. Accordingly, in the order confirming the plan in *Golf Services Wind Down*, the Court added language to the confirmation order providing that:

> By way of clarification, the Court expressly retains jurisdiction to construe, interpret, and enforce the plan and confirmation order, and all other orders entered by the Court. This Court's retention of jurisdiction also includes any proceeding arising under the Bankruptcy Code or arising in this bankruptcy case. As described herein and in section 1141(b) of the Bankruptcy Code, however, all estate property, including causes of action, shall revest in the Post-Effective Date debtors as of the Effective Date. This Court's post-effective date related-to jurisdiction accordingly shall not extend to claims for which subject-matter jurisdiction would have depended, before the Effective Date, on the claim's potential effect on the bankruptcy estate.[24]

In this case, on the other hand, the debtors did identify the particular causes of action that they sought to retain in the bankruptcy estate. Their plan supplement

---

[23] *Id.*

[24] *In re Golf Services Wind Down, LLC*, No. 25-12089, D.I. 615 at 15 (Bankr. D. Del. Sept. 1, 2026) (typographical errors corrected).

expressly identified the specific claims to be asserted against identified defendants, along with the basic circumstances giving rise to the claims.[25] The declaration in support of confirmation, particularly when read together with the first-day declaration, supplied specific factual support for retaining those claims in the estate and permitting their prosecution in this Court after the effective date.[26] And the confirmation brief specifically argued that the retention of jurisdiction over the claims that would remain in the estate satisfies the standard the Third Circuit articulated in *Resorts*.[27]

At the confirmation hearing, the Court commented that the language of the confirmation order appeared to be a bit broader than the Court believed appropriate—keeping the estate open not only to include the specific causes of action as to which the factual showing under § 1141(b) was made, but also to include other claims. At the Court's direction, however, the debtors made revisions to the confirmation order that resolved those concerns.[28] The Court has accordingly entered the order confirming the plan.[29] As the Court noted at the confirmation hearing, the Court's conclusion that the debtors have made a sufficient showing to keep the claim in the estate after the effective date of the plan says nothing about the *merits* of any of the underlying claims, as to which all parties' rights are fully reserved.

---

[25] D.I. 397-2 at 4-5 (describing the "Non-Released Parties Causes of Action").

[26] D.I. 434 ¶ 59.

[27] D.I. 435 at 52-56.

[28] D.I. 452.

[29] D.I. 454.

The Court is satisfied that addressing the question of post-confirmation jurisdiction in this fashion, while clearly not *required* by the Bankruptcy Code, is an appropriate and helpful practice. It means that the question whether the Court will exercise post-confirmation related-to jurisdiction (other than issues about enforcing or construing the plan which the Court always has the authority to do) gets resolved one way or the other at the time the plan is confirmed. If there is a basis for the exercise of post-confirmation related-to jurisdiction, the Court will make appropriate findings and thereby keep that asset in the estate. If the Court makes such findings in the confirmation order, and that order were to become final and non-appealable, then *Pacor* will be satisfied and the parties will not be left to litigate the application of an uncertain standard. Any confirmation-order findings intended to bind litigation counterparties must be preceded by notice and an opportunity to be heard adequate under the circumstances.

If the plan does not seek to retain any such claim in the bankruptcy estate after the effective date, the Court will make clear (as it did in *Golf Services* and expects to do in most cases) that it will not exercise post-confirmation related-to jurisdiction over any such claim. To be clear, keeping a claim in the estate and declaring that the resolution of that claim has an effect on the estate is *not* an invitation to conduct an end-run around the limits of *Resorts*. The Court is comfortable that proceeding in this fashion is appropriate only because it believes that the standard for keeping an estate open under § 1141(b) closely mirrors the standard described by the Third Circuit in *Resorts*. It is not something that will be

done every day. It requires a specific factual showing. And because it bears on subject-matter jurisdiction, it is something that the Court has an independent duty to assess, rather than being approved on the ground that no party-in-interest objected.

The Court is hopeful that such an approach will accomplish what the Supreme Court described in *Hertz*, by making the question of post-confirmation related-to jurisdiction one that can be administered in a mechanical way rather than an issue that itself requires extensive litigation. The Court appreciates that this approach is not a panacea. The standard remains an indeterminate one, whose contours are left to be fleshed out on a case-by-case basis. As this Court has explained, it appears to be common ground (both from reported decisions and this Court's informal understanding of the general practice in this jurisdiction) that courts will retain post-confirmation related-to jurisdiction in cases like this one—where the suit is brought against the entities that are alleged to have caused the business failure, and the potential recoveries are viewed to be highly material to creditors' ultimate distribution in the case. It is not clear that it extends beyond those circumstances. That, however, remains an issue that can develop over time.

The practice adopted here as a "best practice" does not change the substance of the analysis. Rather, it simply accelerates the decision to the time at which the plan is confirmed. Resolving the issue at confirmation is intended to create greater clarity for the parties, thus permitting them to devote more resources to litigating the

merits of those claims and fewer resources to litigating the forum in which they should proceed.

## Conclusion

For the foregoing reasons, the Court has issued an order confirming the plan.

Dated: September 22, 2026

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE